1  HILARY POTASHNER (Bar No. 167060)
   Federal Public Defender
2  BRIANNA FULLER MIRCHEFF (Bar No. 243641)
   (Email: Brianna_Mircheff@fd.org)
3  Deputy Federal Public Defender
   321 East 2nd Street
4  Los Angeles, California 90012-4202
   Tel: 213-894-4784
5  Fax: 213-894-0081

6  Attorneys for Petitioner
   ANTONIO BLACKSTONE
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                 WESTERN DIVISION

11

12  ANTONIO BLACKSTONE,              Case No. CV __16-3872__

13              Petitioner,          [CR 99-257-CAS]

14      v.                           **MOTION TO VACATE, SET ASIDE,
                                     OR CORRECT SENTENCE UNDER
15  UNITED STATES OF AMERICA,        28 U.S.C. § 2255**

16              Respondent.

17

18

19        Petitioner Antonio Blackstone, through undersigned counsel, hereby respectfully

20  moves this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C.

21  § 2255.

22                            Respectfully submitted,

23                            HILARY POTASHNER
                              Federal Public Defender
24

25  DATED: May 19, 2016        By  /s/ Brianna Fuller Mircheff
                                    BRIANNA FULLER MIRCHEFF
26                                  Deputy Federal Public Defender

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. PROCEDURAL HISTORY ...................................................................... 1

    A.    Conviction and Sentencing ................................................................. 1

    B.    Appeal ................................................................................................ 2

    C.    Section 2255 Motion and Other Post-Conviction Proceedings ................... 3

    D.    Second or Successive 2255 Motion .................................................... 3

III. ARGUMENT .......................................................................................... 3

    A.    Mr. Blackstone's 924(c) Sentence Should Be Struck Because Hobbs Act Robbery Is Not A Crime of Violence for 924(c) purposes. ........................................................................ 3

        1.    Section 924(c)(3)'s Residual Clause is Void for Vagueness Under *Johnson*. ....................................... 5

        2.    Hobbs Act Robbery Is Not a Crime of Violence Under the Force Clause. ................................................ 6

            a.    The act of attempting to commit a robbery by putting someone in fear of injury does not require the use, attempted use, or threatened use of "violent force." ................................. 8

            b.    The act of putting another in fear of injury does not require an *intentional* threat of violent force necessary under Section 924(c)(3)(A)'s force clause. ................................. 11

            c.    Hobbs Act robbery is an indivisible offense. ..................... 13

            d.    The Ninth Circuit's Decision in *United States v. Mendez* Has Been Effectively Overruled. ............................ 14

    B.    Mr. Blackstone's Career-Offender Sentence Was Imposed In Violation of the Constitution, and Mr. Blackstone Should be Resentenced On That Basis As Well. ................................ 16

        1.    Petitioner Is Not a Career Offender Because Second Degree Robbery Is Not Crimes of Violence under *Johnson* ............................................................. 17

            a.    After *Johnson*, Cases Holding that Penal Code 211 Is a Crime of Violence Under the Residual Clause Are Necessarily Overruled. ......................... 18

i

                    b.      Penal Code 211 Is Not A Crime of Violence
                            Under the Force or Enumerated Clauses. ............................ 19

                    c.      The Inclusion of "Robbery" Among The Offenses
                            Enumerated In the Commentary to the Guideline
                            Does Not Serve to Make Petitioner a Career
                            Offender ............................................................................ 20

            2.      Petitioner's Conviction for Voluntary Manslaughter
                    Is Not A Career Offender Predicate After *Johnson*. ....................... 25

                    a.      Voluntary Manslaughter Is Not a Crime of
                            Violence under the Force or Enumerated
                            Offenses Clauses ............................................................ 26

                    b.      The Inclusion of Manslaughter Among the
                            Offenses Enumerated in the Commentary to
                            the Guideline Does not Serve to Make Petitioner
                            a Career Offender. ........................................................... 28

    C.      Petitioner's Conviction for Hobbs Act Robbery Is Not A
            Crime-Of-Violence Predicate Either. ............................................. 29

IV. CONCLUSION ............................................................................. 31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Blackstone v. United States,*
    534 U.S. 910 (2001)...................................................................................... 2

*Chrzanoski v. Ashcroft,*
    327 F.3d 188 (2d Cir. 2003)................................................................... 9, 10

*Delgado-Hernandez v. Holder,*
    697 F.3d 1125 (9th Cir. 2012)............................................................... 6, 22

*Descamps v. United States,*
    133 S. Ct. 2276 (2013)............................................................................ 4, 13

*Dimaya v. Lynch,*
    803 F.3d 1110 (9th Cir. 2015)................................................................. 5, 6

*Fernandez-Ruiz v. Gonzales,*
    466 F.3d 1121 (9th Cir. 2006)..........................................................*passim*

*James v. United States,*
    550 U.S. 192 (2007)..................................................................................... 22

*Johnson v. United States,*
    135 S. Ct. 2551 (2015).........................................................................*passim*

*Johnson v. United States,*
    559 U.S. 133 (2010)................................................................................. 7, 15

*Leocal v. Ashcroft,*
    543 U.S. 1 (2004)......................................................................... 15, 27, 28

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003)............................................................. 14, 16

*Mistretta v. United States,*
    488 U.S. 361 (1989)..................................................................................... 20

*Moncrieffe v. Holder,*
    133 S. Ct. 1678 (2013)................................................................................ 15

iii

1    **Federal Cases (cont.)**

2    *Park v. I.N.S.*,
3        252 F.3d 1018 (9th Cir. 2001)......................................................... 25, 26, 28

4    *Purohit v. Holder*,
5        441 F. App'x 458 (9th Cir. 2011) ........................................................ 25, 27

6    *Quijada-Aguilar v. Lynch*,
         799 F.3d 1303 (9th Cir. 2015)............................................... 22, 26, 27, 28
7
8    *Rendon v. Holder*,
         764 F.3d. 1077 (9th Cir. 2014)...................................................................... 13

9    *Rodriguez-Castellon v. Holder*,
10       733 F.3d 847 (9th Cir. 2013).......................................................................... 7

11   *Scheidler v. Nat'l Org. for Women, Inc*,
12       537 U.S. 393, 403 n.8 (2003)......................................................................... 9

13   *Stinson v. United States*,
14       508 U.S. 36 (1993).............................................................................. 21, 22

15   *Taylor v. United States*,
         495 U.S. 575 (1990)........................................................................................ 4
16
17   *United States v. Alsop*,
         479 F.2d 65 (9th Cir. 1973)......................................................................... 12
18
19   *United States v. Alvarado-Pineda*,
         774 F.3d 1198 (9th Cir. 2014)..................................................................... 23
20
21   *United States v. Amparo*,
         68 F.3d 1222 (9th Cir. 1995)...................................................................... 4, 6

22   *United States v. Anderson*,
23       942 F.2d 606 (9th Cir. 1991)....................................................................... 21

24   *United States v. Aragon*,
25       983 F.2d 1306 (4th Cir. 1993)....................................................................... 6

26   *United States v. Arena*,
         180 F.3d 380 (2d. Cir. 1999)......................................................................... 9
27

28

iv

**Federal Cases (cont.)**

*United States v. Armijo*,
651 F.3d 1226 (10th Cir. 2011)...................................................................... 24

*United States v. Ashburn*,
2015 WL 5098607 (E.D.N.Y Feb. 11, 2015)...................................... 29, 30

*United States v. Baza-Martinez*,
464 F.3d 1010 (9th Cir. 2006)........................................................................ 4

*United States v. Becerril-Lopez*,
541 F.3d 881 (9th Cir. 2008).................................................................. 20, 22

*United States v. Bell*,
2016 WL 344749 (N.D. Cal. Jan. 28, 2016) ............................................. 6

*United States v. Benavides*,
617 Fed. App'x 790 (9th Cir. 2015)............................................................ 18

*United States v. Blackstone*
(00-50284) 2001 WL 34098233 ................................................................... 2

*United States v. Bonilla-Montenegro*,
331 F.3d 1047 (9th Cir. 2003)...................................................................... 27

*United States v. Brown*,
2013 WL 1624205 (S.D. Fla. 2013)............................................................ 29

*United States v. Chandler*,
619 F. App'x 641 (9th Cir. Oct. 9, 2015)................................................. 15

*United States v. Chandler*,
743 F.3d 648 (9th Cir. 2014), *vacated*, 135 S. Ct. 2926 (2015) .................. 14, 15, 23

*United States v. Crews*,
621 F.3d 849 (9th Cir. 2010)........................................................................ 18

*United States v. Dixon*,
805 F.3d 1193 (9th Cir. 2015)...........................................................*passim*

*United States v. Dunlap*,
___ F. Supp. 3d ___, 2016 WL 591757 (D. Or. 2016)............................ 23

**Federal Cases (cont.)**

*United States v. Edmunson*,
__ F. Supp. 3d __, 2015 WL 9311983 (D. Md. Dec. 30, 2015) .................................. 6

*United States v. Farmer*,
73 F.3d 836 (8th Cir. 1996) ................................................................................. 8

*United States v. Foppe*,
993 F.2d 1444 (9th Cir. 1993) ........................................................................... 12

*United States v Gaines*,
8 Fed. Appx. 635 (9th Cir. 2001) ......................................................................... 2

*United States v. Gomez*,
690 F.3d 194 (4th Cir. 2012) ............................................................................. 10

*United States v. Grajeda*,
581 F.3d 1186 (9th Cir. 2009) ........................................................................ 4, 5

*United States v. Harrington*,
108 F.3d 1460 (D.C. Cir. 1997) .......................................................................... 8

*United States v. Iozzi*,
420 F.2d 512 (4th Cir. 1970) .............................................................................. 9

*United States v. Landa*,
642 F.3d 833 (9th Cir. 2011) ............................................................................ 21

*United States v. Leshen*,
453 Fed. App'x 408 (4th Cir. 2011) ............................................................. 21, 22

*United States v. Local 560 of the International Brotherhood of Teamsters,
Chauffeurs, Warehousemen, and Helpers of America*,
780 F.2d 267 (3d Cir. 1986) ............................................................................... 9

*United States v. McDougherty*,
920 F.2d 569 (9th Cir. 1990) ....................................................................... 17, 23

*United States v. Mendez*,
992 F.2d 1488 (9th Cir. 1993) ................................................................... *passim*

*United States v. Nedley*,
255 F.2d 350 (3d Cir. 1958) ............................................................................... 8

**Federal Cases (cont.)**

*United States v. Payton*,
    28 F.3d 17 (4th Cir. 1994) ........................................................................ 26

*United States v. Perez-Vargas*,
    414 F.3d 1282 (10th Cir. 2005)................................................................ 10

*United States v. Peterson*,
    629 F.3d 432 (4th Cir. 2011)..................................................................... 26

*United States v. Piccolo*,
    441 F.3d 1084 (9th Cir. 2006)..................................................................... 4

*United States v. Prince*,
    772 F.3d 1173 (9th Cir. 2014)............................................................. 17, 23

*United States v. Rodriguez*,
    925 F.2d 1049 (7th Cir. 1991)................................................................. 8, 9

*United States v. Serna*,
    309 F.3d 859 (5th Cir. 2002)..................................................................... 24

*United States v. Shell*,
    789 F.3d 335 (4th Cir. 2015)............................................................... 21, 24

*United States v. Soto-Rivera*,
    811 F.3d 53 (1st Cir. 2016) ....................................................................... 24

*United States v. Springfield*,
    829 F.2d 860 (9th Cir. 1987)......................................................... 25, 26, 28

*United States v. Terrell*,
    593 F.3d 1084 (9th Cir. 2010)......................................................... 17, 18, 19

*United States v. Torres-Miguel*,
    701 F.3d 165 (4th Cir. 2012)....................................................................... 4

*United States v. Trinidad-Aquino*,
    259 F.3d 1140 (9th Cir. 2001).................................................................... 27

*United States v. Villavicencio-Burruel*,
    608 F.3d 556 (9th Cir. 2010)...................................................................... 11

1

**Federal Cases (cont.)**

*United States v. Vivas-Ceja,*
  808 F.3d 719 (7th Cir. 2015)..................................................... 6

*United States v. Williams,*
  110 F.3d 50 (9th Cir. 1997)..................................................... 22

*United States v. Woodruff,*
  122 F.3d 1185 (9th Cir. 1997)..................................................... 7

*United States v. Woodrup,*
  86 F.3d 359 (4th Cir.1996) ..................................................... 12

*Zimmerman v. United States,*
  2001 WL 120409 (E.D. Penn. 2001)..................................................... 30

**Federal Statutes**

8 U.S.C. § 1101 ..................................................... 5

18 U.S.C. § 16 ..................................................... *passim*

18 U.S.C. § 924 ..................................................... *passim*

18 U.S.C. § 1112 ..................................................... 25, 28

18 U.S.C. § 1951 ..................................................... *passim*

18 U.S.C. § 2113 ..................................................... 12

18 U.S.C. § 2114 ..................................................... 8

28 U.S.C. § 2255 ..................................................... 3, 31

28 U.S.C. § 994 ..................................................... 20, 21

U.S.S.G. § 1B1.7 ..................................................... 21

U.S.S.G. § 2L1.2 ..................................................... 10, 27

U.S.S.G. § 4B1.1 ..................................................... 16

U.S.S.G. § 4B1.2 ..................................................... *passim*

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**State Statutes**

Cal. Penal Code § 192........................................................................ *passim*

Cal. Penal Code § 422............................................................................ 11

Cal. Penal Code § 211........................................................................ *passim*

**Other Authorities**

77 C.J.S. Robbery § 23 ........................................................................... 8

Witkins Substantive Criminal Law § 20.3 ..................................... 9

# TABLE OF EXHIBITS

Exhibit A:    Judgment and Commitment Order (May 10, 2000, CR 333)

Exhibit B:    Indictment (March 18, 1999, CR 1)

Exhibit C:    Sentencing Transcript (May 8, 2000)

Exhibit D:    Order Denying Section 2255 Motion (December 16, 2002, CV 02-983-LGB, Dkt 4)

x

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

## I.  INTRODUCTION

Petitioner Antonio Blackstone, by and through his attorney, Deputy Federal Public Defender Brianna Fuller Mircheff, hereby submits this motion to vacate, set aside, or correct his sentence, based on *Johnson v. United States*, 135 S. Ct. 2551 (2015).  In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), is void for vagueness.  *Johnson*'s reasoning applies equally to the residual clause in 18 U.S.C. § 924(c)(3)(B) and to the career-offender residual clause at U.S.S.G. 4B1.2(a).  Therefore, in light of *Johnson*, Mr. Blackstone's 230 month mandatory guideline sentence, plus the 60-month mandatory consecutive sentence under 18 U.S.C. § 924(c) was imposed in violation of the Constitution or the laws of the United States and exceeded the maximum authorized by law. Petitioner therefore requests that this Court grant this motion, vacate his current sentence, and re-sentence him.

## II.  PROCEDURAL HISTORY

### A.    Conviction and Sentencing

Mr. Blackstone was convicted, following a jury trial, of three counts: one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and one counts of use and carrying a firearm during a crime of violence, in violation of 18 U.S.C 924(c). (Ex. A, Judgment and Commitment; PSR ¶ 6.) [1]  On May 8, 2000, he was sentenced to 290 months imprisonment – 230 months on the Hobbs Act counts, and a mandatory consecutive 60 months on the 924(c) conviction. (Ex. A.)

---

[1] Unless otherwise indicated, all citations to "CR" refer to the clerk's record in CR 99-257, Mr. Blackstone's underlying criminal case in this Court.

1

Two things drove Mr. Blackstone's sentence. First, the PSR found that Mr. Blackstone was a career offender. The PSR based that finding on the fact that it believed the instant offense, Hobbs Act robbery, to be a crime of violence, and that he had two prior crimes of violence: a conviction under Penal Code 211 for second degree robbery, and a conviction under Penal Code 192(a) for voluntary manslaughter. (PSR ¶¶ 73-74.) The career offender finding had the effect of raising Mr. Blackstone's offense level from 21 to 32 – an eleven level swing. (PSR ¶¶ 72. 75.) Moreover, because all career offenders are automatically placed in criminal history VI, the career offender finding increased his criminal history category from IV to VI. (PSR ¶¶ 88-89.) In total, then, the career offender designation had the effect of increasing Mr. Blackstone's mandatory guideline range from 70-87 months, to 210-262 months.

Second, Mr. Blackstone was convicted of one 924(c) count, which charged Mr. Blackstone with violating Section 924(c) by knowingly using and carrying firearms during the Hobbs Act robbery charged in Count Four, in violation of Title 18, United States Code, Section 1951." (Ex. B, Indictment.)  By operation of law, that conviction carried a mandatory consecutive sentence of 60-months.  (PSR ¶ 110 ; *see also* 18 U.S.C. 924(c)(1).)

At sentencing, the Court found Mr. Blackstone to be a career offender (Ex. C, Sentencing Transcript, at 19-20.) The Court sentenced at the mid-range of the career offender guideline range of 230 months, with the mandatory consecutive five years under 18 U.S.C. § 924(c) for a total of 290 months. (Ex. C, at 20, 22.)

**B.    Appeal**

Mr. Blackstone appealed his conviction, raising issues relating to his trial and not relevant to the claims raised here. *See* Opening Brief, *United States v. Blackstone*, (00-50284), *available at* 2001 WL 34098233. The judgment was affirmed in an unpublished memorandum disposition. *See United States v Gaines*, 8 Fed. Appx. 635 (9th Cir. 2001). His petition for a writ of certiorari was denied on October 1, 2001. *Blackstone v. United States*, 534 U.S. 910 (2001).

2

**C.     Section 2255 Motion and Other Post-Conviction Proceedings**

On January 31, 2001, Mr. Blackstone filed a petition under 28 U.S.C. 2255. He raised a number of claims against his trial and appellate counsel, but, again, none are relevant to the issue presented here. The Court denied his 2255 motion on December 17, 2002. (See Ex. D.) The Ninth Circuit denied the certificate of appealability on April 16, 2003. (Order, *United States v. Blackstone*, 03-55098).

Following *Booker*, Mr. Blackstone filed a 2241 petition in the Eastern District of California, CV 05-667-REC, seeking resentencing under *Booker*; that petition too was denied. (Order, CV 05-667-REC, CR 5.)

D.     **Second or Successive 2255 Motion**

On January 11, 2016, Mr. Blackstone filed an application for a second or successive petition in the Ninth Circuit. The instant motion is filed in conjunction with a request to amend that application.

### III.  ARGUMENT

Under 28 U.S.C. § 2255(a), a defendant is entitled to a resentencing when her original sentence was imposed "in violation of the Constitution or laws of the United States," or is "in excess of the maximum authorized by law."  Petitioner is entitled to relief on all these grounds because under *Johnson v. United States*, 135 S. Ct. 2251 (2015), he is now serving an illegal and unconstitutional Section 924(c) sentence, and neither that Hobbs Act robbery, nor the two California priors for robbery and manslaughter are crimes of violence for career offender purposes.

**A.     Mr. Blackstone's 924(c) Sentence Should Be Struck Because Hobbs Act Robbery Is Not A Crime of Violence for 924(c) purposes.**

Section 924(c) provides for a series of graduated, mandatory consecutive sentences for using or carrying a firearm during and in relation to a "crime of violence." 18 U.S.C. § 924(c)(1)(A), (B).  The term "crime of violence," in turn, is defined as "an offense that is a felony and--"

3

1
2
3
4

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

5    18 U.S.C. § 924(c)(3).

6    To determine whether a predicate offense qualifies as a "crime of violence"
7    under § 924(c), this Court must use the categorical approach. *See United States v.*
8    *Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995); *United States v. Piccolo*, 441 F.3d 1084,
9    1086-87 (9th Cir. 2006) ("[I]n the context of crime-of-violence determinations under
10   § 924(c), our categorical approach applies regardless of whether we review a current or
11   prior crime."); *see also Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013)
12   (applying categorical approach in case under ACCA, 18 U.S.C. § 924(e)).  Under
13   *Taylor*, only the statutory definitions –i.e., the elements – of the predicate crime are
14   relevant to determine whether the conduct criminalized by the statute, including the
15   most innocent conduct, qualifies as a "crime of violence." *Taylor v. United States*, 495
16   U.S. 575, 599-601 (1990).

17   Determination of whether a criminal offense is categorically a crime of violence
18   is done by "assessing whether the 'full range of conduct covered by [the statute] falls
19   within the meaning of that term.'" *United States v. Grajeda*, 581 F.3d 1186, 1189 (9th
20   Cir. 2009) (citation omitted).  To do this, courts must look "at the least egregious end of
21   [the. . . statute's] range of conduct." *United States v. Baza-Martinez*, 464 F.3d 1010,
22   1014 (9th Cir. 2006) (quoting *United States v. Lopez-Solis*, 447 F.3d 1201, 1206 (9th
23   Cir. 2006)).  In other words, under the categorical approach, a prior offense can only
24   qualify as a "crime of violence" if all of the criminal conduct covered by a statute --
25   "including the most innocent conduct" -- matches or is narrower than the "crime of
26   violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir.
27   2012).  If the statute punishes some conduct that would qualify as a crime of violence
28

4

1  and some conduct that would not, it does not categorically constitute a crime of
2  violence. *Grajeda*, 581 F.3d at 1189.
3      In 1993, the Ninth Circuit held that Hobbs Act conspiracy was a crime of
4  violence under the residual clause of Section 924(c). *United States v. Mendez*, 992 F.2d
5  1488, 1491-92 (9th Cir. 1993). After *Johnson*, however, Hobbs Act conspiracy is not a
6  crime of violence and therefore Petitioner's conviction for Hobbs Act conspiracy
7  cannot support his Section 924(c) conviction and sentence.

8      **1.   Section 924(c)(3)'s Residual Clause is Void for Vagueness**
9          **Under *Johnson*.**

10      Hobbs Act robbery cannot qualify as a crime of violence under Section
11  924(c)(3)(B)'s residual clause because that statutory provision, like ACCA's residual
12  clause, is unconstitutionally vague. Under Section 924(c)(3)(B)'s residual clause, a
13  crime of violence is a felony offense that "by its nature, involves a substantial risk that
14  physical force against the person or property of another may be used in the course of
15  committing the offense." 18 U.S.C. § 924(c)(3)(B). In *Dimaya v. Lynch*, 803 F.3d
16  1110 (9th Cir. 2015), the Ninth Circuit held that the identically worded definition of a
17  "crime of violence" in the Immigration and Nationality Act (INA), 8 U.S.C.
18  § 1101(a)(43)(F), is unconstitutionally vague. *Dimaya*, 803 F.3d at 1111. The INA
19  defines a "crime of violence" by reference to the following definition in 18 U.S.C.
20  § 16(b). Section 16(b), like Section 924(c)(3), has a force clause and a residual clause--
21  indeed, the provisions are identical:

22          (a) an offense that has as an element the use, attempted use, or
23          threatened use of physical force against the person or property
24          of another, or
25          (b) any other offense that is a felony and that, by its nature,
26          involves a substantial risk that physical force against the
27          person or property of another may be used in the course of
28          committing the offense.

5

1   18 U.S.C. § 16; 18 U.S.C. § 924(c)(3).

2   Although the language of Section 16(b), as incorporated into the INA, is not

3   identical to that of ACCA's residual clause, the Ninth Circuit concluded that Section

4   16(b) suffered from the same constitutional defects identified in *Johnson*, and was

5   therefore unconstitutionally vague. *Dimaya*, 803 F.3d at 1114-17; *see also United*

6   *States v. Vivas-Ceja*, 808 F.3d 719, 722-23 (7th Cir. 2015) (same). Because both

7   statutes require a consideration of what kind of conduct the "ordinary case" of the

8   crime involves, and both statutes left uncertainty about the amount of risk required, the

9   Ninth Circuit reasoned that Section 16(b), like ACCA's residual clause, produced too

10  much unpredictability and arbitrariness to comport with due process. *Dimaya*, 803

11  F.3d at 1116-17. The same is true of the residual clause in Section 924(c)(3)(B), which

12  the Ninth Circuit has recognized is "identical" to Section 16(b)'s residual clause. *See*

13  *United States v. Amparo*, 68 F.3d 1222, 1226 (9th Cir. 1995); *Delgado-Hernandez v.*

14  *Holder*, 697 F.3d 1125, 1130 (9th Cir. 2012). For interpretive purposes, the Ninth

15  Circuit has treated Section 16(b) as the "equivalent" of Section 924(c)(3). *See Mendez*,

16  992 F.2d at 1492; *Amparo*, 68 F.3d at 1226 (relying on *United States v. Aragon*, 983

17  F.2d 1306 (4th Cir. 1993), a Section 16(b) case, to interpret Section 924(c)(3)(B)). At

18  least two district courts have squarely held that Section 924(c)(3)'s residual clause is

19  unconstitutionally vague. *See United States v. Bell*, 2016 WL 344749, at *12-*13

20  (N.D. Cal. Jan. 28, 2016); *United States v. Edmunson*, __ F. Supp. 3d __, 2015 WL

21  9311983, at *3-*5 (D. Md. Dec. 30, 2015) (as amended). This Court should likewise

22  conclude that Section 924(c)(3)(B) is unconstitutionally vague and cannot be used to

23  support Petitioner's Section 924(c) conviction and sentence.

24      **2.    Hobbs Act Robbery Is Not a Crime of Violence Under the Force**

25          **Clause.**

26  To qualify as a crime of violence under Section 924(c)'s "force clause," an

27  offense must be a felony and have "as an element the use, attempted use, or threatened

28

6

use of physical force against the person or property of another."  18 U.S.C.

§ 924(c)(3)(A).  "Physical force" in § 924(C)(3)(A) has the meaning given to it by the

Supreme Court's 2010 decision in *Johnson v. United States*, 559 U.S. 133, 140 (2010).

In *Johnson*, the Supreme Court held that the phrase "physical force" in ACCA's "very

similar" definition of "violent felony" means "*violent* force--that is, force capable of

causing physical pain or injury to another person."  *Id.*  In *Rodriguez-Castellon v.*

*Holder*, 733 F.3d 847 (9th Cir. 2013), the Ninth Circuit applied *Johnson*'s "ordinary

meaning" of "physical force" to interpret 18 U.S.C. § 16(a), which is identically

worded to 18 U.S.C. § 924(c)(3)(A).  *Rodriguez-Castellon*, 733 F.3d at 853-54.  The

same definition of "physical force" thus applies in the Section 924(c)(3) context.

Hobbs Act robbery, as defined by § 1951(b)(1), does not have "as an element

the use, attempted use, or threatened use of physical force against the person or

property of another," 18 U.S.C. § 924(c)(3)(A).  "In a Hobbs Act robbery prosecution,

the government is required to prove two things: (1) that the defendant either committed

or attempted to commit a robbery, and (2) a nexus between the defendant's acts and

interstate commerce."  *United States v. Woodruff*, 122 F.3d 1185, 1185 (9th Cir. 1997).

The Hobbs Act defines "robbery" as follows:

> (1) The term "robbery" means the unlawful taking or
> obtaining of personal property from the person or in the
> presence of another, against his will, by means of actual or
> threatened force, or violence, or fear of injury, immediate or
> future, to his person or property, or property in his custody or
> possession, or the person or property of a relative or member
> of his family or of anyone in his company at the time of the
> taking or obtaining.

18 U.S.C. § 1951(b)(1).  Because Hobbs Act robbery can be committed by taking

property from someone by means of fear of future injury to his person or property, the

offense does not require the use, attempted use, or threatened use of "violent force."  In

addition, because the act of putting someone in fear of injury can be accomplished

7

1    without an *intentional* threat of physical force, it fails to satisfy the intentional mens rea

2    required under Section 924(c)(3)(A)'s force clause.

3                **a.**   **The act of attempting to commit a robbery by putting**

4          **someone in fear of injury does not require the use,**

5          **attempted use, or threatened use of "violent force."**

6             The sheer breadth of conduct by Hobbs Act robbery is apparent from its

7    definition: "by means of actual or threatened force, or violence, or fear of injury,

8    immediate or future, to her person or property, or property in his custody or possession

9    . . .," etc.  With each attempt to capture more conduct, the Hobbs Act robbery statute

10   becomes more and more problematic for 924(c) purposes.

11            First, Hobbs Act robbery includes taking "by means of . . . force." The term

12   "force" has to be considered in light of the common law roots of Hobbs Act robbery,

13   which is defined "in terms consistent with the traditional common-law definition" of

14   robbery. *See United States v. Farmer*, 73 F.3d 836, 842 (8th Cir. 1996); *United States v.*

15   *Nedley*, 255 F.2d 350, 357 (3d Cir. 1958) ("'Robbery' under the Hobbs Act, is common

16   law robbery."); *see also United States v. Harrington*, 108 F.3d 1460, 1471 (D.C. Cir.

17   1997). Common-law robbery requires less than violent force; it requires only that

18   amount of force necessary to accomplish the taking of the property. 77 C.J.S. Robbery

19   § 23 ("The amount or degree of force requisite to robbery is such force as is actually

20   sufficient to overcome the victim's resistance. If the force used is sufficient to overcome

21   resistance, the particular degree of violence employed is immaterial as an element of

22   the crime.").

23            *United States v. Rodriguez*, 925 F.2d 1049 (7th Cir. 1991), is illustrative on this

24   point. In the context of robbery of a letter carrier "using force or intimidation," 18

25   U.S.C. § 2114, the Court relied on robbery's common law roots to say that a conviction

26   could be sustained even though "the amount of force or violence . . .was rather

27   minimal." There, the defendant had pulled on the key chain connected to the victim's

28   clothing in order to steal his keys. *Id.* at 1052. This constituted robbery because, as the

8

courts at common law had found, robbery can be sustained "when the item taken is 'so attached to the person or his clothes as to require some force to effect its removal.'" *Id.*; Witkins Substantive Criminal Law, Robbery § 20.3 (the pickpocket who "jostles the owner" or removes an item attached to the person's clothing has committed common law robbery by force). Because Hobbs Act robbery can committed by any amount of force necessary to accomplish the taking, it does not require the use of violent force.

Second, the plain language of the Hobbs Act robbery statute under 18 U.S.C. § 1951 provides that the offense can be committed by placing another in "fear of injury." But injury need not be physical injury: "The concept of 'property' under the Hobbs Act is an expansive one" that includes "intangible assets, such as rights to solicit customers and to conduct a lawful business." *United States v. Arena*, 180 F.3d 380, 392 (2d. Cir. 1999) (citing 18 U.S.C. § 1951(a) and interpreting Hobbs Act robbery definition that includes threats of physical violence against "persons 'or property'"), *abrogated in part on other grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 (2003); *see also United States v. Iozzi*, 420 F.2d 512, 514 (4th Cir. 1970) (sustaining conviction under Hobbs Act when union president threatened "to slow down or stop construction projects unless his demands were met."); *United States v. Local 560 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 780 F.2d 267, 281 (3d Cir. 1986) (noting that the circuits to consider the issue "are unanimous in extending Hobbs Act to protect intangible, as well as tangible property"). Thus, Hobbs Act robbery can be committed via threats to cause a devaluation of some economic interest. Such threats to economic interests are certainly not threats of "violent force."

Third, even to the extent that Hobbs Act involves physical injury, not all physical injuries are the result of "violent force." There are many ways in which physical injury – even death – can result without the use of "violent force."

The Second Circuit addressed a similar issue in *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003). In that case, at issue was whether a prior Connecticut conviction

9

for third degree assault qualified as a "crime of violence" under the force clause in 18 U.S.C. §16.  The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury."  *Id.* at 193.  Nonetheless, the Second Circuit held that the statute does not constitute a crime of violence because there is a difference between causation of an injury, which is all that the Connecticut statute required, and an injury's causation by the use of physical force.  *Id.* at 194.  The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission."  *Id.* at 195.  Therefore, the Second Circuit concluded, "the intentional causation of injury does not necessarily involve the use of force."  *Id.*  The Second Circuit elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient," *id.* at 196, and reasoned that a defendant could conceivably commit Connecticut third degree assault by placing a tranquilizer in the victim's drink and thereby causing physical injury.  *Id.* at 195-96.

The Tenth Circuit engaged in a similar analysis of a statute in the context of the "crime of violence" definition in U.S.S.G. § 2L1.2.  In *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005), the Tenth Circuit concluded that although the Colorado third degree assault statute at issue required an act causing bodily injury, conviction under the state did not necessarily require the use or threatened use of physical force. *Id.* at 1287.  The Tenth Circuit noted that "several examples of third degree assault . . . would not use or threaten the use of physical force:  . . . intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals."  *Id.* at 1286.  It therefore held that Colorado third degree assault was not a crime of violence under § 2L1.2.  *Id.* at 1287; *see also United States v. Gomez*, 690 F.3d 194, 201 (4th Cir. 2012) (child abuse statute which required "sustaining physical injury to child" can be violated "by an affirmative act or by neglecting to act, neither of which necessarily requires the use of physical force against the child").

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Similarly, Hobbs Act robbery does not require the use or threatened use of "violent force" because it can be committed simply by attempting to put another in "fear of injury," without any showing that the fear resulted from the use or threatened use of physical force, 18 U.S.C. § 1951(b)(1). Hobbs Act robbery thus differs in an important respect from an offense that requires *both* causation of fear of injury and a threatened use of physical force that caused that fear. *Cf. United States v. Villavicencio-Burruel*, 608 F.3d 556, 563 (9th Cir. 2010) (holding that conviction under California Penal Code § 422(a) is categorically a crime of violence because its elements "*necessarily* include a threatened use of physical force 'capable of causing physical pain or injury to another person.'") (emphasis added). Indeed, a defendant can place another in fear of injury by threatening to poison that person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, to lock the person up in the car on a hot day, to lock that person at an abandoned site without food or shelter. None of these scenarios constitutes "violent force."

15
16
17

Because the full range of conduct covered by the Hobbs Act robbery statute does not require "violent force" against a person or property, Hobbs Act robbery cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause.

18
19
20

> **b.    The act of putting another in fear of injury does not require an *intentional* threat of violent force necessary under Section 924(c)(3)(A)'s force clause.**

21
22
23
24
25
26
27
28

Even more, Hobbs Act robbery statute is not a "crime of violence" under the force clause because putting someone in fear of injury does not require an intentional threat of physical force. Neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc) (interpreting 18 U.S.C. § 16(b)); *see also United States v. Dixon*, 805 F.3d 1193, 1197-98 (9th Cir. 2015) (holding that California robbery, Penal Code § 211, is not a "crime of violence" under ACCA's force clause because it does not require the intentional use or threat of force).

11

1    The Hobbs Act robbery statute does not require a defendant to intentionally place

2    another in "fear of injury." 18 U.S.C. § 1951(b)(1). Therefore, it is missing the

3    intentional mens rea necessary under *Fernandez-Ruiz*.

4          Cases interpreting the term "intimidation" in the federal bank robbery statute, 18

5    U.S.C. § 2113(a), are instructive because "intimidation" requires the same act as "fear

6    of injury" under the Hobbs Act. *See United States v. Woodrup*, 86 F.3d 359, 363-64

7    (4th Cir.1996) ("The Hobbs Act uses the phrase 'fear of injury' rather than

8    'intimidation,' but the terms are functionally equivalent, as the test for intimidation is

9    'whether an ordinary person ... reasonably could infer a threat of bodily harm from

10    defendant's acts.'"). The Ninth Circuit has held that "[t]he determination of whether

11    there has been an intimidation should be guided by an objective test focusing on the

12    accused's actions . . . . To take, or attempt to take, 'by intimidation' means willfully to

13    take, or attempt to take, in such a way that would put an ordinary, reasonable person in

14    fear of bodily harm." *United States v. Alsop*, 479 F.2d 65, 67 n.4 (9th Cir. 1973).

15    Whether the defendant "specifically intended to intimidate . . . is irrelevant." *United*

16    *States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993); *see also United States v.*

17    *Woodrup*, 86 F.3d 359, 363 (9th Cir. 1996) ("The intimidation element of § 2113(a) is

18    satisfied if 'an ordinary person in the [victim's] position reasonably could infer a threat

19    of bodily harm from the defendant's acts,' whether or not the defendant actually

20    intended the intimidation."). In other words, a defendant may be convicted of federal

21    bank robbery even though he did not intend to put another in fear of injury. It is

22    enough that the victim reasonably fears injury from the defendant's actions – whether

23    or not the defendant actually intended to create that fear. Section 1951(b)(1)'s "fear of

24    injury" element, like the federal bank robbery statute, criminalizes conduct that does

25    not require an intentional threat of physical force. For this additional reason, Hobbs

26    Act robbery fails to qualify as a "crime of violence."

27

28

### c.   Hobbs Act robbery is an indivisible offense.

Finally, Hobbs Act robbery is not divisible offense. *See Descamps v. United States*, 133 S. Ct. 2276 (2013) (in ACCA case, holding that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements").  Although Hobbs Act robbery can be committed in multiple ways – "*by means of* actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property," 18 U.S.C. § 1951(b)(1) (emphasis added) – these disjunctive terms are merely "means," as the statute itself indicates, not alternative elements on which a jury must unanimously agree.  Jurors are never asked to decide which one of these phrases served as the basis for a Hobbs Act conviction.  Specifically, jurors are not asked to determine whether the defendant took the property in question by means of (1) actual force, (2) threatened force, (3) violence, or (4) fear of injury.  Further, unanimity is not required on the question of whether fear or injury was future or immediate as to a person or property.

To be divisible, a statute must contain "multiple, alternative elements of functionally separate crimes." *Rendon v. Holder*, 764 F.3d. 1077, 1085 (9th Cir. 2014). A statute is not divisible merely because it is worded in the disjunctive. *Id.* at 1086. Rather, a court must determine whether a disjunctively-worded phrase supplies "alternative elements," which are essential to a jury's finding of guilt, or "alternative means." which are not. *Id.* at 1085-86.  That is, if a statute contains alternative elements, a prosecutor "must generally select the relevant element from its list of alternatives.  And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." *Descamps*, 133 S. Ct. at 2290.  "But if a statute contains only alternative means, a jury need not agree as to *how* the statute was violated, only that it was." *United States v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015).

In *Dixon*, the Ninth Circuit held that the California robbery statute, which is similar to the Hobbs Act robbery definition in containing disjunctive phrases ("person

13

1  or immediate presence," "force or fear"), Cal. Penal Code § 211, contains only

2  alternative means and is, therefore, not divisible. *Dixon*, 805 F.3d at 1198. The Ninth

3  Circuit explained that the "disjunctively worded phrases in the statute and jury

4  instructions are alternative means, not alternative elements. To return a guilty verdict

5  . . ., a jury must find that the elements are satisfied, but jurors need not agree on the

6  disjunctively worded alternatives." *Id*. Likewise, the Hobbs Act robbery statute

7  contains alternative means, not elements, and is therefore indivisible. As a result, in

8  determining whether  Hobbs Act robbery qualifies as a "crime of violence" under the

9  "force" clause, this Court must apply only the categorical approach, and not the

10  modified categorical approach.

11             **d.     The Ninth Circuit's Decision in *United States v.***

12                      ***Mendez* Has Been Effectively Overruled.**

13         The Ninth Circuit's decision in *United States v. Mendez*, 992 F.2d 1488 (9th Cir.

14  1993), is not controlling on the question of whether  Hobbs Act robbery is a crime of

15  violence under the force clause because its precedential value has been undercut by

16  intervening higher authority. *See Miller v. Gammie*, 335 F.3d 889, 893, 899-900 (9th

17  Cir. 2003) (en banc). In *Mendez*, the Ninth Circuit considered whether Hobbs Act

18  conspiracy was a crime of violence under Section 924(c)(3)(B)'s residual clause.

19  *Mendez*, 992 F.2d at 1491. In the course of its analysis, it concluded that Hobbs Act

20  robbery was a crime of violence under the force clause because it "contain[ed] [an]

21  element of 'actual or threatened force, or violence.'" *Id*. In *United States v. Chandler*,

22  743 F.3d 648 (9th Cir. 2014), *vacated*, 135 S. Ct. 2926 (2015), all three judges on the

23  Ninth Circuit panel questioned the "reasoning and continuing validity" of *Mendez*'s

24  Hobbs Act conspiracy holding in light of intervening case law on ACCA and the

25  categorical approach. *Chandler*, 743 F.3d at 657-68 (Bybee, J., concurring). In doing

26  so, the concurrence noted that *Mendez* began by purporting to use the categorical

27  approach: "This was a good start, but we then broadly declared, intuitively, but without

28  any analysis of the elements of robbery as defined in the Hobbs Act, that '[r]obbery

14

1 indisputably qualifies as a crime of violence.'" *Chandler*, 743 F.3d at 658 (quoting

2 *Mendez*, 992 F.2d at 1491).  That is, the concurring opinion in *Chandler* cast doubt on

3 the validity of *Mendez*'s premise -- namely, that Hobbs Act robbery was a crime of

4 violence under Section 924(c)(3)(A), the force clause -- and rightfully so.[2]

5     The reasoning underlying the Ninth Circuit's cursory analysis of Hobbs Act

6 robbery in *Mendez* is clearly irreconcilable with higher intervening authority.  Since

7 *Mendez* was decided, the Supreme Court has made clear that courts conducting the

8 categorical approach must "presume that the conviction 'rested upon [nothing] more

9 than the least of th[e] acts' criminalized . . . ." *Moncrieffe v. Holder*, 133 S. Ct. 1678,

10 1684 (2013) (quoting *Johnson*, 559 U.S.at 137).  But the Ninth Circuit in *Mendez* did

11 not "focus on the minimum conduct criminalized by the . . . statute," as the Supreme

12 Court has since instructed, *see id.*  Rather, by singling out the possibility of committing

13 a Hobbs Act robbery through "actual or threatened force, or violence," the Ninth

14 Circuit considered the *maximum* conduct criminalized by the statute.  *Mendez*, 992 F.2d

15 at 1491, 1492.  Notably, the Ninth Circuit did not address whether the full range of

16 conduct covered by the statute -- including putting someone in "fear of injury" -- has

17 "as an element the use, attempted use, or threatened use of physical force against the

18 person or property of another," 18 U.S.C. § 924(c)(3)(A).  As discussed above, *see*

19 *supra* p. 10, the Supreme Court's 2010 decision in *Johnson* shows that "physical force"

20 in Section 924(c)(3)(A) means "*violent* force--that is, force capable of causing physical

21 pain or injury to another person." *Johnson*, 559 U.S. at 140.  Further, in *Leocal v.*

22 *Ashcroft*, 543 U.S. 1 (2004), the Supreme Court held that "use . . . of physical force" in

23 Section 16(a), which is identical to Section 924(c)(3)(A), requires "a higher degree of

24 intent than negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9.  And an en

25

26     [2] In *Chandler*, the Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *Johnson*, 135 S. Ct. 2926 (2015), and on

27 remand, the Ninth Circuit granted the parties' joint motion for vacatur of the sentence and a remand for resentencing.  *United States v. Chandler*, 619 F. App'x 641 (9th Cir.

28 Oct. 9, 2015) (unpublished order).

1   banc panel of the Ninth Circuit held in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th

2   Cir. 2006) (en banc), that "neither recklessness nor gross negligence is a sufficient

3   mens rea to establish that a conviction is for a crime of violence under § 16," *id.* at

4   1130, which applies equally to predicate convictions under Section 924(c)(3).

5       In short, since *Mendez* was decided, the Supreme Court and an en banc panel of

6   the Ninth Circuit have clarified both the mode of analysis required by the categorical

7   approach, as well as the substantive standards of force and mens rea required for a

8   "crime of violence."  Because *Mendez*'s reasoning and theory are clearly irreconcilable

9   with this higher intervening authority, it has been effectively overruled and does not

10  prevent this Court from granting relief on Petitioner's Section 924(c) claim.  *See Miller*,

11  335 F.3d at 899-900.

12      For all of these reasons, Mr. Blackstone's conviction under 924(c) should be

13  vacated and the associated sentence should be struck.

14  **B.    Mr. Blackstone's Career-Offender Sentence Was Imposed In Violation**

15  **of the Constitution, and Mr. Blackstone Should be Resentenced On**

16  **That Basis As Well.**

17      Section 4B1.1 of the Sentencing Guidelines provides for enhanced guidelines

18  ranges where (1) the defendant is 18 years or older at the time of the instant offense, (2)

19  the instant offense is a felony "crime of violence" or "controlled substance offense,"

20  and (3) the defendant has at least two prior felony convictions of either a "crime of

21  violence" or a "controlled substance offense." See U.S.S.G. § 4B1.1(a). As set out in

22  the career offender guideline, the term "crime of violence" is defined as:

23      [A]ny offense under federal or state law, punishable by imprisonment for a term

24      exceeding one year, that—

25          (a)    has as an element the use, attempted use, or threatened

26                 use of physical force against the person of another, or

27

28

(b)     is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). As used in this brief, subsection (a) is called the "force clause"; subsection (b)'s list of offenses is called the "enumerated offenses clause," and the remainder of subsection (b) is called the "residual clause."

Petitioner was deemed to be a career offender because he had one prior felony convictions for second degree robbery under California Penal Code 211 and one prior felony for voluntary manslaughter, which the PSR deemed to be crimes of violence. It also found Hobbs Act robbery to be a crime of violence for career-offender purposes. (PSR ¶ 73.) After *Johnson*, however, none of these qualify as a crime of violence for career offender purposes.

### 1.     Petitioner Is Not a Career Offender Because Second Degree Robbery Is Not Crimes of Violence under *Johnson*.

California Penal Code Section 211 prohibits "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. Previous Ninth Circuit precedent had held that California second degree robbery was a violent crime under the residual clause. *See United States v. Prince*, 772 F.3d 1173, 1176 (9th Cir. 2014) (finding that second degree robbery is a violent felony under the residual clause of the Armed Career Criminal Act, because it "certainly" is the kind of crime that presents a serious potential risk of physical injury to another);[3] *see also United States v. McDougherty*, 920 F.2d 569, 574 & n.3 (9th Cir. 1990) ("Clearly then, robbery as defined in California falls under 18 U.S.C. 16(b) as a felony that "by its

---

[3] *United States v. Terrell*, 593 F.3d 1084, 1087 n.1 (9th Cir. 2010) (internal citations omitted) (stating that the ACCA's "violent felony" definition is "nearly identical" to Section 4B1.2 and that the decision's ACCA analysis "applies equally to § 4B1.2").

17

1    nature, involves a substantial risk that physical force may be used"; interpreting an

2    earlier version of the career-offender residual clause, but stating that the "result . . .

3    would be no different" under the present version of the guideline).

a.    **After *Johnson*, Cases Holding that Penal Code 211 Is a**
      **Crime of Violence Under the Residual Clause Are**
      **Necessarily Overruled.**

7        The Supreme Court's decision in *Johnson*, declaring the residual clause of the

8    Armed Career Criminal Act (ACCA) to be "unconstitutionally vague," applies equally

9    to the career offender residual clause. Section 4B1.2(a)(2)'s residual clause tracks the

10   ACCA's residual clause verbatim. *Compare* U.S.S.G. § 4B1.2(a)(2) ("or otherwise

11   involves conduct that presents a serious potential risk of physical injury to another");

12   *with* 18 U.S.C. § 924(e)(2)(B)(ii) ("or otherwise involves conduct that presents a

13   serious potential risk of physical injury to another"). Accordingly, the Ninth Circuit

14   interprets the clauses identically and applies ACCA residual clause precedent in career

15   offender cases. *See, e.g.*, *United States v. Terrell*, 593 F.3d 1084, 1087 n.1 (9th Cir.

16   2010) (internal citations omitted) (stating that the ACCA's "violent felony" definition

17   is "nearly identical" to Section 4B1.2 and that the decision's ACCA analysis "applies

18   equally to § 4B1.2"); *United States v. Crews*, 621 F.3d 849, 852 n.4 (9th Cir. 2010) ("In

19   the past we have made no distinction between the terms 'violent felony' and 'crime of

20   violence' for purposes of interpreting the residual clause . . ."). *Johnson*'s discussion of

21   the legal uncertainty and infirmity inherent in an ACCA residual-clause analysis

22   applies with equal force to Section 4B1.2(a)(2), as the government itself has conceded.

23   *United States v. Benavides*, 617 Fed. App'x 790 (9th Cir. 2015) (vacating and

24   remanding for resentencing in light of government's concession that *Johnson* applies to

25   the similarly worded residual clause in the guidelines).

26       Because *Johnson*'s holding applies equally to career offender cases, *Johnson*

27   fatally undermines Ninth Circuit precedent holding that Penal Code Section 211 is a

28   crime of violence under the residual clause. The sentence in this case, implicitly

1  premised on the residual clause of the career-offender guideline, was therefore illegal
2  and was imposed in violation of the Constitution.

3      **b.   Penal Code 211 Is Not A Crime of Violence Under the**
4           **Force or Enumerated Clauses.**

5          The career offender designation in Petitioner's case cannot be salvaged under
6  any other clause of the crime of violence definition. Petitioner's robbery convictions do
7  not qualify under the force clause, as held in *United States v. Dixon*, 805 F.3d 1193 (9th
8  Cir. 2015).  In *Dixon*, the Ninth Circuit determined that Penal Code Section 211 was
9  not an ACCA "violent felony" because a violation of the statute does not require "the
10 use, attempted use, or threatened use of physical force against the person of another."
11 *Dixon*, 805 F.3d at 1197.  Use of force under the force clause must be intentional, not
12 just reckless or negligent. *Id.* But under California caselaw, one can violate Penal Code
13 211 by *accidentally* using force. *Id.* Because Section 211 does not require the
14 intentional use of force, it cannot serve as a "violent felony" predicate for ACCA
15 purposes. *Id.* at 1198. And, for the same reason, a conviction under that statute cannot
16 qualify as a crime of violence under the force clause of the career offender guideline.
17 *See Terrell*, 593 F.3d at 1087 n.1 (applying the ACCA's "violent felony" analysis to the
18 "nearly identical" crime of violence analysis in § 4B1.2).

19         Furthermore, a conviction under Section 211 does not qualify as a crime of
20 violence as an enumerated offense in the career offender guideline, U.S.S.G. § 4B1.2,
21 because those enumerated offenses include only burglary of a dwelling, arson,
22 extortion, or offenses involving the use of explosives.  See U.S.S.G. § 4B1.2(a)(2). As
23 the Ninth Circuit held in *Dixon*, while "many" violations of Penal Code 211 may
24 constitute generic extortion under the current definition, not all will. *See Dixon*, 805
25 F.3d at 1196.[4]

26

27      [4] Petitioner does not concede that the current generic definition of extortion is
28 correct. The Sentencing Commission has offered a far narrower generic definition of

19

1    Because second degree robbery is not a crime of violence under the force clause
2    or the enumerated clause, and because the residual clause has been effectively
3    eliminated, Petitioner is no longer a career offender.

4          c.      **The Inclusion of "Robbery" Among The Offenses**
5                  **Enumerated In the Commentary to the Guideline Does**
6                  **Not Serve to Make Petitioner a Career Offender**

7          The application notes contained in the commentary to Section 4B1.2 include a
8    separate list of offenses that the application notes state qualify as crimes of violence.
9    Among those offenses is "robbery."  See U.S.S.G. § 4B1.2 cmt. n.1. Prior to *Johnson*,
10   the inclusion of robbery on the list of commentary offenses may have provided a
11   potential alternative basis to hold that California Penal Code § 211 was a crime of
12   violence, under the reasoning in *United States v. Becerril-Lopez*, 541 F.3d 881, 891
13   (9th Cir. 2008) (holding that all conduct prohibited by Penal Code 211 was subsumed
14   under the definitions of generic robbery or generic extortion). That alternate basis no
15   longer exists; with the excision of the residual clause from the career offender
16   provision, the offenses listed only in the commentary to the guideline are no longer of
17   any effect.

18         The Sentencing Reform Act of 1984 created the Sentencing Commission and
19   authorized it to create "guidelines . . . for use of a sentencing court in determining the
20   sentence to be imposed in a criminal case." 28 U.S.C. § 994(a)(1). Those guidelines are
21   submitted to Congress in advance, *id.* § 994(p), making the Sentencing Commission
22   "fully accountable to Congress." *See Mistretta v. United States*, 488 U.S. 361, 393-94
23   (1989) (upholding the Sentencing Commission against a separation of powers challenge
24   on this ground).

25

26   ───────────────────────────────────
     extortion, which will, unless rejected by Congress, become law. But this Court need not
27   decide whether the generic definition proffered in *Dixon* remains good law, because
     Petitioner is not a career offender even under the broader definition currently in
28   existence, as was held in *Dixon*.

20

Commentary, on the other hand, does not receive the same treatment as the guidelines. The Sentencing Reform Act does not explicitly authorize the creation of commentary. 28 U.S.C. § 994(a) (authorizing "guidelines" and "policy statements"); *see also Stinson v. United States*, 508 U.S. 36, 41 (1993). Nor does the Sentencing Reform Act require that commentary be submitted to Congress for approval. *See* 28 U.S.C. § 994(p) (requiring only that amendments to guidelines be submitted to Congress); *Stinson*, 508 U.S. at 46 (commentary "is not reviewed by Congress"). And the Sentencing Commission itself has relegated commentary to a secondary, interpretative role. *See* U.S.S.G. § 1B1.7 (explaining that the purpose of the commentary is to "interpret [a] guideline or explain how it is to be applied"); *United States v. Anderson*, 942 F.2d 606, 611 (9th Cir. 1991), *abrogated on other grounds by Stinson v. United States*, 508 U.S. 36 (1993) (noting the Sentencing Commission's belief that commentary "is an aid to correct interpretation of the guidelines, not a guideline itself or on a par with the guidelines themselves"). Where commentary assists and amplifies the text of the guideline – and where the text of the guideline "will bear the construction" the commentary offers – the commentary's interpretation of the guideline is binding. *Stinson*, 508 U.S. at 46. But where commentary runs afoul of the Constitution or a federal statute or where it is "plainly erroneous or inconsistent" with the guideline it interprets, it is the text of the guideline, not the commentary, that must control. *Id.* at 45-47; *United States v. Landa*, 642 F.3d 833, 836 (9th Cir. 2011) (stating if there is a potential conflict between the text and the commentary, the text controls).

Because commentary is solely an interpretative aid, it "does not have freestanding definitional power" and only has force insofar as it interprets or explains a guideline's text. *United States v. Leshen*, 453 Fed. App'x 408, 413-15 (4th Cir. 2011) (unpublished) (finding that prior state sex offenses did not qualify as crimes of violence, despite government argument that offenses fell within the commentary); *accord United States v. Shell*, 789 F.3d 335, 340-41 (4th Cir. 2015) ("[The government skips past the text of § 4B1.2 to focus on its commentary," but "it is the text, of course,

21

that takes precedence.") It follows that, if a portion of a guideline is excised, the commentary that interpreted that portion of the guideline must go as well. Vestigial commentary without a textual hook must be deemed "inconsistent" with the text under *Stinson*, because its only "functional purpose" was to "assist in the interpretation and application" of a rule that no longer exists. *Stinson*, 508 U.S. at 45.

The only question that remains, then, is whether the term "robbery" in commentary interpreted the residual clause or whether it interpreted some portion of the definition that remains intact. As a general matter, the offenses enumerated in the commentary could only have been interpreting the residual clause; time and again, the Ninth Circuit has held that the state offenses most closely related to those commentary offenses do not require the use of force. *E.g.*, *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1306-07 (9th Cir. 2015) (California voluntary manslaughter does not have an element of the use of force); *Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1127 (9th 2012) (California kidnapping does not require an element of force); *United States v. Williams*, 110 F.3d 50, 52 (9th Cir. 1997) (Oregon kidnapping does not require an element of use of force); *see also James v. United States*, 550 U.S. 192, 206 (2007) (holding that attempt was appropriately included in the commentary enumerated offenses, "based on the Commission's review of empirical sentencing data [which] presumably reflects an assessment that attempt crimes often pose a similar risk of injury as completed offenses"). It cannot be said, then, that the commentary offenses are there to "assist in the interpretation of" the elements clause—the inclusion of those offenses is quite inconsistent with the text of the elements clause.

Of all of the offenses listed in the commentary, robbery has perhaps the strongest tie to the residual clause. The Ninth Circuit's generic definition of robbery is tied to the risk of harm to the person, not to any element of force. *See Becerril-Lopez*, 541 F.3d at 891 (defining generic robbery as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances *involving immediate danger to the person*") (emphasis added); *see also Leshen*, 453 Fed. Appx. at 415 (noting that the

22

generic term "robbery" in the commentary interpreted the residual clause of the career offender guideline). Indeed, Ninth Circuit precedents have generally tied state robbery statutes to the residual clause of various crime-of-violence definitions. *United States v. Prince*, 772 F.3d 1173, 1176 (9th Cir. 2014) (finding that California second degree robbery is a violent felony under the residual clause of the Armed Career Criminal Act, because it "certainly" is the kind of crime that presents a serious potential risk of physical injury to another); *United States v. Chandler*, 743 F.3d 648, 652-55 (9th Cir. 2014) (Nevada conspiracy to commit robbery is a violent felony under the residual clause), *remanded pursuant to Johnson*, 743 F.3d 648 (9th Cir. 2015); *see also United States v. McDougherty*, 920 F.2d 569, 574 & n.3 (9th Cir. 1990) ("Clearly then, robbery as defined in California falls under 18 U.S.C. 16(b) as a felony that "by its nature, involves a substantial risk that physical force may be used"; interpreting an earlier version of the career-offender residual clause, but stating that the "result . . . would be no different" under the present version of the guideline).

On the flip side, it is equally clear that the majority of Ninth Circuit state robbery statutes are not crimes of violence under the force clause. *See Dixon*, 805 F.3d at 1197 (California robbery does not satisfy the force clause); *United States v. Alvarado-Pineda*, 774 F.3d 1198 (9th Cir. 2014) (suggesting, without deciding, that Washington robbery might not be a crime of violence under the similarly worded force clause of 18 U.S.C. § 16(a), because the statute required "any force or threat, no matter how slight"); *United States v. Dunlap*, ___ F. Supp. 3d ___, 2016 WL 591757, at *4-6 (D. Or. 2016) (Oregon robbery is not a crime of violence under the force clause).

Against this background, it is clear that the commentary's reference to robbery could only have interpreted the residual clause, i.e., as an example of a type of crime that entails "a serious potential risk of physical injury to another." With the residual clause excised from the guideline, the commentary no longer serves to interpret or amplify any provision of the remaining text, but, instead, is a contrary and plainly

erroneous interpretation of what remains.  Once the residual clause is gone, the commentary offenses— and especially robbery—must go as well.

The First Circuit has already reached this conclusion post-*Johnson*, holding that the list of enumerated offenses contained in the guidelines commentary was interpreting only the residual clause, and that post-Johnson, such commentary is no longer of any effect. *See United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016). As the Court stated, "once shorn of the residual clause § 4B1.2(a) sets forth a limited universe of specific offenses that qualify as a 'crime of violence.' There is simply no mechanism or textual hook in the Guideline that allows us to import offenses not specifically listed therein into 4B1.2(a)'s definition of 'crime of violence.'" *See id.* This holding is in line with the interpretation many Circuits had given to the career-offender commentary even before *Johnson*. *See Shell*, 789 F.3d at 345 (finding that a state statute that did not meet the requirements of the *text* of § 4B1.2 could not be saved on the grounds that it might fall under one of the commentary's list of offenses, noting that the commentary serves "only to amplify that definition, and any inconsistency between the two [must be] resolved in favor of the text") (citing *Stinson*, 508 U.S. at 43); *United States v. Armijo*, 651 F.3d 1226, 1234-37 (10th Cir. 2011) (rejecting the government's argument that Colorado manslaughter qualifies as a crime of violence simply because it is listed in the commentary and need not qualify under the definitions set out in the text; "[t]o read application note 1 as encompassing non-intentional crimes would render it utterly inconsistent with the language of § 4B1.2(a)"); *see also United States v. Serna*, 309 F.3d 859, 862 & n.6 (5th Cir. 2002) (possession of a sawed-off shotgun, while listed in the commentary, must satisfy one of the definitions in the text). The Ninth Circuit should do so as well.

California robbery is not a crime of violence under any provision of the text of Section 4B1.2, and commentary cannot be used to expand the definition of crime of violence beyond what the text will bear. As such, it cannot serve as a basis to hold that petitioner's conviction is a Grade A offense.

24

### 2.   Petitioner's Conviction for Voluntary Manslaughter Is Not A Career Offender Predicate After *Johnson*.

Section 192(a) provides that voluntary manslaughter "is the unlawful killing of a human being without malice[.] . . . upon a sudden quarrel or heat of passion." Cal. Penal Code § 192(a).   Prior to *Johnson*, courts routinely held that convictions for California and federal manslaughter crimes were crimes of violence because the statutes at issue satisfied the applicable residual clause.[5]   These cases explicitly concluded that manslaughter did not satisfy the force clause.

In *United States v. Springfield*, 829 F.2d 860, 862 (9th Cir. 1987), for example, the Ninth Circuit considered a defendant's challenge to his Section 924(c) conviction on the basis that his conviction for federal involuntary manslaughter under 18 U.S.C. Section 1112 did not qualify as a crime of violence.  Section 1112, like Section 192(a) prohibits "the unlawful killing of a human being without malice." 18 U.S.C. § 1112. The *Springfield* court held that Springfield's conviction did not satisfy Section 924(c)'s almost identical force clause[6] because "[t]he use, attempted use, or threatened use of physical force' is not an element in the crime of involuntary manslaughter." *Id.* However, it concluded that Springfield's manslaughter conviction *did* satisfy Section 924(c)'s very similar residual clause because "involuntary manslaughter does, in the sense intended in the statute, carry with it the 'risk' of physical force," as the crime, "'by its nature' involves the death of another person." *Id.*

---

[5] It is appropriate to draw from these cases when assessing whether Section 192(a) is a crime of violence.  As the Ninth Circuit has recognized, California's involuntary manslaughter statute—Section 192(b)—is "nearly identical" to the federal manslaughter statute—18 U.S.C. Section 1112, *Park v. I.N.S.*, 252 F.3d 1018, 1021-22 (9th Cir. 2001), and at least for purposes of the crime of violence analysis, Section 192(a) and Section 192(b) are "materially identical in all relevant respects," *Purohit v. Holder*, 441 F. App'x 458, 460 (9th Cir. 2011) (unpub. disposition).

[6] The force clause of Section 924(c) differs from the force clause of the career offender guideline only in that Section 924(c) includes force used against property in addition to force used against the person.  *Compare* 18 U.S.C. § 924(c)(3)(A), *with* U.S.S.G. § 4B1.2(a)(1).

25

Likewise, in *Park v. I.N.S.*, 252 F.3d 1018, 1021-22 (9th Cir. 2001), the court held that California involuntary manslaughter, Section 192(b), is a crime of violence under the very similar residual clause of 18 U.S.C. Section 16(b). The *Park* court reasoned that because of the close similarities between both the applicable manslaughter statutes and the applicable residual clauses, *Springfield* was controlling and compelled the conclusion that involuntary manslaughter under Section 192(b) does not satisfy the force clause, but does satisfy the residual clause. *Park*, 252 F.3d at 1021-22 & n. 4; *see also United States v. Payton*, 28 F.3d 17, 19 (4th Cir. 1994), *overruling recognized by United States v. Peterson*, 629 F.3d 432 (4th Cir. 2011) (relying on *Springfield* to conclude that defendant's prior conviction for involuntary manslaughter was a crime of violence under the residual clause of the career offender guideline).

Under these precedents, a defendant had little motivation to challenge the conclusion that his prior California conviction for voluntary manslaughter was a crime of violence under the career offender guideline. *Johnson* has fatally undermined the holding of these courts, however, by eliminating the residual clause. *See supra* III.B.1.a. Therefore, following *Johnson*, voluntary manslaughter is no longer a career offender predicate crime of violence under the residual clause.

### a.   Voluntary Manslaughter Is Not a Crime of Violence under the Force or Enumerated Offenses Clauses

The career offender designation in Petitioner's case cannot be salvaged under any other clause of the crime of violence definition. First, a conviction for voluntary manslaughter does not qualify as a crime of violence under the enumerated offenses clause because those enumerated offenses include only "burglary of a dwelling, arson, or extortion" or crimes "involv[ing] [the] use of explosives." U.S.S.G. § 4B1.2(a)(2). Manslaughter is not included in this list.

Second, as noted, the Ninth Circuit held in *Springfield* and recently confirmed in *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1306-07 (9th Cir. 2015), that manslaughter

26

categorically is not a crime of violence under the almost-identical force clauses in Section 924(c) and Section 16(a), [7] respectively. As the *Quijada-Aguilar* court recognized, a defendant can be convicted of Section 192(a) for merely reckless conduct and the statute therefore penalizes a broader range of conduct than the conduct encompassed by the generic definition of "use of force" in the force clause. [8] 799 F.3d at 1306-07; *See also Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc) ("[T]o constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another." (citing *Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004)); *Purohit v. Holder*, 441 F. App'x 458, 460 (9th Cir. 2011) (unpub. disposition) ("California Penal Code § 192(a) is not categorically a crime of violence because it can be committed through the reckless use of force."). That holding applies equally to the materially indistinguishable force clause of the career offender statute. Accordingly, voluntary manslaughter is not a crime of violence under either of the remaining clauses left in the career offender guideline following *Johnson*.

---

[7] Like the force clause of Section 924(c), the force clause of Section 16 differs from the force clause of the career offender guideline only in that Section 16 includes force used against property in addition to force used against the person. *Compare* 18 U.S.C. § 16(a) *with* U.S.S.G. § 4B1.2(a)(1).

[8] In 2003, the Ninth Circuit reached the opposite conclusion in *United States v. Bonilla-Montenegro*, 331 F.3d 1047, (9th Cir. 2003), a case involving the force clause of U.S.S.G. Section 2L1.2. There, the court rejected the defendant's argument that his conviction under Section 192(a) could not be a crime of violence under Section 2L1.2 because voluntary manslaughter did not require the intentional use of force. 331 F.3d 1047, 1050-51. The court relied on then-existing precedent holding that a crime need not involve the intentional use of force in order to be considered a crime of violence. *Id.* (citing *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1146 (9th Cir. 2001)). Subsequent Supreme Court and en banc Ninth Circuit precedent—namely *Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004), and *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc)—make clear that, in fact, a crime *does* need to require the intentional use of force in order to be considered a crime of violence under the force clause. Indeed, the *Fernandez-Ruiz* court "expressly overrule[d] [Ninth Circuit] cases holding that crimes of violence . . . may include offenses committed through the reckless, or grossly negligent, use of force," such as *Trinidad-Aquino* and *Bonilla-Montenegro*. Accordingly, *Bonilla-Montenegro* and *Trinidad-Aquino* have both been overruled.

27

1

2

3

    **b.**    **The Inclusion of Manslaughter Among the Offenses Enumerated in the Commentary to the Guideline Does not Serve to Make Petitioner a Career Offender.**

4

5

6

7

8

9

    As with robbery, the commentary includes "manslaughter" among the list of offenses enumerated in the application note. *See* U.S.S.G. § 4B1.2 cmt. n.1. Even if Section 192(a) matched the generic, federal definition of voluntary manslaughter,[9] with the excision of the residual clause from the career offender provision, the offenses listed only in the commentary to the guideline are no longer of any effect, because they only possibly interpreted the residual clause. *See supra* III.B.1.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    Just as with robbery, it is clear that the commentary's enumeration of manslaughter was meant to interpret the residual clause: as noted, the Ninth Circuit has consistently held that manslaughter does not have as an element the use, attempted use, or threatened use of force. *Quijada-Aguilar*, 799 F.3d at 1306-07 (Section 192(a) categorically does not satisfy the almost-identical force clause of 18 U.S.C. Section 16(a) because Section 192(a) does not "require proof of an *intentional* use of force[.]" Instead, "a person may be convicted of voluntary manslaughter under CPC § 192(a) for merely reckless conduct." (citing *People v. Lasko*, 23 Cal. 4th 101 (2000))); *Park*, 252 F.3d at 1021-22 & n.4 (Section 192(b) does not have as an element the use, attempted use, or threatened use of force); *Springfield,* 829 F.2d at 862 (Section 1112 does not have as an element the use, attempted use, or threatened use of force). And, on the other hand, the Ninth Circuit has consistently held that manslaughter falls within the residual clause because, by its nature, it involves the death of a person. *See Springfield*, 829 F.3d at 862; *Park*, 252 F.3d at 1021-22.

24

25

26

27

28

---

    [9] As far as counsel is aware, the Ninth Circuit has never articulated a generic, federal definition of voluntary manslaughter applicable to the career offender statute. And, if it did, under *Johnson I, Leocal*, and *Fernandez-Ruiz*, that standard likely would require both the intentional use of force and the use of violent force, neither of which are required by Section 192(a).

1       Against this background, it is clear that the commentary's reference to
2   manslaughter could only have interpreted the residual clause, i.e., as an example of a
3   type of crime that entails "a serious potential risk of physical injury to another." With
4   the residual clause excised from the guideline, the commentary no longer serves to
5   interpret or amplify any provision of the remaining text, but, instead, is a contrary and
6   plainly erroneous interpretation of what remains.  Once the residual clause is gone, the
7   commentary offenses—and especially manslaughter—must go as well.

8       For all of these reasons, following *Johnson*, petitioner's prior conviction under
9   California Penal Code § 192(a) is not a crime of violence for career offender purposes.

10  **C.**    **Petitioner's Conviction for Hobbs Act Robbery Is Not A Crime-Of-**
11      **Violence Predicate Either.**

12      Finally, Mr. Blackstone could not be sentenced as a career offender, because
13  Hobbs Act robbery is not a crime of violence under 4B1.2, for an even simpler reason
14  than it fails to satisfy the definition of crime of violence under 924(c). Section 924(c)'s
15  force clause includes threats against person *or property*. *See* 18 U.S.C. § 924(c). But
16  the career offender force clause is limited to the use of force against the *person*. *See*
17  U.S.S.G. § 4B1.2(a)(1). Hobbs Act robbery explicitly includes use of force or threat of
18  force against *property*. *See* 18 U.S.C. § 1951; *see*, *e.g.*, *United States v. Ashburn*, 2015
19  WL 5098607, at *2 (E.D.N.Y Feb. 11, 2015) (discussing charged Hobbs Act robberies
20  where the defendants entered jewelry store, smashed jewelry cases, and took
21  merchandise from the case). For this reason -- and for all of the reasons discussed
22  above in connection with 924(c)'s force clause, Hobbs Act robbery cannot be a
23  categorical match for the career offender force clause.

24      Hobbs Act robbery is not categorically any of the enumerated offenses in the text
25  of the guideline, including extortion. As the Ninth Circuit recently held, generic
26  extortion requires a consensual taking of property. *Dixon*, 805 F.3d at 1197. But plenty
27  of Hobbs Act robbery cases involve levels of force that are simply inconsistent with a
28  consensual taking. *See, e.g.*, *United States v. Brown*, 2013 WL 1624205, at *1 (S.D.

29

Fla. 2013) (describing Hobbs Act robbery charge where an armored truck driver was shot dead in an attempt to rob him of the money in his truck); *Zimmerman v. United States*, 2001 WL 120409 (E.D. Penn. 2001) (describing Hobbs Act robbery where defendant shot jewelry store owner in course of robbery). And others, such as the smashing of jewelry cases from the "presence" of the employers, would seem to have any element of consent at all. *See*, *e.g.*, *Ashburn*, 2015 WL 5098607, at *2. Such violations of Section 1951 "would not constitute extortion, which requires the taking of property to be consensual." *Dixon*, 805 F.3d at 1197.

Finally, the government will no doubt argue that Hobbs Act robbery is generic robbery -- or that whatever is not generic extortion is generic robbery. But for the reasons discussed above, *see supra*, *supra* III.B.1, the excision of the residual clause from the career offender guideline took with it the commentary that only served to interpret that clause, including, necessarily, the term "robbery." Thus even if Hobbs Act robbery constituted generic robbery -- a leap the Ninth Circuit has never made -- it would not matter, because that provision has been excised from the career offender guideline by *Johnson*.

//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the reasons set forth above, Petitioner's sentence was "imposed in violation of the Constitution or laws of the United States," and is "in excess of the maximum authorized by law." Petitioner is entitled to Section 2255 relief, he should be resentenced without the career offender guideline, and his conviction for 18 U.S.C. § 924(c), and the consecutive mandatory sentence associated with it, should be struck.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: May 19, 2016            By  /s/ *Brianna Fuller Mircheff*
                                   BRIANNA FULLER MIRCHEFF
                                   Deputy Federal Public Defender

31