EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRYANT Y. YANG (Cal. Bar No. 252943)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0166
    Facsimile: (213) 894-7631
    E-mail:    bryant.yang@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO BLACKSTONE,<br><br>      Petitioner,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | No. CV 16-03872-CAS<br>No. CR 99-00257-CAS-4<br><br>GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255 |

    Respondent-Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Bryant Y. Yang, hereby moves to dismiss the motion of petitioner-defendant Antonio Blackstone ("petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In the alternative, the government requests that the Court deny petitioner's claims in his § 2255 motion.

    The government's opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

1    For the reasons set forth in the attached memorandum, the

2  government believes that this matter may be resolved without a

3  hearing.

4

5  Dated: September 6, 2016          Respectfully submitted,

6                                    EILEEN M. DECKER
                                     United States Attorney
7
                                     LAWRENCE S. MIDDLETON
8                                    Assistant United States Attorney
                                     Chief, Criminal Division
9

10                                   _____/s/_____
                                     BRYANT Y. YANG
11                                   Assistant United States Attorney

12                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

**Contents**

TABLE OF AUTHORITIES...................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.    INTRODUCTION.....................................................1

II.   STATEMENT OF FACTS..............................................2

      A.   Petitioner's Conviction and Sentence......................2

      B.   Petitioner's Appeal and First § 2255 Motion...............4

      C.   Johnson, Welch, and Dimaya................................4

      D.   Petitioner's Second § 2255 Motion.........................6

III.  ARGUMENT........................................................8

      A.   Petitioner's Claims Are Procedurally Defaulted...........8

      B.   Petitioner's § 2255 Motion Is Time-Barred...............11

           1.   *Johnson* does not apply to § 924(c) – let alone,
                retroactively......................................12

           2.   *Johnson* similarly does not apply retroactively to
                Sentencing Guidelines challenges on collateral
                review.............................................17

      C.   Defendant's Claims Fail on the Merits...................25

           1.   Petitioner's motion must be denied because Hobbs
                Act robbery and Hobbs Act robbery conspiracy
                remain crimes of violence..........................26

           2.   Petitioner's challenge to his career offender
                sentence enhancement fails on the merits because
                his prior convictions for robbery and voluntary
                manslaughter constitute crimes of violence.........33

IV.   CONCLUSION.....................................................48

i

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

CASES

<u>Abbott v. United States</u>,
    562 U.S. 8 (2010)...........................................31

<u>Apprendi v. New Jersey</u>,
    530 U.S. 466 (2000).........................................19

<u>Atkins v. Virginia</u>,
    536 U.S. 304 (2002).........................................18

<u>Beard v. Banks</u>,
    542 U.S. 406 (2004).........................................22

<u>Beckles v. United States</u>,
    --- S. Ct. ---, 2016 WL 1029080 (June 27, 2016)...............5

<u>Bousley v. United States</u>,
    523 U.S. 614 (1998)..............................8, 9, 10, 20

<u>Chrzanoski v. Ashcroft</u>,
    327 F.3d 188 (2d Cir. 2003).................................30

<u>Clay v. United States</u>,
    537 U.S. 522 (2003).....................................11, 12

<u>Crawford v. Washington</u>,
    541 U.S. 36 (2004)..........................................19

<u>Dawkins v. United States</u>,
    809 F.3d 953 (7th Cir. 2016)................................34

<u>Dimaya v. Lynch</u>,
    803 F.3d 1110 (9th Cir. 2015)...........................passim

<u>Donnell v. United States</u>,
    --- F.3d ---, 2016 WL 3383831 (8th Cir. Jun. 20, 2016).....5, 23

<u>Edwards v. Carpenter</u>,
    529 U.S. 446 (2000)..........................................9

<u>Egger v. United States</u>,
    509 F.2d 745 (9th Cir. 1975).................................8

<u>Fernandez-Ruiz v. Gonzales</u>,
    466 F.3d 1121 (9th Cir. 2006).........................43-44, 46

<u>Gall v. United States</u>,
    552 U.S. 38 (2007)..........................................23

ii

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

<u>Gideon v. Wainwright</u>,
      372 U.S. 335 (1963).......................................18, 20

<u>Gilbert v. United States</u>,
      640 F.3d 1293 (11th Cir. 2011)...............................11

<u>In re Arnick</u>,
      --- F.3d ---, 2016 WL 3383487 (5th Cir. Jun. 17, 2016).5, 23, 24

<u>In re Burgest</u>,
      --- F.3d ---, 2016 WL 3923836 (11th Cir. July 21, 2016).......43

<u>In re Griffin</u>,
      --- F.3d ---, 2016 WL 3002293 (11th Cir. May 25, 2016).5, 23, 24

<u>In re Hubbard</u>,
      --- F.3d ---, 2016 WL 3181417 (4th Cir. June 8, 2016)......6, 25

<u>In re Patrick</u>,
      --- F.3d ---, 2016 WL 4254929 (6th Cir. Aug. 12, 2016).....6, 25

<u>In re Rivero</u>,
      797 F.3d 986 (11th Cir. 2015)............................24, 25

<u>In re Saint Fleur</u>,
      --- F.3d ---, 2016 WL 3190539 (11th Cir. June 8, 2016).......28

<u>James v. United States</u>,
      550 U.S. 192 (2007)..........................................20

<u>Johnson v. United States</u>,
      135 S. Ct. 2551 (2015)...................................passim

<u>Lambrix v. Singletary</u>,
      520 U.S. 518 (1997)..........................................22

<u>Leocal v. Ashcroft</u>,
      543 U.S. 1 (2004)........................................passim

<u>McQuiggin v. Perkins</u>,
      133 S. Ct. 1924 (2013).......................................9

<u>Miller v. Gammie</u>,
      335 F.3d 889 (9th Cir. 2003).................................41

<u>Mistretta v. United States</u>,
      488 U.S. 361 (1989)..........................................22

<u>Molina-Martinez v. United States</u>,
      136 S. Ct. 1338 (2016).......................................23

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                        PAGE

Nieves-Medrano v. Holder,
        590 F.3d 1057 (9th Cir. 2010).........................39, 40, 41

O'Dell v. Netherland,
        521 U.S. 151 (1997)......................................20, 22

People v. Bryant,
        56 Cal. 4th 959 (2013)......................................45

People v. Lasko,
        23 Cal. 4th 101 (2000)......................................43

People v. Penny,
        44 Cal. 2d 861 (1955)......................................45

Peugh v. United States,
        133 S. Ct. 2072 (2013).....................................23

Pinkerton v. United States,
        328 U.S. 640 (1946)........................................32

Quijada-Aguilar v. Lynch,
        799 F.3d 1303 (9th Cir. 2015).........................43, 44, 46

Reed v. Ross,
        468 U.S. 1 (1984)...........................................9

Roper v. Simmons,
        543 U.S. 551 (2005)........................................18

Saffle v. Parks,
        494 U.S. 484 (1990)........................................20

Schlup v. Delo,
        513 U.S. 298 (1995).........................................9

Schriro v. Summerlin,
        542 U.S. 348 (2004)...................................18, 19, 20

Serrano v. Holder,
        440 Fed. Appx. 586 (9th Cir. 2011).........................40

Shuti v. Lynch,
        --- F.3d ---, 2016 WL 3632539 (6th Cir. July 7, 2016)........16

Smith v. Gwin,
        477 U.S. 527 (1986).........................................9

Stewart v. LaGrand,
        526 U.S. 115 (1999).........................................9

iv

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

<u>Stinson v. United States</u>,
      508 U.S. 36 (1993).......................................passim

<u>Stringer v. Black</u>,
      503 U.S. 222 (1992)..........................................17

<u>Surratt v. United States</u>,
      165 F. Supp. 2d 946 (D. Minn. 2001)..........................11

<u>Sykes v. United States</u>,
      564 U.S. 1 (2011)........................................10, 20

<u>Teague v. Lane</u>,
      489 U.S. 288 (1989)..............................17, 18, 20, 21

<u>Tyler v. Cain</u>,
      533 U.S. 656 (2001)..........................................20

<u>United States v. Aitken</u>,
      No. CR-14-143-CAS, 2015 WL 1486925 (C.D. Cal. Mar. 30,
      2015) .......................................................44

<u>United States v. Allen</u>,
      157 F.3d 661 (9th Cir. 1998)..................................1

<u>United States v. Alvarez-Valenzuela</u>,
      231 F.3d 1198 (9th Cir. 2000).................................33

<u>United States v. Argo</u>,
      925 F.2d 1133 (9th Cir. 1991).................................10

<u>United States v. Armijio</u>,
      651 F.3d 1226 (10th Cir. 2011) ...............................35

<u>United States v. Bailey</u>,
      No. 14-328, 2016 WL 3381218 (C.D. Cal. June 8, 2016)..28, 29, 31

<u>United States v. Becerril-Lopez</u>,
      541 F.3d 881 (9th Cir. 2008).........................37, 38, 40

<u>United States v. Braswell</u>,
      501 F.3d 1147 (9th Cir. 2007).............................10, 11

<u>United States v. Clarke</u>,
      --- F. Supp. 3d ----, 2016 WL 1110306 (D. Md. March 22,
      2016)........................................................26

<u>United States v. David H.</u>,
      29 F.3d 489 (9th Cir. 1994)...............................40, 41

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Dixon,
    805 F.3d 1193 (9th Cir. 2015).........................39, 41, 42

United States v. Dominguez,
    No. CR 12-879 CAS, 2013 WL 4040125 (C.D. Cal. July 18,
    2013) ......................................................44

United States v. Dorsey,
    No. 14-CR-00328(B)-CAS, 2016 WL 3607155 (C.D. Cal. June 30,
    2016).......................................................27

United States v. Du Bo,
    186 F.3d 1177 (9th Cir. 1999)..............................29

United States v. Eichman,
    496 U.S. 310 (1990)........................................18

United States v. Estrada,
    No. CV-07-367-S-BLW, 2008 WL 5069083 (D. Idaho July 3,
    2008).......................................................11

United States v. Evans,
    No. 15-CR-57-H, 2015 WL 6673182 (E.D.N.C. Oct. 20, 2015)......26

United States v. Feola,
    420 U.S. 671 (1975)........................................32

United States v. Frady,
    456 U.S. 152 (1981).....................................8, 10

United States v. Garcia,
    210 F.3d 1058 (9th Cir. 2000)..............................12

United States v. Gonzalez-Longoria,
    813 F.3d 225 (5th Cir. 2016)...............................16

United States v. Gonzalez-Longoria,
    No. 15-40041, 2016 WL 4169127 (5th Cir. Aug. 5, 2016)........16

United States v. Gore,
    636 F.3d 728 (5th Cir. 2011)...............................31

United States v. Grajeda,
    581 F.3d 1186 (9th Cir. 2009)..............................46

United States v. Hall,
    714 F.3d 1270 (11th Cir. 2013)..........................35, 36

United States v. Hancock,
    --- F. Supp. 3d ----, 2016 WL 899239 (D. Md. Mar. 2, 2016)....29

1

**TABLE OF AUTHORITIES (CONTINUED)**

2      DESCRIPTION                                                    PAGE

3      United States v. Harris,
            572 F.3d 1065 (9th Cir. 2009)...........................37, 38
4
       United States v. Hill,
5           No. 14-3872, 2016 WL 4120667 (2d Cir. Aug. 3,
            2016).......................................13, 15, 16, 28
6
       United States v. Hopkins,
7            703 F.2d 1102, 1103 (9th Cir. 1983)........................28

8      United States v. House,
            --- F.3d ---, 2016 WL 3144735 (8th Cir. June 6, 2016)........28
9
       United States v. Howard,
10          --- Fed. Appx. ---, 2016 WL 2961978 (9th Cir. June 24,
            2016)...................................................27, 29
11
       United States v. Innie,
12          7 F.3d 840 (9th Cir. 1993).................................30

13     United States v. Jeffries,
            --- F.3d ---, 2016 WL 2848498 (5th Cir. May 13, 2016)........35
14
       United States v. Jeffries,
15          No. 14-51250, 2016 WL 3895247 (5th Cir. July 18, 2016).......47

16     United States v. King,
            979 F.2d 801 (10th Cir. 1992)..............................31
17
       United States v. Leshen,
18          453 Fed. Appx. 408 (4th Cir. 2011).........................36

19     United States v. Lockley,
            632 F.3d 1238 (11th Cir. 2011).............................35
20
       United States v. Luong,
21          2016 WL 1588495 (E.D. Cal. Apr. 20, 2016)...................31

22     United States v. Manzo-Solano,
            No. 14-10511, 2016 WL 1554120 (9th Cir. Apr. 18, 2016).......37
23
       United States v. Marrero,
24          743 F.3d 389 (3d Cir. 2014).............................35, 36

25     United States v. Mendez,
            992 F.2d 1488 (9th Cir. 1993)...........................26, 27
26
       United States v. Mitchell,
27          No. 99-687, 2001 WL 708808 (D. Del. June 20, 2001)...........11

28

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

<u>United States v. Pena</u>,
      --- F. Supp. 3d ---, 2016 WL 690746, at *7 (S.D.N.Y. Feb.
      11, 2016).....................................................30

<u>United States v. Pereira-Salmeron</u>,
      337 F.3d 1148 (9th Cir. 2003).................................43

<u>United States v. Preston</u>,
      910 F.2d 81 (3d Cir. 1990)................................30, 31

<u>United States v. Prickett</u>,
      --- F.3d ---, 2016 WL 4010515 (8th Cir. July 27, 2016)....13, 17

<u>United States v. Ratigan</u>,
      351 F.3d 957 (9th Cir. 2003)..................................8

<u>United States v. Rodriguez</u>,
      925 F.2d 1049 (7th Cir. 1991).................................30

<u>United States v. Rodriguez-Guzman</u>,
      506 F.3d 738 (9th Cir. 2007)..................................34

<u>United States v. Rollins</u>,
      No. 13-1731, 2016 Lexis App. 15960 (7th Cir. 2016) ..........35

<u>United States v. Selfa</u>,
      918 F.2d 749 (9th Cir. 1990)..............................28, 29

<u>United States v. Shell</u>,
      789 F.3d 335 (4th Cir. 2015)..................................36

<u>United States v. Snead</u>,
      No. CR 12-0649 CW, 2016 WL 4091548 (N.D. Cal. Aug. 2, 2016)...38

<u>United States v. Sorenson</u>,
      914 F.2d 173 (9th Cir. 1990)..................................10

<u>United States v. Soto-Rivera</u>,
      811 F.3d 53 (1st Cir. 2016)...................................35

<u>United States v. Tate</u>,
      No. 15-10283, 2016 WL 4191909 (9th Cir. Aug. 9, 2016)........38

<u>United States v. Taylor</u>,
      814 F.3d 340 (6th Cir. 2016)..............................passim

<u>United States v. Velasquez-Bosque</u>,
      601 F.3d 955 (9th Cir. 2010)..................................38

<u>United States v. Vivas-Ceja</u>,
      808 F.3d 719 (7th Cir. 2015)..................................16

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                    <u>PAGE</u>

<u>United States v. Walker</u>,
    595 F.3d 441 (2d Cir. 2010)...................................35

<u>Voisine v. United States</u>,
    --- S. Ct. ---, 2016 WL 3461559 (June 27, 2016).......44, 46, 47

<u>Welch v. United States</u>,
    136 S. Ct. 1257 (2016)...................................passim

<u>Whorton v. Bockting</u>,
    549 U.S. 406 (2007)........................................20

STATUTES

8 U.S.C. § 1101(a)(43)(F)........................................40

18 U.S.C. § 16..........................................40, 43, 47

18 U.S.C. § 16(a).......................................39, 40, 41

18 U.S.C. § 16(b).......................................5, 14, 15, 16

18 U.S.C. § 1951.........................................3, 11, 26

18 U.S.C. § 1951(a)..............................................26

18 U.S.C. § 1951(b)(1)...........................................26

18 U.S.C. § 2(a).................................................32

18 U.S.C. § 2112.................................................30

18 U.S.C. § 2113(a)..............................................28

18 U.S.C. § 5032.................................................41

18 U.S.C. § 924(c)..................................3, 27, 31, 32

18 U.S.C. § 924(c)(1)(A)..........................................6

18 U.S.C. § 924(c)(3)..............................1, 5, 7, 16

21 U.S.C. § 846..................................................31

28 U.S.C. § 2255.....................................1, 4, 6

28 U.S.C. § 2255(f)..............................................11

28 U.S.C. § 2255(f)(3)......................................12, 17

California Penal Code section 192(a)............................43

ix

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                  PAGE

California Penal Code section 192(b)................................45

California Penal Code section 211.....................33, 38, 39, 41

California Penal Code section 215..................................40

RULES

U.S.S.G. § 4B1.1.............................................3, 7, 10

U.S.S.G. § 4B1.2..........................................passim

U.S.S.G. § 2K2.1.................................................38

OTHER AUTHORITIES

Judicial Council of California Criminal Jury Instruction 580.......45

x

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

    On June 2, 2016, petitioner filed a motion to vacate, set aside, or correct his sentence.  (CV 1.)[1]  Petitioner was sentenced to 230 months of imprisonment, plus 60 months to be served consecutively, after a jury found him guilty of conspiring to interfere with commerce by robbery ("Hobbs Act robbery"), perpetrating a Hobbs Act robbery, and carrying a firearm during a crime of violence. Petitioner argues that, pursuant to <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), his sentence was imposed in violation of the Constitution or laws of the United States and exceeded the maximum authorized by law.  Specifically, he asserts that: (1) neither his convictions for Hobbs Act robbery conspiracy nor for a Hobbs Act robbery is a "crime of violence" under 18 U.S.C. § 924(c)(3), and (2) his two prior state felony convictions for robbery and voluntary manslaughter are not crimes of violence under the United States Sentencing Guidelines ("U.S.S.G.") § 4B1.2 (the "Career Offender Guideline").

19

20

21

22

23

24

25

    As set forth further below, petitioner's arguments lack merit and, accordingly, his § 2255 motion should be dismissed, denied, or dismissed in part and denied in part.  See <u>United States v. Allen</u>, 157 F.3d 661, 668 (9th Cir. 1998) (affirming in part a denial of a § 2255 motion and vacating in part with instructions to dismiss for lack of jurisdiction).  First, the Court should dismiss petitioner's claims because he did not raise them at trial or on appeal and,

26

27

28

---

    [1] "CR" refers to the district court docket sheet in petitioner's underlying criminal case, and "CV" refers to the district court docket sheet in the civil 28 U.S.C. § 2255 proceeding.  "PSR" refers to the Presentence Report.

1  therefore, the claims are procedurally defaulted.  Second,

2  petitioner's claims should be dismissed because they are time-barred;

3  petitioner asserts them more than one year after his conviction

4  became final.  Third, and in the alternative, the Court should deny

5  petitioner's claims on the merits because they are unpersuasive and

6  unavailing.  Specifically, even after <u>Johnson</u>, petitioner's

7  convictions for Hobbs Act conspiracy and robbery continue to qualify

8  as crimes of violence under § 924(c), and his prior convictions for

9  robbery, in violation of California Penal Code ("CPC") section 211,

10 and voluntary manslaughter, in violation of CPC section 192(a),

11 constitute crimes of violence under the Career Offender Guideline.

12 **II.  STATEMENT OF FACTS**

13     **A.  Petitioner's Conviction and Sentence**

14     Between approximately May 1997 and March 1998, petitioner

15 conspired with others to rob K-mart convenient stores at gunpoint.

16 (CV 1, at 1-2; PSR ¶ 20.)  On October 11, 1997, petitioner and a co-

17 conspirator entered a K-Mart store in Torrance, California, and asked

18 an employee for a job application.  (PSR ¶ 32.)  After the K-Mart

19 employee escorted them to the rear of the store, petitioner handed

20 him a note that read, "This is no joke, there are 4 gunmen."  (PSR

21 ¶ 32.)  Petitioner then brandished a firearm and ordered the employee

22 to walk to the store's office.  (PSR ¶ 32.)  Once inside the office,

23 petitioner ordered K-Mart employees to get on the floor and remain

24 quiet.  (PSR ¶ 33.)  He grabbed approximately twenty bags which

25 contained about $30,673 in cash, checks, and charges.  (PSR ¶ 35.)

26     On March 18, 1999, a grand jury indicted petitioner and six co-

27 defendants on nine counts.  (CR 1.)  The indictment charged

28 petitioner with the following: (1) conspiring to commit a Hobbs Act

robbery in violation of 18 U.S.C. § 1951; (2) committing a Hobbs Act robbery in violation of 18 U.S.C. § 1951; and (3) using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). (PSR ¶ 2; CR 1.) After 11 days of trail, a jury found petitioner guilty on all counts charged against him. (CR 231.)

The Presentence Report ("PSR") calculated petitioner's base offense level as 20, and added one level because the loss experienced by K-Mart exceeded $10,000. (PSR ¶¶ 62, 64.) The PSR then determined that petitioner qualified as a career offender under U.S.S.G. § 4B1.1 because he had sustained a felony conviction for a Hobbs Act robbery, a crime of violence, and had two prior felony convictions for crimes of violence: (1) robbery in violation of CPC section 211; and (2) voluntary manslaughter in violation of CPC section 192(a). (PSR ¶ 73.) On November 8, 1989, petitioner had robbed a 16-year old after striking him and knocking him to the ground. (PSR ¶¶ 80-81.) On September 6, 1990, after getting into a fight with a rival gang member, petitioner – a member of the Eight Trey Crips – shot the rival gang member in the back of the head. (PSR ¶¶ 82-84.) Because he qualified as a career offender, the PSR enhanced the total offense level to 32 and recommended a term of imprisonment between 210 to 240 months for conspiring and committing a Hobbs Act robbery. (PSR ¶¶ 74-75.) The PSR also pointed out that, under 18 U.S.C. § 924(c), the Court was required to sentence petitioner to a consecutive 60-month term of imprisonment because he had used a firearm while committing a Hobbs Act robbery. (PSR ¶ 76.)

At sentencing, the Court sentenced petitioner to 230 months of custody for the Hobbs Act counts and 60 months, to be served consecutively, for the § 924(c) count. (CR 332.) The Court imposed

the mid-range of the Sentencing Guidelines because petitioner's crime "was really a serious offense and the takeover and trauma to the victims w[ere] a great deal." (CV 1-3, at 20-21.)  The Court also imposed 3 years of supervised release, $300 of special assessments, and restitution in the amount of $30,673.00.  (CR 332.)

**B.   Petitioner's Appeal and First § 2255 Motion**

On May 17, 2000, petitioner filed a notice of appeal, attacking the sufficiency of the evidence and an evidentiary ruling by the district court.  (CR 334.)  On April 18, 2001, the Ninth Circuit rejected each of petitioner's arguments and affirmed his conviction. (CR 396.)  On October 1, 2001, the Supreme Court denied petitioner's petition for a writ of certiorari.  See Blackstone v. United States, 534 U.S. 910 (2001).

On January 31, 2002, petitioner filed his first motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255.  (CR 437.)  On November 27, 2002, the Court denied petitioner's first § 2255 motion.  (CR 462.)  Petitioner, thereafter, requested a certificate of appealability.  (CR 467.)  The Court denied the request for the certificate because petitioner had made no substantial showing of a denial of a constitutional right.  (CR 469.) Petitioner appealed and the Ninth Circuit rejected petitioner's request for a certificate of appealability.  (CR 464, 491.)

**C.   Johnson II, Welch, and Dimaya**

On June 26, 2015, the Supreme Court decided Johnson v. United States, 135 S. Ct. 2551 (2015), holding that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is void for vagueness.  The ACCA residual clause defined a "violent felony" as a crime "that otherwise involves conduct that presents a

4

serious potential risk of physical injury of another."  On April 18, 2016, the Supreme Court held in Welch v. United States, 136 S. Ct. 1257 (2016), that Johnson announced a new substantive rule of constitutional law that applies retroactively on collateral review to ACCA-enhanced sentences.  Id. at 1264-68.  In neither decision did the Court address whether Johnson applies to other sentence-enhancement provisions containing residual clauses, like 18 U.S.C. § 924(c)(3).  Nor did the Supreme Court address whether the holding in Johnson applies to identical language in USSG § 4B1.2's Career Offender Guideline and whether the ruling applies retroactively on collateral review to claims based on the Sentencing Guidelines.[2]

Although the Ninth Circuit in Dimaya v. Lynch, 803 F.3d 1110 (9th Cir. 2015), pet. for cert. filed June 10, 2016 (No. 15-1498), extended Johnson to the materially identical residual clause definition of a "crime of violence" in 18 U.S.C. § 16(b), no court of appeals has extended Johnson to § 924(c)(3).  Indeed, neither the Ninth Circuit nor the two other circuits with holdings similar to Dimaya have extended Johnson to § 924(c)(3), and the three circuits that have analyzed whether Johnson extends to § 924(c)(3) have concluded that it does not.

Similarly, the majority of Courts of Appeals have concluded that Johnson does not extend retroactively for collateral attacks based on the Career Offender Guideline.  Donnell v. United States, --- F.3d ---, 2016 WL 3383831 (8th Cir. Jun. 20, 2016); In re Arnick, --- F.3d ---, 2016 WL 3383487 (5th Cir. Jun. 17, 2016); In re Griffin, --- F.3d

---

[2] Whether Johnson applies to the United States Sentencing Guidelines and whether it does so retroactively are before the Supreme Court in Beckles v. United States, S. Ct. No. 15-8544, --- S. Ct. ---, 2016 WL 1029080 (June 27, 2016) (order granting certiorari).

1   ---, 2016 WL 3002293 (11th Cir. May 25, 2016); but see In re Patrick,

2   No. 16-5353, --- F.3d ---, 2016 WL 4254929 (6th Cir. Aug. 12, 2016);

3   In re Hubbard, --- F.3d ---, 2016 WL 3181417 (4th Cir. June 8, 2016).

4   These courts have reasoned that neither Johnson nor Welch announced a

5   new rule made expressly retroactive to the Sentencing Guidelines.

6       **D.   Petitioner's Second Section 2255 Motion**

7          On January 11, 2016, petitioner filed an application to file a

8   second or successive habeas petition with the Ninth Circuit.  On

9   May 19, 2016, petitioner filed an amended application.  On June 2,

10  2016, the Ninth Circuit granted petitioner's application.

11         On May 19, 2016, petitioner moved to vacate, set aside, or

12  correct his sentence under 28 U.S.C. § 2255.  (CV 1.)  He first

13  argues that his sentence under § 924(c) should be set aside or

14  vacated because, pursuant to Johnson, neither his conviction for

15  Hobbs Act conspiracy nor Hobbs Act robbery is a "crime of violence"

16  under § 924(c).  Section 924(c) authorizes the imposition of enhanced

17  penalties on a defendant who uses or carries a firearm while

18  committing a "crime of violence."  18 U.S.C. § 924(c)(1)(A), (B).

19  The term "crime of violence" is defined as "an offense that is a

20  felony" and:

21        "(A) has as an element the use, attempted use, or threatened use

22        of physical force against the person or property of another"

23        (the "elements" or "force" clause); or

24        "(B) that by its nature, involves a substantial risk that

25        physical force against the person or property of another may be

26        used in the course of committing the offense" (the "residual"

27        clause).

28

1   18 U.S.C. § 924(c)(3).  Petitioner asserts that <u>Johnson</u> invalidated

2   § 924(c)(3)'s residual clause and, therefore, his Hobbs Act

3   convictions cannot qualify as crimes of violence under that prong.

4   (Mem. P. & A. at 5-6.)  He also contends that § 924(c)(3)'s elements

5   clause does not categorically cover his convictions because one could

6   theoretically be convicted under the Hobbs Act without intentionally

7   using, attempting to use, or threatening to use force.  (<u>Id.</u> at 6-

8   12.)

9        Petitioner then argues that the enhancement he received as a

10  career offender under the Sentencing Guidelines should be set aside

11  or vacated because his prior convictions for robbery and voluntary

12  manslaughter are not crimes of violence under U.S.S.G. § 4B1.2.

13  Under the Sentencing Guidelines, a court may determine that a

14  defendant is a career offender and impose a sentence enhancement if,

15  among other requirements, the defendant has "at least two prior

16  felony convictions of either a crime of violence or a controlled

17  substance offense."  U.S.S.G. § 4B1.1(a).  A "crime of violence" is

18  defined as any offense that:

19      (1) "has as an element the use, attempted use, or threatened use

20      of physical force against the person of another" (the "elements"

21      or "force" clause); or

22      (2) "is burglary of a dwelling, arson, or extortion, involves

23      use of explosives" (the "enumerated crimes"); or

24      (3) "otherwise involves conduct that presents a serious

25      potential risk of physical injury to another" (the "residual

26      clause).

27  <u>Id.</u> at § 4B1.2(a).  Petitioner argues that <u>Johnson</u> retroactively

28  invalidated § 4B1.2(a)'s residual clause, and that his prior state

7

1  convictions are not enumerated crimes of violence and do not fall

2  under the purview of § 4B1.2(a)'s elements clause.  (Mem. P. & A. at

3  16-30.)

4  **III. ARGUMENT**

5       Petitioner claims that his conviction for conspiring and robbing

6  K-mart convenient stores at gunpoint are not crimes of violence.  He

7  further asserts that his prior convictions for robbing a 16-year old

8  after violently attacking him, and for shooting another person in the

9  back of the head, do not qualify as crimes of violence.  Petitioner's

10 claims are not only contrary to common sense and the ordinary meaning

11 of "crimes of violence," but they are procedurally barred and

12 substantively without merit.

13      **A.   Petitioner's Claims Are Procedurally Defaulted**

14      As a threshold matter, petitioner's claims should be dismissed

15 because they are procedurally defaulted.  A petitioner defaults a

16 claim when he fails to raise the claim before the trial court or on

17 direct appeal.  See, e.g., United States v. Frady, 456 U.S. 152, 162

18 (1981); United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003).

19 Generally, defaulted claims "cannot be made the basis for a second

20 attack under § 2255."  Egger v. United States, 509 F.2d 745, 748 (9th

21 Cir. 1975).  Defaulted claims may be "raised in habeas only if the

22 defendant can first demonstrate . . . 'cause' and actual

23 'prejudice.'"  Bousley v. United States, 523 U.S. 614, 622 (1998).

24 The "cause and prejudice standard presents a 'significantly higher

25 hurdle'" than the plain error standard applied on direct appeal.

26 Frady, 456 U.S. at 166.

27      "Cause" is construed extremely narrowly.  The Supreme Court has

28 excused default only where a defendant received ineffective

8

1  assistance of counsel, <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451

2  (2000); where the claim was "novel," <u>Reed v. Ross</u>, 468 U.S. 1, 16

3  (1984); or where the defendant was actually innocent, <u>see, e.g.</u>,

4  <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924, 1932 (2013).  As for cause

5  based on the novelty of the claim, petitioner must show that the new

6  rules he invokes were then virtually unknown; it is not enough to

7  show his claim was legally foreclosed during the time when he could

8  have appealed.  <u>Bousley</u>, 523 U.S. at 622; <u>see also</u> <u>Stewart v.

9  LaGrand</u>, 526 U.S. 115, 119-20 (1999); <u>Smith v. Gwin</u>, 477 U.S. 527,

10  537 (1986).  These limited exceptions balance the interest in

11  finality against the need to protect against a "fundamental

12  miscarriage of justice."  <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995).

13      Here, petitioner did not raise his current claims at trial or on

14  direct appeal and, as such, has defaulted his claims.  He may not

15  raise the defaulted claims because he has not first demonstrated

16  cause.  Petitioner does not raise an ineffective assistance of

17  counsel claim.  Nor does he assert that he is actually innocent of

18  his crimes of conviction.  To be sure, his challenge to his § 924(c)

19  conviction rings of actual innocence.  However, as set forth below,

20  because his § 924(c) challenge fails on the merits, he cannot avail

21  himself of procedural default's actual-innocence exception.

22      Nor are his <u>Johnson</u> claims based on a newly recognized rule that

23  is "so novel that its legal basis [wa]s not reasonably available,"

24  and thus he could not have been expected to raise it earlier.

25  <u>Bousley</u>, 523 U.S. at 622 (internal quotation marks omitted).  At the

26  time of petitioner's sentencing and direct appeal, arguments

27  challenging the constitutionality of ACCA's similarly worded residual

28  clause were not novel.  To the contrary, "the Federal Reporters were

9

replete with cases" discussing challenges to the ACCA's similarly worded residual clause on vagueness grounds. Bousley, 523 U.S. at 622; see, e.g., Sykes v. United States, 564 U.S. 1, 15-16 (2011) (rejecting argument); United States v. Argo, 925 F.2d 1133, 1134 (9th Cir. 1991) (same); United States v. Sorenson, 914 F.2d 173, 175 (9th Cir. 1990) (same). Similarly, challenges to whether various offenses constituted crimes of violence and whether various prior convictions constituted crimes of violence were common. The fact that such challenges were not successful does not excuse petitioner's failure to pursue a similar challenge to the residual clause of § 924(c)(3) or to the residual clause of U.S.S.G. § 4B1.2, because "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623 (internal quotation marks omitted).

Even assuming, arguendo, that petitioner can establish cause for his failure to previously raise his claims, the burden is on petitioner to prove prejudice. The prejudice prong requires the defendant to demonstrate that the alleged error "not merely created a possibility of prejudice, but that [it] worked to [his] actual and substantial disadvantage, infecting [his] entire [proceedings] with error of constitutional dimensions." United States v. Braswell, 501 F.3d 1147, 1150 (9th Cir. 2007) (emphasis in original) (quoting Frady, 456 U.S. at 170). Petitioner can only meet the prejudice prong if he can prove that both Hobbs Act robbery conspiracy and Hobbs Act robbery are not crimes of violence. As explained more fully below, he cannot do so.

Moreover, petitioner cannot show prejudice by his sentence enhancement as a career offender because he was sentenced below the

statutory maximum term of 240 months' imprisonment for the
convictions he sustained on the Hobbs Act robbery and conspiracy
counts, see 18 U.S.C. § 1951.  See United States v. Estrada, No. CV-
07-367-S-BLW, 2008 WL 5069083, at *4 (D. Idaho July 3, 2008)
("[Defendant] cannot show prejudice given that his sentence was not
above the relevant statutory maximum."); Surratt v. United States,
165 F. Supp. 2d 946, 949 (D. Minn. 2001) (same); United States v.
Mitchell, No. 99-687, 2001 WL 708808, at *3 (D. Del. June 20, 2001).
Because a "[defendant's] claim that a sentencing guidelines provision
was misapplied to him is not a constitutional claim," Gilbert v.
United States, 640 F.3d 1293, 1321-22 (11th Cir. 2011), defendant
cannot establish an "infecti[on] [of his] entire [proceedings] with
error of constitutional dimensions," as Braswell, 501 F.3d at 1150,
requires.

Accordingly, petitioner's motion should be dismissed.

**B.   Petitioner's § 2255 Motion Is Time-Barred.**

Even if petitioner's challenges were not defaulted, they are
untimely under 28 U.S.C. § 2255(f).  For motions under § 2255, "[a]
1-year period of limitation shall apply."  28 U.S.C. § 2255(f).  As
relevant here, "[t]he limitation period shall run from the latest of
(1) the date on which the judgment of conviction becomes final; . . .
[or] (3) the date on which the right asserted was initially
recognized by the Supreme Court, if that right has been newly
recognized by the Supreme Court and made retroactively applicable to
cases on collateral review."  Id.  A defendant's conviction becomes
final at the latter of when his petition for a writ of certiorari
with the United States Supreme Court is denied, or the 90-day period
for filing such a petition elapses.  Clay v. United States, 537 U.S.

11

1    522, 532 (2003); <u>United States v. Garcia</u>, 210 F.3d 1058, 1060 (9th

2    Cir. 2000); S. Ct. R. 13.1.

3         In this case, petitioner's conviction became final on October 1,

4    2001 – when the Supreme Court denied his petition for a writ of

5    certiorari.  <u>See</u> <u>Clay</u>, 537 U.S. at 532.  Petitioner, however, did not

6    file the instant § 2255 motion until May 19, 2016, approximately

7    fifteen years after his conviction became final.  As a result, his

8    motion is time-barred and should be dismissed.

9         In his motion, petitioner provides no explanation on why his

10   claims are timely.  He may argue that, because <u>Johnson</u> was decided

11   after the expiration of the limitations period, his claim is still

12   timely because it falls within the situation identified in 28 U.S.C.

13   § 2255(f)(3) – namely, that he is filing his motion within one year

14   of "the date on which the right asserted was initially recognized by

15   the Supreme Court," and the right has been "newly recognized by the

16   Supreme Court and made retroactively applicable to cases on

17   collateral review."  28 U.S.C. § 2255(f)(3).  However, as noted

18   below, the right recognized in <u>Johnson</u> has not been made

19   retroactively applicable to either § 924(c) or Career Offender

20   Guideline cases on collateral review.  Accordingly, petitioner's

21   claims do not fall within the exception identified in 28 U.S.C.

22   § 2255(f)(3), and is thus untimely.

23        1.   <u>*Johnson* does not apply to § 924(c) – let alone,</u>

24             <u>retroactively</u>

25        Petitioner's claims are untimely because <u>Johnson</u> does not extend

26   retroactively to his § 924(c) convictions.

27        <u>Johnson</u> held that the ACCA's residual clause violates the Due

28   Process Clause's "prohibition of vagueness in criminal statutes"

because "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2556-57. The Supreme Court concluded that "[t]wo features of the residual clause conspire to make it unconstitutionally vague." Id.; see also id. at 2560 (Although "[e]ach of the uncertainties in the residual clause may be tolerable in isolation," it was "'their sum [that made] a task for us which at best could be only guesswork.'"). First, the ACCA residual clause requires courts not only to discern the "ordinary case" of the offense and determine whether the "physical acts that make up the crime will injure someone," but also to evaluate the risk that injury might occur after the commission of the offense - a "speculative" inquiry that is "detached from statutory elements," id. at 2557-58, and could encompass injury "remote from the criminal act," id. at 2559. Second, the ACCA residual clause is unclear about what level of risk qualifies as a "serious potential risk," especially because the word "otherwise" indicates that the level of risk must be interpreted in light of the four preceding enumerated offenses, which are "far from clear in respect to the degree of risk each poses." Id. at 2558 (citation and internal quotation marks omitted).

No Court of Appeals has extended Johnson to § 924(c)(3). In fact, the three Courts of Appeals that have analyzed whether Johnson extends to § 924(c)(3) have concluded that it does not. See United States v. Taylor, 814 F.3d 340, 375-76 (6th Cir. 2016); United States v. Hill, No. 14-3872, 2016 WL 4120667, *7 (2d Cir. Aug. 3, 2016); United States v. Prickett, No. 15-3486, --- F.3d ---, 2016 WL 4010515, *1 (8th Cir. July 27, 2016) (per curiam). They have

13

1  concluded that the features which made the ACCA residual clause

2  unconstitutionally vague are not remotely present to the same degree

3  in § 924(c)(3)'s residual clause.

4          a.  Significant differences make § 924(c)(3) narrower
               and easier to construe than the ACCA

5

6  In Taylor, the Sixth Circuit held that Johnson is inapplicable

7  to § 924(c)(3)'s residual clause because "significant differences

8  mak[e] the definition of 'crime of violence' in § 924(c)(3)(B)

9  narrower than the definition of 'violent felony' in the ACCA residual

10 clause."  814 F.3d at 376.  It found persuasive that, unlike the

11 ACCA, which requires courts to evaluate "risk of physical injury to a

12 victim," § 924(c)(3) focuses on the "[r]isk of physical force against

13 a victim [which] is much more definite."  Id. at 376-77.  "[T]he

14 language of § 924(c)(3)(B) effectively requires that the person who

15 may potentially use physical force be the offender" and that the

16 "risk of force [be] confined to the offense itself."  Id. at 377.[3]

17 The Sixth Circuit also concluded that, unlike the ACCA residual

18 clause, § 924(c)(3)(B) "does not allow a court to consider risk-

19 related conduct beyond that which is an element of the predicate

20 since the provision covers offenses that 'by [their] nature' involve

21 a substantial risk that force may be used."  Id.  Moreover, the court

22

23     [3] In holding that drunk-driving offenses do not fall under 18
    U.S.C. § 16(b), the Supreme Court in Leocal v. Ashcroft, 543 U.S. 1,
24  10-11 (2004), construed that provision's materially indistinguishable
    text to focus exclusively on the risk that the offender might resort
25  to force in completing the offense and therefore to exclude the risk
    of injuries resulting from "accidental or negligent conduct."  And
26  the Court expressly noted that § 16(b) is narrower in that respect
    than the standard set forth in the ACCA's residual clause.  See id.
27  at 10 n.7 (discussing sentencing guideline modeled on the ACCA
    definition).  That distinctive feature of both § 16(b) and
28  § 924(c)(3) serves to further refine the "ordinary case" analysis in
    this context.

                                    14

explained that, unlike the ACCA residual clause, "[s]ection 924(c)(3)(B)'s requirement that physical force 'be used in the course of committing the offense" "does not allow courts to consider 'physical injury [that] is remote from the criminal act.'" Id. (quoting Johnson, 135 S. Ct. at 2559.); see also Hill, 2016 WL 4120667, *10 (holding that Johnson is inapplicable because the text of the residual clause of § 924(c)(3)(B) "is distinctly narrower" and "easier to construe").

The Sixth Circuit in Taylor also held that Johnson does not apply to § 924(c)(3)'s residual clause for another independent compelling reason:  § 924(c)(3) "does not complicate the level-of-risk inquiry by linking the 'substantial risk' standard, through the word otherwise, 'to a confusing list of examples.'"  814 F.3d at 377 (quoting Johnson, 135 S. Ct. at 2561).  Section 924(c)(3) has no such list of examples.  Consequently, § 924(c)(3) does not require analogizing the level of risk involved in a defendant's conduct to burglary, arson, extortion, or the use of explosives – a facet of the ACCA risk analysis that the Supreme Court had struggled with since its first residual-clause decision.  Id.; see also Hill, 2016 WL 4120667, *9 (holding that Johnson is inapplicable because the text of the residual clause of § 924(c)(3)(B) "contains no mystifying list of offenses and no indeterminate 'otherwise' phraseology").

> b.   *Dimaya does not require an extension of Johnson to § 924(c)*

In resisting this analysis, defendant insists that the Ninth Circuit's extension of Johnson to 18 U.S.C. § 16(b) in Dimaya, 803 F.3d 1110, means that Johnson applies equally to the residual clause of § 924(c)(3).  (Mem. P. & A. at 5-6.)  However, as decisions from

1    the Second and Sixth Circuits interpreting Johnson make plain,

2    defendant is wrong.   The Second Circuit in Hill rejected the

3    reasoning of those decisions that voided § 16(b) after Johnson.   See

4    2016 WL 4120667, at *11-*12.   Hill found "these opinions unpersuasive

5    for three reasons": (1) "each greatly underestimates -- or

6    misunderstands -- the significance of the list of enumerated offenses

7    in the ACCA's residual clause to the decision in Johnson"; (2) "these

8    cases either ignore or minimize the other textual distinctions

9    between the residual clause and the language of § 16(b)"; and (3)

10   "each case dismisses the significance of the Supreme Court's fraught

11   precedent interpreting the ACCA's residual clause."   Id.   The Second

12   Circuit thus concluded that these decisions "extend" Johnson II "in a

13   way flatly inconsistent with that decision's own articulation of the

14   limitations of its holding."   Id. at *12.   Indeed, the Sixth Circuit

15   has both (1) a Dimaya-like holding that § 16(b) is void for vagueness

16   under Johnson, see Shuti v. Lynch, No. 15-3835, --- F.3d ---, 2016 WL

17   3632539, *8 (6th Cir. July 7, 2016),[4] and (2) a holding that

18   § 924(c)(3) is not void for vagueness under Johnson, see Taylor, 814

19   F.3d at 375-76.[5]

20   _____

21       [4] The Seventh Circuit agrees with Dimaya and Shuti.   See United
     States v. Vivas-Ceja, 808 F.3d 719, 723 (7th Cir. 2015).   For a
22   moment, the Fifth Circuit did too, see United States v. Gonzalez-
     Longoria, 813 F.3d 225, 227 (5th Cir. 2016), but the en banc Fifth
23   Circuit overruled that decision and has now held that § 16(b) is not
     void for vagueness, see United States v. Gonzalez-Longoria, No. 15-
24   40041, 2016 WL 4169127, *1-2 (5th Cir. Aug. 5, 2016) (en banc).

         [5] The Ninth Circuit currently has before it two cases submitted
25   for decision asking whether Johnson applies to § 924(c)(3): United
     States v. Begay, No. 14-10080, and United States v. Brown, No. 14-
26   10393.   Particularly telling that the Ninth Circuit does not view
     Dimaya as controlling whether Johnson applies to § 924(c)(3) is that
27   the Ninth Circuit has been issuing orders granting applications for
     permission to file a second or successive § 2255 motion raising a
28   Johnson-based challenge to a § 924(c)(3) conviction that state: "The

                                        16

1    Based on the uncontradicted analysis of § 924(c)(3) of the

2   Second Circuit in Hill, the Sixth Circuit in Taylor, and the Eighth

3   Circuit in Prickett, this Court should also find that Johnson does

4   not apply to § 924(c)(3).  Even if this Court believed it is somehow

5   compelled by Dimaya to disagree with the Second, Sixth, and Eighth

6   Circuits, this Court should - at a minimum - deny petitioner's motion

7   on the basis that Johnson does not so apply because none of the

8   Courts of Appeals with Dimaya-like holdings have held that Johnson

9   applies to § 924(c)(3) retroactively on collateral review.

10  Accordingly, because Johnson does not apply retroactively to

11  petitioner's convictions under the Hobbs Act, petitioner's claims do

12  not fall under the exceptions identified in 28 U.S.C. § 2255(f)(3);

13  the claims are untimely and should be dismissed.

14            2.    Johnson similarly does not apply retroactively to

15                  Sentencing Guidelines challenges on collateral review

16    Defendant's challenges to his sentence enhancement under the

17  Career Offender Guideline are similarly untimely because Johnson does

18  not apply retroactively to Sentencing Guidelines challenges on

19  collateral review.

20    Under the Supreme Court's retroactivity analysis, which is

21  commonly known as a Teague analysis, new rules of criminal procedure

22  do not apply retroactively to cases that became final before the

23  decisions announcing those rules were issued.  Teague v. Lane, 489

24  U.S. 288, 310 (1989); see also Stringer v. Black, 503 U.S. 222, 228

25  (1992) (referring to the "interests in finality, predictability, and

26  comity underlying our new rule jurisprudence").  A Teague analysis

27  _____

28  district court may wish to stay proceedings pending this court's
    decision[] in . . . 14-10080, United States v. Begay." E.g., June 2,
    2016, Order in Caver v. United States, No. 15-73779.

involves three questions.  The first question is whether the
defendant is seeking to benefit from a "new" rule.  After all, <u>Teague</u>
was designed to safeguard the threat to finality that is posed by
applying rules "not in existence at the time a conviction became
final."  <u>Teague</u>, 489 U.S. at 309.  If the rule is new, then the
second question is whether the rule is "procedural" as opposed to
substantive.  If the rule is both new and procedural, <u>Teague</u> bars the
courts from announcing or applying the rule retroactively in cases on
collateral review unless the rule falls within a narrow exception
permitting the retroactive application of "watershed" rules of
criminal procedure, <u>i.e.</u>, rules on par with <u>Gideon v. Wainwright</u>, 372
U.S. 335 (1963).  <u>See Teague</u>, 489 U.S. at 311.

a.   <em>Procedural versus substantive rules</em>

Substantive constitutional rules include rules that "place
particular conduct or persons covered by statute beyond the
[government's] power to punish."  <u>Schriro v. Summerlin</u>, 542 U.S. 348,
352 (2004).  Substantive conduct-restricting constitutional rules
include decisions holding that the First Amendment prohibits criminal
prosecution for flag-burning.  <u>See</u>, <u>e.g.</u>, <u>United States v. Eichman</u>,
496 U.S. 310 (1990); <u>Texas v. Johnson</u>, 491 U.S. 397 (1989).
Substantive penalty-restricting constitutional rules include
decisions holding that the Eighth Amendment bars the death penalty
for certain offenders.  <u>See</u>, <u>e.g.</u>, <u>Roper v. Simmons</u>, 543 U.S. 551
(2005) (juveniles); <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002)
(intellectually disabled).  Those new rules are retroactive in cases
on collateral review because they "necessarily carry a significant
risk that a defendant stands convicted of an act that the law does
not make criminal or faces a punishment that the law cannot impose

18

upon him." <u>Schriro</u>, 542 U.S. at 352 (quotation marks and citation omitted).  A substantive sentencing rule, then, is one that changes the lawful boundaries of punishment.

Procedural rules, unlike substantive rules, do not forbid prosecution or conviction for a crime, or otherwise alter the permissible range of outcomes; rather, they concern <u>how</u> the ultimate determination (guilt or innocence or the appropriate sentence) must be reached.  They include such rules as those requiring facts to be treated as elements of a crime, see <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), or regulating the admissibility of certain evidence at trial, <u>see</u> <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).  In the case of <u>Apprendi</u> and its progeny, the rules require a jury finding as to the operative fact beyond a reasonable doubt; in the case of <u>Crawford</u>, the rule requires an opportunity for cross-examination of an out-of-court declarant.  Neither changes the range of legally permissible outcomes.  A procedural sentencing rule, then, includes one that alters the factors that a court may consider in imposing a discretionary sentence within an authorized range, as such a sentence would not change the lawful boundaries of punishment.

New procedural rules therefore do not implicate the concerns that justify the retroactive application of new substantive rules: they do not produce a class of person who have been convicted of non-criminal conduct or, as is relevant here, alter the range of sentences for which the defendant is eligible, but instead "merely raise the possibility" that the now-invalid procedure might have affected the course of the proceeding.  See <u>Schriro</u>, 542 U.S. at 352. This "more speculative connection" to outcomes has led the Supreme Court to deny retroactive effect to new procedural rules in federal

1    collateral review and thereby protect the finality of criminal

2    judgments.  Id.; see also Bousley, 523 U.S. at 620; Teague, 489 U.S.

3    at 311.

4                    b.   In the Sentencing Guidelines context, Johnson is
                          a procedural rule subject to Teague's non-
5                         retroactivity directive.[6]

6         In Welch, the Supreme Court held that Johnson announced a new

7    substantive rule of constitutional law that, because it is

8    substantive, applies retroactively on collateral review in cases

9    involving ACCA-enhanced sentences.  But the Supreme Court's holding

10   in Welch that Johnson applies retroactively in ACCA cases does not

11   govern the separate question whether Johnson applies retroactively to

12   claims based on the Sentencing Guidelines and raised on collateral

13   review.  The application of Johnson to the ACCA is a substantive

14   change in the law because it necessarily alters the statutory range

15   of permissible sentences, but the application of Johnson to the

16

17        [6] The government's position is that the rule in Johnson as
     applied to the Career Offender Guideline is new, procedural, and non-
18   watershed, and is thus subject to Teague's rule of nonretroactivity.
     The government focuses on the procedural nature of the rule in the
19   discussion that follows in the text.  The rule is also new, in that
     (1) no prior precedent dictated the conclusion that the Guidelines'
20   residual clause is unconstitutionally vague, see, e.g., contrary
     holdings in James v. United States, 550 U.S. 192, 210 n.6 (2007), and
21   Sykes v. United States, 131 S. Ct. 2267, 2277 (2010); and (2) no
     prior precedent dictated the conclusion that the Sentencing
22   Guidelines are even amenable to vagueness challenges.

23        The rule is also non-watershed, because the exception for
     watershed procedural rules is intended for rules bearing the same
24   "primacy and centrality" to the criminal justice process as the rule
     of Gideon v. Wainwright, 372 U.S. 335 (1963).  See Tyler v. Cain, 533
25   U.S. 656, 665 (2001) (calling it an "extremely narrow exception");
     Whorton v. Bockting, 549 U.S. 406, 417, 418 (2007) (the Supreme Court
26   has never found that a new procedural rule qualifies as watershed);
     Saffle v. Parks, 494 U.S. 484, 495 (1990); O'Dell v. Netherland, 521
27   U.S. 151, 167 (1997) (new rule deemed not to be watershed because it
     was "not on par" with the "sweeping rule of Gideon").  The government
28   is willing to further brief the issue of whether the rule of Johnson
     is "new" or "watershed" should the Court wish.

Guidelines' residual clause produces procedural changes in the sentencing process that are not retroactive on collateral review.[7]

The function of the Johnson rule (that the residual clause is unconstitutionally vague) is markedly different in the Guidelines context than in a case involving the erroneous imposition of a sentence under the ACCA.  In the ACCA context, sentencing a defendant based on the residual clause functions to raise the statutory minimum and maximum terms of imprisonment so that the defendant is exposed to a wholly new and unauthorized range of sentencing options.  Welch, 136 S. Ct. at 1265.  An ACCA error results in a sentence that is "not authorized by substantive law."  Id. at 1266.  That error directly implicates the separation of powers principle that federal courts may not impose sentences that are not authorized by Congress.  See id. at 1268 ("[A] court lacks the power to exact a penalty that has not been authorized by any valid criminal statute.").

In the Guidelines context, by contrast, sentencing a defendant in light of an erroneous application of § 4B1.1 does not alter the

---

[7] In order to grant collateral relief in a Guidelines case based on Johnson, the Court would actually have to announce or apply two new rules that were not established before Johnson: first, that the Guidelines' residual clause is unconstitutionally vague, and second, that due process vagueness principles apply to the Sentencing Guidelines.

Although the government agrees that both of these propositions represent the law after Johnson, neither proposition was dictated by the law as it existed before Johnson.  And because these two propositions involve matters of sentencing procedure, the Court, consistent with Teague, should not recognize and apply them in a collateral challenge to a sentence that was final before Johnson.  In sum, Johnson applies retroactively to all ACCA cases and in Guidelines cases on direct review, but it does not apply retroactively in Guidelines cases that were final before the decision was announced.  In the discussion that follows, the government focuses on the first rule – that the residual clause of the Career Offender Guideline is vague.  Should the Court wish for briefing on the applicability of Teague to the second rule, the government will provide it.

statutory boundaries for sentencing set by Congress for the crime.    A rule invalidating the crime-of-violence residual clause in the Career Offender Guideline would establish that a defendant's Guidelines range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime. An erroneous application of the Career Offender Guideline results in incorrect advice to the sentencing court, but does not authorize an otherwise-inapplicable statutory mandatory minimum sentence or produce a higher-than-otherwise-applicable statutory maximum, as is true under the ACCA with respect to comparable error.  See Mistretta v. United States, 488 U.S. 361, 396 (1989) (Sentencing Guidelines do not usurp the legislative responsibility for establishing minimum and maximum penalties for every crime, but instead operate "within the broad limits established by Congress").   It therefore relates to the "manner of determining" the defendant's sentence, Welch, 136 S. Ct. at 1265, which is the function of a procedural rather than a substantive rule.

The Supreme Court's capital cases reflect the distinction – treating as procedural (and nonretroactive) new constitutional rules that affect the weight or manner of considering factors bearing on whether to impose a death sentence without altering a defendant's eligibility for a capital sentence.[8]   See Welch, 136 S. Ct. at 1266.

---

[8] See, e.g., Beard v. Banks, 542 U.S. 406, 408, 420 (2004) (new constitutional rule that juries may consider mitigating factors even if not found unanimously is not retroactive); O'Dell, 521 U.S. at 167 (new constitutional rule that capital defendant may introduce evidence of his parole ineligibility to rebut argument about future dangerousness is not retroactive); Lambrix v. Singletary, 520 U.S. 518, 539 (1997) (new constitutional rule of Espinosa v. Florida, 505 U.S. 1079 (1992) (per curiam), that a sentencing court's consideration of an advisory jury's constitutionally flawed

Even if those errors may have affected the outcome, they remain procedural.  If that is true in the capital context, the same must be true for comparable errors in the non-capital context.

Changing the Guidelines range to recommend a different sentence is of the same, procedural character.  See Molina-Martinez v. United States, 136 S. Ct. 1338, 1345-46 (2016) (improper Guidelines calculation is "significant procedural error") (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  Like those other erroneously considered factors, the range exerts an influence on the ultimate sentence, see Peugh v. United States, 133 S. Ct. 2072, 2081-84 (2013), but does not change the authorized range of punishment.  See Molina-Martinez, 136 S. Ct. at 1346 (Guidelines "inform and instruct the district court's determination of an appropriate sentence").  Weighing an improper factor in reaching an authorized sentence within unchanged statutory boundaries is a procedural error that, accordingly, does not merit retroactive effect.

> c.   Recent decisions from the Courts of Appeals

Three Courts of Appeals have recently held that the Supreme Court has not made the rule announced in Johnson retroactive to Guidelines challenges on collateral review.  Donnell, 2016 WL 3383831; In re Arnick, 2016 WL 3383487; In re Griffin, 2016 WL 3002293.  In Donnell, the Eighth Circuit refused to permit a collateral challenge to a career offender enhancement because neither Johnson nor Welch announced a new rule made retroactive to the

---

recommendation of a capital sentence violates the Eighth Amendment, was a non-retroactive procedural rule); Sawyer v. Smith, 497 U.S. 227, 229, 232, 244-45 (1990) (new constitutional rule that capital sentence may not be imposed when the jury is led to believe that responsibility for the death penalty lies elsewhere is not retroactive).

1   Sentencing Guidelines.  2016 WL 3383831, at *1, 3.  In <u>Arnick</u>, the
2   Fifth Circuit reasoned that <u>Johnson</u> did not address the career
3   offender provision of the Guidelines, and even if <u>Johnson</u> does govern
4   Guidelines challenges on direct review, the Supreme Court has not
5   held that "this arguably new rule of criminal procedure applies
6   retroactively to cases on collateral review."  2016 WL 3383487, at
7   *1.

8          In <u>Griffin</u>, the Eleventh Circuit distinguished the ACCA context
9   from the Guidelines context for purposes of retroactivity, relying on
10  the distinction articulated above: "The application of <u>Johnson</u> to the
11  ACCA was a substantive change in the law because it altered the
12  statutory range of permissible sentences."  <u>In re Griffin</u>, 2016 WL
13  3002293, at *5.  "By contrast, a rule extending <u>Johnson</u> and
14  concluding that it invalidates the crime-of-violence residual clause
15  in the Guidelines would establish only that the defendant's
16  guidelines range had been incorrectly calculated, but it would not
17  alter the statutory boundaries for sentencing set by Congress for the
18  crime."  <u>Id.</u>  "Instead, such a rule when applied in the guidelines
19  context would produce changes in how the sentencing procedural
20  process is to be conducted -- changes that are not entitled to
21  retroactive effect in cases on collateral review in a second or
22  successive § 2255 motion."  <u>Id.</u>

23         <u>In re Rivero</u>, another recent Eleventh Circuit decision, is also
24  instructive.  797 F.3d 986 (11th Cir. 2015), <u>pet. for habeas corpus</u>
25  <u>denied</u>, 136 S. Ct. 2408 (2016).  In that case, as in <u>Griffin</u>, the
26  court rejected an application for leave to file a second or
27  successive Section 2255 motion.  The court held that "<u>Johnson</u> did not
28  establish a new rule of constitutional law made retroactive to cases

24

1   on collateral review by the Supreme Court." <u>Id.</u>  <u>Rivero</u>'s
2   categorical conclusion that <u>Johnson</u> never applies on collateral
3   review is necessarily limited by <u>Welch</u>'s holding that <u>Johnson</u> does
4   apply retroactively to ACCA challenges.  Notably, however, even as it
5   extended <u>Johnson</u> in <u>Welch</u>, the Supreme Court denied review in <u>Rivero</u>.

6          To be sure, the Fourth Circuit in <u>In re Hubbard</u> and the Sixth
7   Circuit in <u>In re Patrick</u> disagree with the Fifth, Eighth, and
8   Eleventh Circuits' analysis and conclude that "the rule in Johnson is
9   substantive with respect to its application to the Sentencing
10  Guidelines and therefore applies retroactively." <u>In re Hubbard</u>, 2016
11  WL 3181417, at *7; <u>see also</u> <u>In re Patrick</u>, 2016 WL 4254929, at *3-4
12  (agreeing with <u>Hubbard</u>).

13         This Court, however, should follow the majority rule that
14  <u>Johnson</u> is not retroactively applicable to Sentencing Guidelines
15  cases on collateral review, conclude that petitioner's motion does
16  not fall under the exception to the one-year period of limitation in
17  28 U.S.C. § 2255(f), and thus dismiss the motion as untimely.

18      **C.   Petitioner's Claims Fail on the Merits.**

19         Even if <u>Johnson</u> were retroactively applicable to § 924(c) and
20  Sentencing Guideline cases on collateral review, petitioner's claims
21  still fail.  Regardless of the validity of § 924(c)'s residual
22  clause, both Hobbs Act robbery conspiracy and substantive Hobbs Act
23  robbery qualify as crimes of violence under the elements clause of
24  § 924(c).  Similarly, defendant's prior convictions for robbery and
25  voluntary manslaughter remain crimes of violence because they are
26  enumerated offenses or covered under the elements clause of U.S.S.G.
27  § 4B1.2.
28

1.  **Defendant's motion must be denied because Hobbs Act robbery and Hobbs Act robbery conspiracy remain crimes of violence**

    a.  *The Hobbs Act is divisible*

The Hobbs Act, 18 U.S.C. § 1951, provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C. § 1951(a).  Thus, Section 1951 contains two separate substantive crimes — robbery and extortion — which are both defined separately.  It is therefore a divisible statute.  See United States v. Mendez, 992 F.2d 1488, 1491 (9th Cir. 1993).  "[T]he statute proscribes two independent criminal acts — robbery . . . and extortion . . . ."  United States v. Clarke, --- F.Supp.3d ----, 2016 WL 1110306, at *3 (D. Md. March 22, 2016); United States v. Evans, No. 15-CR-57-H, 2015 WL 6673182, at *3 (E.D.N.C. Oct. 20, 2015) ("The Hobbs Act as provided in 18 U.S.C. § 1951 is a divisible statute because multiple versions of the crime are set forth in the statute as alternative elements of offense.").  Robbery, the Hobbs Act violation charged in this case, is defined under 18 U.S.C. § 1951(b)(1) as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."

                  **b.**   *Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3)(A)*

Petitioner contends that Hobbs Act robbery does not constitute a crime of violence under the elements clause because it: (1) can be accomplished by minimal force or fear of injury without threat of physical; and (2) does not require intentional force or intentional threatened use of force.  (Mem. P. & A. at 8-12.)  Defendant's argument defies common sense, is foreclosed by Ninth Circuit precedent, and has been rejected by a "chorus of judges declaring that a robbery in violation of the Hobbs Act is a 'crime of violence' for purposes of 18 U.S.C. § 924(c)."  United States v. Dorsey, No. 2:14-CR-00328(B)-CAS, 2016 WL 3607155, at *4 (C.D. Cal. June 30, 2016) (Snyder, J.).

Prior to Johnson, the Ninth Circuit held in United States v. Mendez, 992 F.2d 1488, 1491 (9th Cir. 1993), that Hobbs Act robbery "indisputably qualifies as a crime of violence" under § 924(c)'s elements clause because it requires "actual or threatened force, or violence."  Nothing in Johnson or Dimaya, neither of which addressed the elements clause, undermines that conclusion.  Johnson, 135 S. Ct. at 2557 (distinguishing elements clause from residual clause); Dimaya, 803 F.3d at 1120, n.17 (decision did not "cast any doubt on the constitutionality of 18 U.S.C. § 16(a)'s definition of a crime of violence").

The Ninth Circuit recently reaffirmed in an unpublished decision that Hobbs Act robbery is a crime of violence under the elements clause of § 924(c)(3).  United States v. Howard, --- Fed. Appx. ---, No. 15-10042, 2016 WL 2961978, at *1 (9th Cir. June 24, 2016) (citing Mendez, 992 F.2d at 1491).  The defendant in Howard made the same

1    argument as petitioner makes here, that Hobbs Act robbery does not

2    categorically involve the use, attempted use, or threatened use of

3    physical force, because it may be accomplished by putting someone in

4    fear of injury without threats of physical force.  Id.  The Ninth

5    Circuit held that the argument was "foreclosed" by United States v.

6    Selfa, 918 F.2d 749, 751-52 (9th Cir. 1990), a case in which the

7    Court of Appeal held that "the analogous federal bank robbery

8    statute, which may be violated by 'force and violence, or by

9    intimidation,' 18 U.S.C. § 2113(a), qualifies as a crime of violence

10   under U.S.S.G. § 4B1.2."  2016 WL 3470070, at *1.  The court

11   reaffirmed that "'intimidation' means willfully 'to take, or attempt

12   to take, in such a way that would put an ordinary, reasonable person

13   in fear of bodily harm,' which satisfies the requirement of a

14   'threatened use of physical force.'"  Id. (quoting United States v.

15   Hopkins, 703 F.2d 1102, 1103 (9th Cir. 1983)).  Thereafter, in no

16   uncertain terms, the Ninth Circuit concluded that "Hobbs Act robbery

17   by means of 'fear of injury' also qualifies as crime of violence."

18   Id.  In doing so, the Ninth Circuit joined every other circuit to

19   have considered the issue.  See, e.g., In re Saint Fleur, No. 16-

20   12299, --- F.3d ---, 2016 WL 3190539, at *4 (11th Cir. June 8, 2016)

21   (holding that Hobbs Act robbery "clearly qualifies as a 'crime of

22   violence' under" the elements clause in Section 924(c)(3)(A)); United

23   States v. House, No. 14-3011, --- F.3d ---, 2016 WL 3144735 (8th Cir.

24   June 6, 2016) (same); Hill, 2016 WL 4120667, at *6-*7 (same).

25        This Court has also already rejected petitioner's arguments.  In

26   United States v. Bailey, No. CR14-328-CAS, 2016 WL 3381218, at *6

27   (C.D. Cal. June 8, 2016) (Snyder, J.), the Court held that "the text,

28   history, and context of the Hobbs Act compel a reading of the phrase

28

'fear of injury' that is limited to fear of injury <u>from the use of</u> <u>force</u>."  The Court was unpersuaded by the defendant's examples of crimes that did not involve a threat of force, including threats to economic interests or crimes involving minimal force.  It concluded that such cases could be dismissed for failure to state an offense and that the defendant failed to demonstrate "'a realistic probability' that the elements of Hobbs Act robbery can be met without also qualifying as a violent crime under the section 924(c) force clause."  <u>Id.</u> at *4.  Moreover, the Court rejected the argument that Hobbs Act robbery could be accomplished without intent.  Relying on <u>Howard</u>, the Court concluded that defendant "failed to demonstrate more than a theoretical possibility that the unintentional use of force may meet the elements of Hobbs Act robbery."  <u>Id.</u> at *6.

Here, as in <u>Howard</u> and <u>Bailey</u>, the Court should hold that Hobbs Act robbery is a crime of violence under the elements clause of § 924(c).  The text, history, and context of the Hobbs Act establish that the "fear of injury" for a Hobbs Act robbery must arise from the use or threatened use of physical force.  <u>See</u> <u>United States v.</u> <u>Hancock</u>, --- F. Supp. 3d ----, No. GJH-13-0274, 2016 WL 899239, at *4 (D. Md. Mar. 2, 2016) ("[T]he most innocent conduct chargeable as a Hobbs Act robbery requires the act of taking or obtaining property from another person or in their presence, against their will by creating a fear of injury.  By necessity . . . this requires the use or threatened use of force.").  Defendant's argument to the contrary is foreclosed by <u>Selfa</u>.  Moreover, contrary to defendant's contention, Hobbs Act robbery cannot be committed recklessly or negligently.  <u>United States v. Du Bo</u>, 186 F.3d 1177, 1179 (9th Cir. 1999) ("Although not stated in the Hobbs Act itself, criminal intent

1    - acting 'knowingly or willingly' - is an implied and necessary
2    element that the government must prove for a Hobbs Act conviction.").
3    As such, a person convicted of the crime has necessarily acted with
4    the requisite intent.

5        Petitioner's examples based on inapposite case law relating to
6    common law robbery, robbery of a letter carrier, and assault are
7    unpersuasive.  See United States v. Pena, --- F. Supp. 3d ---, 2016
8    WL 690746, at *7 (S.D.N.Y. Feb. 11, 2016)(distinguishing United
9    States v. Rodriguez, 925 F.2d 1049 (7th Cir. 1991), which petitioner
10   cites, because robbery of government property under 18 U.S.C. § 2112
11   "sweeps more broadly than Hobbs Act robbery"); id. at *8 (finding
12   Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003), inapposite
13   "because the text, history, and context of the Hobbs Act compel a
14   reading of the phrase 'fear of injury' that is limited to fear of
15   injury from the use of force").  His "examples do not satisfy the
16   'realistic probability' standard of the categorical approach because
17   he fails to cite any cases in which 'courts in fact did apply the
18   [Hobbs Act]' . . . in the manner [defendant] claims they would."  See
19   Bailey, 2016 WL 3381218, at *4.

20            c.   Hobbs Act conspiracy is a crime of violence under
21                 the elements clause of § 924(c)(3)(B)

22       Petitioner's claim that a Hobbs Act conspiracy is not a crime of
23   violence fares no better.

24       Hobbs Act robbery conspiracy qualifies as a crime of violence
25   under the elements clause of § 924(c)(3).  "[A] defendant who
26   conspires to commit a crime of violence . . . has committed a crime
27   of violence."  United States v. Innie, 7 F.3d 840, 852 (9th Cir.
28   1993) (citing United States v. Preston, 910 F.2d 81, 86-87 (3d Cir.

1990)).  For a defendant to be convicted of conspiracy to commit

Hobbs Act robbery, the jury must find beyond a reasonable doubt that

the object of the conspiracy was Hobbs Act robbery.  (See CR 1

(Petitioner "knowingly and willfully conspired and agreed . . . to

commit . . . interference with commerce by robbery of K Mart stores .

. . .")) Because Hobbs Act robbery necessarily involves the use,

attempted use, or threatened use of force against another person, a

conspiracy to commit such a robbery thus satisfies the elements

clause in Section 16(a).  See Preston, 910 F.2d at 86 (holding that

"the elements of criminal conspiracy to commit robbery, of which

Preston was convicted, subsume the elements of robbery, which is a

violent felony for purposes of § 924(e)").[9]

For example, participation in a drug conspiracy, in violation of

21 U.S.C. § 846, may serve as the predicate to a § 924(c) conviction

for possessing a firearm in furtherance of a drug trafficking crime.

See, e.g., Abbott v. United States, 562 U.S. 8, 14 (2010).  In such a

case, it does not matter whether a defendant personally committed the

substantive drug trafficking offense that is the object of the § 846

conspiracy.  In the Hobbs Act robbery conspiracy context, it is

---

[9] But see United States v. Gore, 636 F.3d 728, 731 (5th Cir.
2011) (disagreeing with Preston, noting that "an element of a crime
is a fact that must be proven beyond a reasonable doubt to obtain
conviction" and the prosecuting agency "could obtain a conviction of
conspiracy without proving beyond a reasonable doubt that the
defendant committed the crime that was the conspiracy's object")
(internal quotation marks omitted); United States v. King, 979 F.2d
801, 803 (10th Cir. 1992) ("[I]f a conspiracy to commit armed robbery
is to be deemed a 'violent felony' under § 924(e)(2)(B)(i), it must
be on the basis of the elements of the conspiracy charge, not the
underlying substantive offense."); United States v. Luong, 2016 WL
1588495, at *3 (E.D. Cal. Apr. 20, 2016) (holding that "conspiracy to
commit Hobbs Act robbery does not have as an element the use or
attempted use of physical force and is not a crime of violence under
the [elements] clause").

31

1    similarly irrelevant whether the defendant himself used or threatened

2    to use force in connection with his agreement to commit the object of

3    the conspiracy.  United States v. Feola, 420 U.S. 671, 694 (1975)

4    ("The law of conspiracy identifies the agreement to engage in a

5    criminal venture as an event of sufficient threat to social order to

6    permit the imposition of criminal sanctions for the agreement alone,

7    plus an overt act in pursuit of it, regardless of whether the crime

8    agreed upon actually is committed.").  Here, petitioner not only

9    agreed to commit a Hobbs Act robbery, but he armed himself with a

10   firearm, took over a K-Mart store, and held people hostage while he

11   looted the store of about $30,673 in cash, checks, and charges.  This

12   agreement unequivocally "threatened" the use of force and thus

13   satisfies the elements clause.

14       Petitioner's contrary interpretation would have bizarre

15   consequences.  For example, federal law has long provided that one

16   who aids and abets an offense "is punishable as a principal."  18

17   U.S.C. § 2(a).  But, by petitioner's logic, aiding and abetting

18   liability would be insufficient to support a § 924(c) conviction

19   because it would not necessarily involve the defendant's personal

20   "use, attempted use, or threatened use of physical force."  And the

21   distinction between aiding and abetting and conspiracy is not that

22   the former is a theory of liability.  After all, under Pinkerton v.

23   United States, 328 U.S. 640 (1946), a conspirator may be held liable

24   "for a substantive offense committed by a co-conspirator as long as

25   the offense occurred within the course of the conspiracy, was within

26   the scope of the agreement, and could reasonably have been foreseen

27   as a necessary or natural consequence of the unlawful agreement."

28

                                     32

1   <u>United States v. Alvarez-Valenzuela</u>, 231 F.3d 1198, 1201 (9th Cir.

2   2000).  Petitioner's construction should therefore be rejected.

3

4          2.   <u>Petitioner's challenge to his career offender sentence</u>
               <u>enhancement fails on the merits because his prior</u>

5              <u>convictions for robbery and voluntary manslaughter</u>
               <u>constitute crimes of violence</u>

6      Like his challenge to the his § 924(c) conviction, petitioner's

7   challenge to his career offender sentence enhancement fails because

8   his prior convictions for robbery and voluntary manslaughter are

9   crimes of violence separate and apart from the residual clause of

10  U.S.S.G. § 4B1.2.

11          a.   *California Penal Code section 211 remains a crime*
                 *of violence*

12     Petitioner was convicted of robbery under CPC section 211 for

13  robbing a 16-year old after striking him and knocking him to the

14  ground.  CPC section 211 provides that "[r]obbery is the felonious

15  taking of personal property in the possession of another, from his

16  person or immediate presence, and against his will, accomplished by

17  means of force or fear."  This conviction qualifies as a crime of

18  violence under the enumerated crimes clause and elements clause of

19  the Career Offender Guideline.

20          (A)  Robbery is an enumerated crime of violence

21     The United States Supreme Court has long held that "Commentary

22  which functions to interpret [a] guideline or explain how it is to be

23  applied controls."  <u>Stinson v. United States</u>, 508 U.S. 36, 42-43

24  (1993) (internal citation and quotation marks omitted).  In <u>Stinson</u>,

25  the Supreme Court held that the provision of the commentary to the

26  career offender guideline that excludes felon-in-possession offenses

27  from the definition of "crime of violence," while not "compelled by

28

                                   33

1   the guideline text," was "a binding interpretation of the phrase
2   'crime of violence.'"   Id. at 47 (internal quotation mark omitted).
3   In so holding, it concluded that Sentencing Guidelines commentary is
4   "akin to an agency's interpretation of its own legislative rules."
5   Thus, under Stinson, commentary "that interprets or explains a
6   guideline is authoritative unless it violates the Constitution or a
7   federal statute, or is inconsistent with, or a plainly erroneous
8   reading of, that guideline."   Id. at 38.

9       Robbery was enumerated as a crime of violence in U.S.S.G.
10  § 4B1.2's Commentary, which was designated as "Application Note 1."
11  The Sentencing Commission's interpretation of the term "crime of
12  violence" to include the offenses listed in the commentary "does not
13  run afoul of the Constitution or a federal statute" and "is not
14  plainly erroneous or inconsistent with § 4B1.2."   See Stinson, 508
15  U.S. at 38 (internal quotation marks omitted).   As such, the
16  Commentary to § 4B1.2 is binding and robbery is a per se crime of
17  violence under the Guidelines.   See United States v. Rodriguez-
18  Guzman, 506 F.3d 738, 741 (9th Cir. 2007) ("When an offense is
19  specifically enumerated by the Application Notes as a 'crime of
20  violence,' we have consistently drawn the conclusion that the offense
21  is a per se crime of violence under the Guidelines.").

22      The Supreme Court's decision in Johnson – which implicates only
23  the residual clause of of § 4B1.2(a)(2) - does not alter this analysis.
24  The Commentary interprets and explains the term "crime of violence,"
25  not just the residual clause.   And consideration of the enumerated
26  offenses - including in the Commentary - does not require application
27  of the test found unconstitutional in Johnson.   See Dawkins v. United
28  States, 809 F.3d 953, 955 (7th Cir. 2016) (per curiam) (finding no

1   issue under <u>Johnson</u> because the court "did not need to resort to the
2   residual clause" to determine that a prior conviction was a "crime of
3   violence" and because the conviction was among enumerated offenses).
4   Accordingly, those enumerated offenses have independent force.
5   <u>United States v. Jeffries</u>, --- F.3d ---, 2016 WL 2848498, at *1 (5th
6   Cir. May 13, 2016) (per curiam) (the defendant was "not sentenced
7   under the residual clause of § 4B1.2" and had "no arguable claim of
8   relief under <u>Johnson</u>," because his prior conviction was "specifically
9   enumerated [as a] crime of violence under Application Note 1.");
10  <u>United States v. Marrero</u>, 743 F.3d 389, 398 (3d Cir. 2014) (murder
11  conviction was a "crime of violence" because it is enumerated in
12  Application Note 1); <u>United States v. Hall</u>, 714 F.3d 1270, 1274 (11th
13  Cir. 2013) ("We hold that <u>Stinson</u> controls, and that the definition
14  of 'crime of violence' provided by the Guidelines commentary is
15  authoritative."); <u>United States v. Lockley</u>, 632 F.3d 1238, 1241-42
16  (11th Cir. 2011) (robbery is an offense "specifically designate[d]"
17  as a "crime of violence" pursuant to § 4B1.2); <u>United States v.</u>
18  <u>Walker</u>, 595 F.3d 441, 445 (2d Cir. 2010) (the commentary is "part and
19  parcel" of the Guidelines, and thus robbery is a "crime of violence"
20  because it is so identified in the application note).

21      The structure of Application Note 1 itself shows that its
22  enumerated offenses do not depend upon the residual clause -
23  undercutting the reasoning of <u>United States v. Rollins</u>, No. 13-1731,
24  2016 Lexis App. 15960 (7th Cir. 2016) (en banc); <u>United States v.</u>
25  <u>Soto-Rivera</u>, 811 F.3d 53, 60 (1st Cir. 2016), <u>United States v.</u>
26  Armijio, 651 F.3d 1226, 1234-37 (10th Cir. 2011), and other similar
27  cases relied on by petitioner (<u>see</u> Mem. P. & A. at 24). Enumerated
28  offenses are separate from the residual clause in text of the Career

1    Offender Guideline, see § 4B1.2(a)(2); they are identically separate

2    from the residual clause in the Commentary.  After setting forth

3    additional enumerated offenses, Application Note 1 indicates that

4    "[o]ther offenses are included as 'crimes of violence' if" they

5    satisfy the elements test or the residual clause.  U.S.S.G. § 4B1.2,

6    comment. (n.1).  Additionally, the Commentary's enumerated offenses

7    include redundant reference to each of the enumerated offenses set

8    forth in the Career Offender Guideline itself: "burglary of a

9    dwelling," "arson," and "extortion."  See USSG § 4B1.2(a)(2); accord

10   id., comment. (n.1) (again listing "burglary of a dwelling," "arson,"

11   and "extortion").  A plain reading shows - as other circuits have

12   held - that the other listed offenses thus simply expand upon the

13   enumerated offenses in the Guideline.  E.g., Marrero, 743 F.3d at

14   397-401; Hall, 714 F.3d at 1272-74.  Though not "compelled by the

15   guideline text," this is a "binding interpretation" of "crime of

16   violence."  Stinson, 508 U.S. at 47.

17       Petitioner relies on two Fourth Circuit cases, United States v.

18   Leshen, 453 Fed. Appx. 408, 413-15 (4th Cir. 2011) and United States

19   v. Shell, 789 F.3d 335 (4th Cir. 2015), to argue that the Court

20   should discount the commentary.  (Mem. P. & A. at 21-23.)  That

21   argument lacks persuasive value here because the authority cited is

22   not controlling and it addresses situations where there is a conflict

23   between the Guidelines and the commentary.  Here, there is no

24   conflict:  rather the commentary expands on the enumerated crimes,

25   and Stinson provides that the Court should look to the commentary as

26   an interpretative guide.  Stinson, 508 U.S. at 42-43.

27       Indeed, the Ninth Circuit has consistently held that a

28   conviction under CPC section 211 or a materially similar statute

                                    36

constitutes an enumerated "crime of violence" under the Sentencing Guidelines.  In United States v. Becerril-Lopez, 541 F.3d 881, 892-893 (9th Cir. 2008), the Ninth Circuit held that CPC section 211 is a crime of violence for purposes of Guidelines § 2L1.2.[10]  Becerril-Lopez held that CPC section 211 is broader than the federal generic crime of robbery because it encompasses threats to property, rather than just people.  Id. at 891.  The Court concluded, however, that even if "[t]akings through threats to property and other threats of unlawful injury" did not fall within federal generic robbery, they did constitute federal generic extortion.  Id.  Because both robbery and extortion are enumerated as crimes of violence under the Commentary to § 2L1.2, the Court held that any conviction under CPC section 211 constitutes a crime of violence.  Id. at 892-93; see also United States v. Mazariego-Gomez, --- Fed. Appx. ---, 2016 WL 1554135, *1 (9th Cir. Apr. 18, 2016) (citing Becerril-Lopez as "foreclose[ing]" the defendant's argument that his "prior conviction under Penal Code § 211 is not a crime of violence"); United States v. Manzo-Solano, --- Fed. Appx. ---, 2016 WL 1554120, *1 (9th Cir. Apr. 18, 2016) (same for "second-degree robbery under California Penal Code §§ 211 and 212.5(c)").  Relying on Becerril-Lopez, the Court of Appeals held in United States v. Harris, 572 F.3d 1065, 1066 (9th Cir. 2009) (per curiam), that Nevada's robbery statute "categorically qualify as crimes of violence under U.S.S.G. § 4B1.2."  In doing so, the Ninth Circuit concluded that the Nevada statute was "like the

---

[10] In relevant part, § 2L1.2 defines "crime of violence" as: "any of the following offenses under federal, state, or local law . . . robbery, arson, extortion . . . or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."

1    California robbery statute analyzed in <u>Becerril-Lopez</u>."  <u>See also</u>

2    <u>United States v. Velasquez-Bosque</u>, 601 F.3d 955, 960 (9th Cir. 2010)

3    (reciting holding of <u>Harris</u> and explaining that "the Nevada statute

4    was indistinguishable from California section 211").  Recently, in

5    <u>United States v. Tate</u>, No. 15-10283, 2016 WL 4191909, at *2 (9th Cir.

6    Aug. 9, 2016) (unpublished), the Ninth Circuit held that

7    CPC section 211 is a crime of violence for purposes of U.S.S.G.

8    § 2K2.1, which relies on § 4B1.2(a) and the Commentary to § 4B1.2.

9    The Ninth Circuit concluded that a defendant, "who committed robbery

10   under § 211, necessarily committed either generic robbery or generic

11   extortion, which are both listed as crimes of violence in

12   §§ 4B1.2(a)(2) and 4B1.2's Application Note 1."  <u>Id.</u>

13        Pursuant to <u>Becerril-Lopez</u>, <u>Harris</u>, and <u>Tate</u>, the Court should

14   find that petitioner's conviction under CPC section 211 remains a

15   crime of violence after <u>Johnson</u>.  <u>United States v. Snead</u>, No. CR 12-

16   0649 CW, 2016 WL 4091548, at *7 (N.D. Cal. Aug. 2, 2016) ("Because

17   § 4B1.2's definition of crime of violence encompasses both generic

18   robbery and generic extortion and because the Ninth Circuit has held

19   that California Penal Code section 211 always constitutes either

20   generic robbery or generic extortion, Movant's conviction under

21   section 211 continues to qualify as a crime of violence following

22   <u>Johnson</u>.").  This interpretation avoids creating a drastic, illogical

23   disparity in weight between the same enumerated offenses included

24   within "crime of violence" under the Commentary to § 2L1.2 and those

25   included within "crime of violence" under the text and commentary to

26   § 4B1.2.  It would also comport with the Ninth Circuit's reading of

27   §§ 4B1.2(a)(2) and 4B1.2's Application Note 1 in <u>Harris</u> and <u>Tate</u>.

28

1    The current Sentencing Guidelines, which became effective

2   August 1, 2016, confirm this reasoning.  As part of a "multi-year

3   study of statutory and guidelines definitions" that focused on the

4   impact that prior convictions have on statutory and guidelines

5   provisions, the Sentencing Commission considered, "public comment,

6   and case law," and, notably, "the Supreme Court's recent decision in

7   Johnson."  (See Amendment: 'Crime of Violence' and Related Issues at

8   1, attached hereto as Ex. 1.)  Relying on Johnson, the Commission

9   struck the residual clause of § 4B1.2(a)(2), but moved robbery and

10  extortion from the Commentary to the text of the Guideline.  (Id. at

11  2, 3.)  The amendments represent the Commission's intent to revise

12  the list of enumerated offenses "to focus on the most dangerous

13  repeat offenders" and to foster "easier application" of the

14  Guideline.  (Id. at 2-3.)  By including robbery and extortion in the

15  text of the Guideline, the Commission signaled its intent to reaffirm

16  CPC section 211's place in the career offender analysis post-Johnson.

17  (Id. at 3.)

18                        (B)  Under Nieves-Medrano, California Penal Code
                               section 211 Satisfies the "Elements" Clause
19                             of § 4B1.2

20    In addition to fitting within the "enumerated offenses" clause

21  discussed above, Ninth Circuit precedent shows that CPC section 211

22  also fits the "elements" test.  Although the Ninth Circuit recently

23  held that CPC section 211 cannot qualify as a "violent felony" under

24  the ACCA, United States v. Dixon, 805 F.3d 1193 (9th Cir. 2015), the

25  panel neither addressed - nor had authority to overrule - prior

26  holdings that the statute does qualify as a "crime of violence" under

27  18 U.S.C. § 16(a).  Those precedents control here because § 16(a)'s

28  elements clause is identical to the elements clause of the Career

                                    39

1   Offender Guideline.   Compare U.S.S.G. § 4B1.2, with 18 U.S.C.

2   § 16(a).

3        In Nieves-Medrano v. Holder, 590 F.3d 1057, 1057-58 (9th Cir.

4   2010), the Ninth Circuit held that carjacking in violation of

5   California Penal Code section 215 is categorically a "crime of

6   violence" under 8 U.S.C. § 1101(a)(43)(F) (which, in turn, refers to

7   18 U.S.C. § 16).   The Circuit reasoned: (1) Becerril-Lopez, held that

8   California robbery is categorically a "crime of violence" under

9   U.S.S.G. § 2L1.2; (2) although the Sentencing Guidelines' definition

10  of "crime of violence" differed from the immigration statutes, which

11  use 18 U.S.C. § 16, those differences were irrelevant; and (3) that

12  "[t]he same elements that make § 211 a crime of violence are also

13  required in § 215," insofar as both include "the felonious taking of

14  property in the presence of another 'by means of force or fear.'"

15  Id. at 1057-58.

16       Although Nieves-Medrano involved carjacking rather than robbery,

17  its holding that carjacking is a crime of violence under 18 U.S.C.

18  § 16 necessarily rests on the Ninth Circuit's conclusion that

19  California robbery "has as an element the use, attempted use, or

20  threatened use of physical force against the person or property of

21  another."   See 18 U.S.C. § 16(a).   Indeed, the Ninth Circuit cited

22  Nieves-Medrano for the proposition that CPC section 211 is a "crime

23  of violence" under the elements clause.   See Serrano v. Holder, 440

24  Fed. Appx. 586, 587 (9th Cir. 2011) (unpublished) ("A conviction

25  under Cal. Penal Code § 211 is categorically a crime of violence

26  under 18 U.S.C. § 16(a).").

27       Similarly, in United States v. David H., 29 F.3d 489, 494 (9th

28  Cir. 1994), the Ninth Circuit applied the categorical approach to

40

hold that "a violation of California Penal Code § 211 includes the
element of 'threatened use of physical force against the person of
another.'"   The question in David H. was whether the defendant's
prior robbery conviction triggered a mandatory transfer provision
under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5032.   That
provision applies when, among other things, the defendant has a prior
conviction for "a felony offense that has as an element thereof the
use, attempted use, or threatened use of physical force against the
person of another, or that, by its very nature, involves a
substantial risk that physical force against the person of another
may be used in committing the offense." 29 F.3d at 493 (quoting 18
U.S.C. § 5032).   Applying the categorical analysis and relying on the
"elements" clause, the Circuit held that "a violation of California
Penal Code § 211 includes the element of 'threatened use of physical
force against the person of another'" – that is, that it satisfies a
standard that would also satisfy 18 U.S.C. § 16(a) and § 4B1.2(a)(1).
Compare id. at 494 with 18 U.S.C. § 16(a), U.S.S.G. § 4B1.2(a)(1).

As a result, robbery under CPC section 211 is categorically an
"aggravated felony" under 18 U.S.C. § 16(a) and, in turn, the
elements clause of § 4B1.2(a) – the provision of the Career Offender
Guideline irrefutably unaffected by Johnson.   Although the government
recognizes that Dixon, 805 F.3d 1193, is in some tension with these
precedents, the three-judge panel in Dixon (1) did not mention either
Nieves-Medrano or David H. and (2) had no authority to overrule them.
Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003) (three-judge
panel is bound by prior panel opinions and can reexamine them only
when "the reasoning or theory of our prior circuit authority is
clearly irreconcilable with the reasoning or theory of intervening

41

1    higher authority"). Accordingly, pre-<u>Dixon</u> precedent - not <u>Dixon</u>

2    itself - controls here, and petitioner fails to establish that his

3    career offender enhancement resulted from application of the

4    "residual," rather than the "elements," clause under § 4B1.2.

5    

6              b.   *Voluntary manslaughter is a crime of violence*

7         Petitioner was convicted of voluntary manslaughter after he shot

8    a rival gang member in the back of the head.  CPC section 192(a)

9    provides that voluntary manslaughter "is the unlawful killing of a

10   human being without malice" "upon a sudden quarrel or heat of

11   passion."  His conviction qualifies as a crime of violence under the

12   enumerated crimes and elements clauses of U.S.S.G. § 4B1.2.

13                      (A)  Voluntary manslaughter is a crime of
14                           violence per se

15        Voluntary manslaughter is a crime of violence because, like

16   robbery, it is an enumerated crime under the Career Offender

17   Guideline and its Commentary.  Application Note 1 to the prior

18   version of § 4B1.2 defined the term to "include[] murder[] [and]

19   manslaughter."  U.S.S.G. § 4B1.2, comment. (n.1).  The commentary

20   does not conflict with the Constitution or a federal statute, and is

21   not plainly erroneous or inconsistent with the Career Offender

22   Guideline.  In fact, it is wholly consistent with the text; the

23   enumerated examples in the commentary are separated from the residual

24   clause just like the text of § 4B1.2.  Thus, a plain reading of

25   Application Note 1 demonstrates that it expanded the categories of

26   crimes that are per se crimes of violence to include manslaughter.

27   The amended U.S.S.G. § 4B1.2 support this interpretation.  Since

28   August 1, 2016, the Sentencing Guidelines have unambiguously provided

                                    42

that "voluntary manslaughter" is a crime of violence.  Accordingly, the Court should hold that voluntary manslaughter is a per se crime of violence for purposes of U.S.S.G. § 4B1.2 "regardless of whether Johnson renders the residual clause in the Guidelines unconstitutional."  See In re Burgest, No. 16-14597-J, --- F.3d ---, 2016 WL 3923836, at *2 (11th Cir. July 21, 2016) (relying on Stinson and the commentary to § 4B1.2 to hold that manslaughter is a crime of violence); United States v. Pereira-Salmeron, 337 F.3d 1148, 1152 (9th Cir. 2003) ("If the list of crimes [in the Application Note] was intended by the Commission to have any meaning at all, it must have been to highlight certain crimes as deserving treatment as per se crimes of violence.")

> (B)  Because California Penal Code section 192(a) requires intentional and deliberate use of force, voluntary manslaughter is a crime of violence under the elements clause

Voluntary manslaughter also fits the definition of crime of violence through the elements clause of § 4B1.2.

Defendant mistakenly relies on Quijada-Aguilar v. Lynch, 799 F.3d 1303, 1306-07 (9th Cir. 2015), and Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc), to argue that voluntary manslaughter is not a crime of violence under the Career Offender Guideline because, under California Penal Code section 192(a), a person can be convicted of reckless conduct.  (Mem. P. & A. at 26-28.)  In Quijada-Aguilar, the Ninth Circuit held that section 192(a) does not categorically qualify as a crime of violence under 18 U.S.C. § 16, which requires "proof of intentional use of force or a substantial risk that force will be intentionally used during its commission."  799 F.3d at 1306.  Citing People v. Lasko,

43

1    23 Cal. 4th 101 (2000), the Ninth Circuit held that a person may be
2    convicted of voluntary manslaughter under section 192(a) for reckless
3    conduct.  Id.  In Fernandez-Ruiz, 466 F.3d at 1132, the Ninth Circuit
4    held that a misdemeanor domestic violence conviction was not a
5    categorical crime of violence under § 16(a) because one could be
6    convicted under the statute in question for reckless or grossly
7    negligent use of force.  The Ninth Circuit premised its reasoning on
8    Leocal v. Ashcroft, 543 U.S. 1, 9 (2004), where the Supreme Court
9    held that a conviction for driving under the influence ("DUI") was
10   not a crime of violence under § 16(a) because the statute in question
11   only required proof of negligence.  Id. at 1129.

12       Neither Quijada-Aguilar nor Fernandez-Ruiz is persuasive here.[11]
13   First, Leocal concluded that a DUI conviction under a Florida statute
14   was not a crime of violence, as defined by § 16(a), because the state
15   statute "do[es] not require any mental state with respect to the use
16   of force against another person, thus reaching individuals who were
17   negligent or less."  543 U.S. at 13.  The Supreme Court expressly
18   stated that its holding does not cover "a state or federal offense
19   that requires proof of the reckless use of force against a person or
20   property."  Id.  Therefore, Fernandez-Ruiz's conclusion that "Leocal
21   . . . extends to crimes involving the reckless use of force" is
22   patently wrong.  See 466 F.3d at 1129.

23
24
_____

25       [11] This Court has previously held that voluntary manslaughter in
     violation of CPC section 192(a) is not a crime of violence under 18
26   U.S.C. § 16.  See United States v. Dominguez, No. CR 12-879 CAS, 2013
     WL 4040125, at *1 (C.D. Cal. July 18, 2013); United States v. Aitken,
27   No. CR-14-143-CAS, 2015 WL 1486925, at *4 (C.D. Cal. Mar. 30, 2015).
     These decisions, however, relied on Fernandez-Ruiz and its progeny,
28   which are no longer good law in light of Voisine v. United States, --
     - S. Ct. ---, No. 14-10154, 2016 WL 3461559, at *5 (June 27, 2016).

1        Second, the California Supreme Court has further clarified the

2   elements of voluntary manslaughter under CPC section 129(a) in People

3   v. Bryant, 56 Cal. 4th 959, 968 (2013).  In Bryant, the California

4   Supreme Court explained that "either intent to kill or a conscious

5   disregard for life is an essential element of voluntary

6   manslaughter."  Id.  The court defined "conscious disregard for life

7   to refer to the mental component of . . . implied malice-i.e., that

8   the act which resulted in death be performed by a person who knows

9   that his conduct endangers the life of another and who acts with

10  conscious disregard for life."  Id.  Stated differently, to be

11  convicted, a defendant must have acted with conscious disregard for

12  life when he or she intentionally and deliberately used force to

13  endanger the life of another person.  Thus, pursuant to Bryant, a

14  conviction under CPC section 192(a) for voluntary manslaughter does,

15  in fact, require proof that a defendant possessed a certain mental

16  state and acted intentionally.

17       Third, homicides that result from "reckless" conduct are subject

18  to a different statute, California Penal Code section 192(b), which

19  criminalizes involuntary manslaughter.  Involuntary manslaughter

20  requires "aggravated, culpable, gross, or reckless" conduct that

21  creates a high risk of death or great bodily injury and that

22  evidences a disregard for human life or indifference to the

23  consequences of the conduct.  People v. Penny, 44 Cal. 2d 861, 879

24  (1955).  To this effect, juries are instructed that a defendant

25  commits involuntary manslaughter where the defendant unlawfully kills

26  another with "criminal negligence," which is "a reckless way that

27  creates a high risk of death or great bodily injury."  Judicial

28  Council of California Criminal Jury Instruction 580.  This offense,

and not voluntary manslaughter, is the type of "reckless, or grossly negligent, use of force" that the Ninth Circuit excluded from the definition of a crime of violence in Fernandez-Ruiz.  Thus, although the definition of voluntary manslaughter committed with "conscious disregard for life" does not "fit neatly with the standard articulated in Fernandez-Ruiz, it satisfies the concerns animating Leocal and Fernandez-Ruiz that the proscribed conduct be 'violent' and 'active,' and the use of force not merely accidental, as in an automobile accident stemming from drunk or reckless driving." See United States v. Grajeda, 581 F.3d 1186, 1195 (9th Cir. 2009) (finding that California Penal Code § 245(a)(1), assault with a deadly weapon, was a crime of violence because of required proof of an "intentional 'violent act'" with a weapon likely to cause injury).

> (C)   The reckless use of force can constitute a crime of violence

Even if a person may be convicted of voluntary manslaughter for reckless conduct under CPC section 192(a), petitioner's conviction nonetheless qualifies as a crime of violence.  The precedential value of Quijada-Aguilar and Fernandez-Ruiz have been undercut by a recent Supreme Court decision.  In Voisine v. United States, --- S. Ct. ---, No. 14-10154, 2016 WL 3461559, at *5 (June 27, 2016), the Supreme Court held that "a reckless domestic assault qualifies as a 'misdemeanor crime of domestic violence' under § 922(g)(9)."  In so holding, the Supreme Court reasoned - contrary to the suggestion in Fernandez-Ruiz - that one still actively engages in the "use of force" when acting recklessly, as opposed to knowingly or intentionally.  Voisine, 2016 WL 3461559, at *5 ("[T]he word 'use' . . . . is indifferent as to whether the actor has the mental state of

46

1    intention, knowledge, or recklessness with respect to the harmful

2    consequences of his volitional conduct."). The Supreme Court

3    rejected the suggestion that Leocal extends to reckless conduct,

4    noting that Leocal interpreted 18 U.S.C. § 16 to exclude "'merely

5    accidental' conduct" and "specifically reserve[ed] the issue whether

6    the definition in § 16 embraces reckless conduct." Voisine, 2016 WL

7    3461559, at *6 ("[N]othing in Leocal . . . suggests . . . that 'use'

8    marks a dividing line between reckless and knowing conduct."); see

9    also United States v. Jeffries, No. 14-51250, 2016 WL 3895247, at *1

10   (5th Cir. July 18, 2016) ("The Supreme Court did not strike down the

11   'use of force' prong in Johnson and, indeed, since that time has

12   applied a similar 'use of force' prong in a case of a reckless

13   assault.") (citing Voisine, 136 S. Ct. 2272).

14       Concluding that petitioner's prior conviction for voluntary

15   manslaughter is a crime of violence comports with the ordinary

16   meaning of that term. The Supreme Court in Voisine and Leocal

17   construed the "ordinary meaning" of similar elements clauses. It

18   highlighted Congressional intent to "distinguish for heightened

19   punishment" "violent, active crimes." Leocal, 543 U.S. at 11.

20   Here, petitioner pulled out a handgun and shot a rival gang member in

21   the back of his head as the victim was walking away. When the term

22   "crime of violence" is given its ordinary meaning, it must cover

23   petitioner's intentional and deliberate use of a handgun in conscious

24   disregard of the victim's life. See Voisine, 136 S. Ct. at 2279

25   (holding that the elements clause covers "an act of force carried out

26   in conscious disregard of its substantial risk of causing harm").

27       Accordingly, a conviction for voluntary manslaughter does

28   categorically qualify as a crime of violence under the Career

47

Offender Guideline.  As the California Supreme Court concluded in Bryant, a conviction under CPC section 192(a) requires proof of a mental state – specifically, either an intent to kill or implied malice.  Individuals convicted of voluntary manslaughter, like petitioner, had to have at a minimum intentionally and deliberately used force capable of endangering the life of another.  Moreover, even if a person may be convicted for reckless conduct under section 192(a), the Supreme Court has made clear that "use of force" clauses, like the one at issue here, do cover force carried out in conscious disregard of harm to another person.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court dismiss or deny petitioner's motion to vacate, set aside, or correct his sentence.

Dated: September 6, 2016                   Respectfully submitted,

                                          EILEEN M. DECKER
                                          United States Attorney

                                          LAWRENCE S. MIDDLETON
                                          Assistant United States Attorney
                                          Chief, Criminal Division


                                          _____/s/_____
                                          BRYANT Y. YANG
                                          Assistant United States Attorney

                                          Attorneys for Respondent
                                          UNITED STATES OF AMERICA

48