1   HILARY POTASHNER (Bar No. 167060)
    Federal Public Defender
2   BRIANNA FULLER MIRCHEFF (Bar No. 243641)
    (Email: Brianna_Mircheff@fd.org)
3   Deputy Federal Public Defender
    321 East 2nd Street
4   Los Angeles, California 90012-4202
    Tel: 213-894-4784
5   Fax: 213-894-0081

6   Attorneys for Petitioner
    ANTONIO BLACKSTONE
7
                    UNITED STATES DISTRICT COURT
8
                   CENTRAL DISTRICT OF CALIFORNIA
9
                          WESTERN DIVISION
10
    ANTONIO BLACKSTONE,                    Case No. CV 16-3872-CAS
11
                  Petitioner,              Case No. CR 99-0257-CAS
12
            v.                             **REPLY TO GOVERNMENT'S**
13                                         **OPPOSITION TO PETITIONER'S**
                                           **MOTION TO VACATE, SET ASIDE,**
14  UNITED STATES OF AMERICA,              **OR CORRECT SENTENCE UNDER**
                                           **28 U.S.C. § 2255**
15                Respondent.
16
17
18          Petitioner Antonio Blackstone, by and through counsel of record Deputy Federal
19  Public Defender Brianna Fuller Mircheff, hereby replies to the government's response
20  in opposition to his motion to vacate, set aside, or correct his sentence pursuant to 28
21  U.S.C. § 2255.
22
23                                  Respectfully submitted,
24                                  HILARY POTASHNER
                                    Federal Public Defender
25
    DATED: October 5, 2016          By  /s/ *Brianna Fuller Mircheff*
26                                      BRIANNA FULLER MIRCHEFF
                                        Deputy Federal Public Defender
27
28
                                        1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................. 1

II.   ANALYSIS ......................................................................... 3

    A.    Any procedural default should be excused under the cause
        and prejudice standard................................................................ 3

        1.    Cause exists because a unanimous body of lower court
                precedent foreclosed Mr. Blackstone from arguing that his
                sentence was unconstitutional............................................. 3

        2.    Mr. Blackstone suffered actual prejudice because his
                unlawful classification as a career offender and his
                unlawful conviction under Section 924(c) affected his
                sentence. ........................................................................... 7

        3.    Mr. Blackstone's procedural default is also excused under
                the miscarriage of justice standard..................................... 8

            a.    After *Johnson*, Mr. Blackstone is actually innocent
                    of the Section 924(c) offense and any procedural
                    default is therefore excused. ..................................... 8

            b.    Mr. Blackstone's career offender claim is also
                    subject to the miscarriage of justice standard. ..................... 10

    B.    Mr. Blackstone's *Johnson* claim is timely because it is
        brought within one year of the Supreme Court's decision
        in *Johnson*. ............................................................................ 13

        1.    Binding Ninth Circuit precedent compels the conclusion
                that *Johnson* applies equally to Section 924(c)............................. 13

            a.    *Dimaya* forecloses the government's arguments
                    that the minor textual differences between the
                    ACCA's residual clause and that of Section
                    924(c)(3)(B) are of any consequence. ................................. 14

            b.    Ninth Circuit precedent precludes the Court
                    from adopting the Sixth Circuit's reasoning in
                  *Shuti*. .......................................................................... 18

            c.    The Government fails to provide any support
                    for the argument that, if *Johnson* applies to
                    Section 924(c), it does not do so retroactively..................... 19

         2.    *Johnson* is "retroactively applicable to cases on
                collateral review" challenging application of an
                unconstitutional Sentencing Guideline..................................... 20

            a.    *Johnson* Is a Substantive Rule............................................. 20

i

b. Adopting the government's approach would defy binding Ninth Circuit precedent. ................................. 23

c. *Welch*'s holding and reasoning compel the conclusion that *Johnson* applies retroactively to Guidelines cases. ........................................ 25

d. The government's attempts to distinguish the effect of *Johnson* between the ACCA and Guideline contexts are unavailing. ...................... 26

(1) Substantive rules apply to all cases on collateral review. ....................................... 27

(2) The government's explanation of why *Johnson* is a procedural rule in the Guidelines context fails on its own terms. ................. 28

e. *Johnson* Is the Only New Rule in this Case. ......................... 30

C. Hobbs Act Robbery is not a crime of violence for Section 924(c) purposes, after *Johnson* .................................. 32

D. Robbery pursuant to California Penal Code § 211 is not a crime of violence under any other clause of the career offender guideline. ...................................................... 36

E. Voluntary Manslaughter under California Penal Code Section 192(a) is not a crime of violence after *Johnson* .......................... 45

F. Hobbs Act robbery is not a crime of violence for career-offender purposes. .................................................. 48

G. Should the Court deny relief, it should grant a certificate of appealability. ......................................... 48

III. CONCLUSION ................................................................ 49

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alaimalo v. United States*,
  645 F.3d 1042 (9th Cir. 2011) .......................................................................... 1, 9, 10

*Apprendi v. New Jersey*,
  530 U.S. 466 (2000) ............................................................................................... 21

*Beard v. Banks*,
  542 U.S. 406 (2004) ............................................................................................... 21

*Bennett v. United States*,
  Case No. CV 16-251-GZS, 2016 WL 3676145 (D. Me. July 6, 2016) .................... 47

*Bousley v. United States*,
  523 U.S. 614 (1998) ......................................................................................... *passim*

*Bryant v. Warden, FCC Coleman-Medium*,
  738 F.3d 1253 (11th Cir. 2013) .......................................................................... 10, 46

*Crawford v. Washington*,
  541 U.S. 36 (2004) ................................................................................................. 21

*Dalton v. United States*,
  862 F.2d 1307 (8th Cir. 1988) .................................................................................. 5

*Danforth v. Minnesota*,
  552 U.S. 264 (2008) ............................................................................................ 2, 27

*Davis v. United States*,
  131 S. Ct. 2419 (2011) ........................................................................................... 27

*Delgado-Hernandez v. Holder*,
  697 F.3d 1125 (9th Cir. 2012) ................................................................................ 15

*Denson v. United States*,
  804 F.3d 1339 (11th Cir. 2015) ................................................................................ 5

*Dietrick v. United States*,
  2:16-cv-705-MJP, Dkt. #9 (Aug. 18, 2016) ............................................................ 39

iii

*Dimaya v. Lynch*,
   803 F.3d 1110 (9th Cir. 2015)............................................................................. *passim*

*Dodd v. United States*,
   545 U.S. 353 (2005).............................................................................................. 13

*Dretke v. Haley*,
   541 U.S. 386 (2004).............................................................................................. 10

*English v. United States*,
   42 F.3d 473 (9th Cir. 1994)................................................................................... 5

*Espinoza v. United States*,
   16-4014-MFW (Sept. 21, 2016)................................................................... 8, 24, 32

*Ezell v. United States*,
   778 F.3d 762 (9th Cir. 2015)................................................................................ 11

*Gibson v. United States*,
   No. C15-5737-BHS, ECF No. 27 (W.D. Wash. Jun. 15, 2016) .............................. 24

*Gilbert v. United States*,
   640 F.3d 1293 (11th Cir. 2011) (en banc).............................................................. 12

*Glover v. United States*,
   531 U.S. 198 (2001)................................................................................................. 7

*Haley v. Cockrell*,
   306 F.3d 257 (5th Cir. 2002)................................................................................. 10

*Harrington v. United States*,
   689 F.3d 124 (2d Cir. 2012).................................................................................... 5

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001)............................................................................... 18

*Hawkins v. United States*,
   706 F.3d 820 (7th Cir. 2013)........................................................................... 11, 12

*Hill v. Masters*,
   __ F.3d ___, 2016 WL 4655739 (6th Cir. Sep. 7, 2016)......................................... 12

*Hope v. United States*,
   108 F.3d 119 (7th Cir. 1997)................................................................................. 10

*Jennings v. Woodford*,
  290 F.3d 1006 (9th Cir. 2002)........................................................................ 49

*Johnson v. United States*,
  135 S.Ct. 2551 (2015).......................................................................... *passim*

*Johnson v. United States*,
  559 U.S. 133 (2010)........................................................................... 42, 44

*Leocal v. Ashcroft*,
  543 U.S. 1 ....................................................................... 43, 45, 46, 48

*Lindsey v. United States*,
  615 F.3d 998 (8th Cir. 2010)...................................................................... 10

*Lopez-Camacho v. United States*,
  2:16-cv-3731-RSWL (C.D. Cal. Oct. 4, 2016) ...................................................... 14

*Marrero v. Ives*,
  682 F.3d 1190 (9th Cir. 2012).................................................................... 11

*McQuiggin v. Perkins*,
  133 S. Ct. 1924 (2013)........................................................................... 20

*Miller v. Alabama*,
  132 S. Ct. 2455 (2012)....................................................................... 28, 29

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) (en banc)........................................................... 33

*Mohamed v. Uber Techs., Inc.*,
  ___F.3d___, No. 15-16178, 2016 WL 4651409 (9th Cir. Sept. 7, 2016)................................ 18

*Montgomery v. Louisiana*,
  136 S. Ct. 718 (2016)......................................................................... *passim*

*Murray v. Carrier*,
  477 U.S. 478 (1986)................................................................................ 3

*Narvaez v. United States*,
  674 F.3d 621 (7th Cir. 2011).................................................................. 10, 12

*Nieves-Medrano v. Holder*,
  590 F.3d 1057 (9th Cir. 2010)........................................................ 42, 43, 44, 45

*Padilla v. Kentucky*,
  559 U.S. 356 (2010).................................................................................. 21

*In re Patrick*,
  ___ F.3d ___, 2016 WL 4254929 (6th Cir. Aug. 12, 2016).................................. 8, 27

*Peugh v. United States*,
  133 S. Ct. 2072 (2013).................................................................................. 8, 30, 31

*Quijada-Aguilar v. Lynch*,
  799 F.3d 1303 (9th Cir. 2015)........................................................... 2, 45, 46, 47

*Reed v. Ross*,
  468 U.S. 1 (1984)................................................................................... *passim*

*Robinson v. United States*,
  No. 16-4513-SJO (Sept. 6, 2016).............................................................. 8, 24

*Saffle v. Parks*,
  494 U.S. 484 (1990).................................................................................. 21

*Sawyer v. Whitley*,
  505 U.S. 333 (1992).................................................................................. 8

*Schriro v. Summerlin*,
  542 U.S. 348 (2004).............................................................................. 20, 21

*Shuti v. Lynch*,
  ___ F.3d ___, 2016 WL 3632539 (6th Cir. Jul. 7, 2016) ............................ 16, 18, 19

*Simpson v. Matesanz*,
  175 F.3d 200 (1st Cir. 1999)........................................................................... 6

*Spencer v. United States*,
  773 F.3d 1132 (11th Cir. 2014)..................................................................... 10, 27

*Stinson v. United States*,
  508 U.S. 36 (1993)........................................................................... 37, 38, 40, 41

*Strickler v. Greene*,
  527 U.S. 263 (1999).................................................................................. 7

*Thai v. Ashcroft*,
  366 F.3d 790 (9th Cir. 2004)........................................................................ 38

*United States v. Aguon*,
  851 F.2d 1158 (9th Cir. 1988)............................................................ 33, 34

*United States v. Aitken*,
  No. CR-14-143-CAS, 2015 WL 1486925 (C.D. Cal. Mar. 30, 2015)...................... 45

*United States v. Amparo*,
  68 F.3d 1222 (9th Cir. 1995)............................................................ 15, 19

*United States v. Argo*,
  925 F.2d 1133 (9th Cir. 1991)................................................................ 4

*United States v. Bailey*,
  139 F.3d 667 (9th Cir. 1998)............................................................... 4, 6

*United States v. Becerril–Lopez*,
  541 F.3d 881 (9th Cir. 2008)............................................... 37, 41, 42, 43

*United States v. Bell*,
  ___ F. Supp. 3d ___, 2016 WL 344749 (N.D. Cal. 2016)...................................... 14

*United States v. Bell*,
  158 F. Supp. 3d 906 (N.D. Cal. 2016) ..................................................... 35

*United States v. Benally*,
  __ F.3d __, 2016 WL 4073316 (9th Cir. Aug. 1, 2016)................................... 46, 48

*United States v. Blair*,
  734 F.3d 218 (3d Cir. 2013).................................................................. 5

*United States v. Boitano*,
  796 F.3d 1160 (9th Cir. 2015)............................................................... 32

*United States v. Booker*,
  543 U.S. 220 (2005).................................................................... *passim*

*United States v. Brown*,
  734 F.3d 824 (8th Cir. 2013)............................................................. 5, 12

*United States v. Brown*,
  Dkt 197, 11-cr-334-APG (D. Nev. July 28, 2015) .................................... 36

*United States v. Bundy*,
  2016 WL 3361490 (D. Or. Feb. 10, 2016).............................................. 14

*United States v. Castleman*,
  134 S. Ct. 1405 (2014) ............................................................................................... 47

*United States v. Castro-Vazquez*,
  802 F.3d 28 (1st Cir. 2015) ....................................................................................... 35

*United States v. Chandler*,
  743 F.3d 648 (9th Cir. 2014) .................................................................................... 33

*United States v. Childs*,
  403 F.3d 970 (8th Cir. 2005) ...................................................................................... 5

*United States v. Conley*,
  349 F.3d 837 (5th Cir. 2003) ...................................................................................... 7

*United States v. Cruz*,
  423 F.3d 1119 (9th Cir. 2005) .................................................................................. 21

*United States v. David H.*,
  29 F.3d 489 (9th Cir. 1994) .......................................................................... 42, 43, 44

*United States v. Dixon*,
  2014 WL 7339369 (9th Cir. Dec. 24, 2014) ............................................................ 43

*United States v. Dixon*,
  805 F.3d 1193 (9th Cir. 2015) ................................................................. 2, 42, 43, 44

*United States v. Doe*,
  810 F.3d 132 (3d Cir. 2015) ...................................................................................... 27

*United States v. Dominguez*,
  No. CR 12-879 CAS, 2013 WL 4040125 (C.D. Cal. July 18, 2013) ........................ 45

*United States v. Dorsey*,
  2016 WL 3607155 (Jun. 30, 2016) ........................................................................... 35

*United States v. Dunlap*,
  162 F. Supp. 3d 1106 (D. Or. 2016) ......................................................................... 35

*United States v. Duval*,
  957 F. Supp. 2d 100 (D. Mass 2013) ......................................................................... 5

*United States v. Edmundson*,
  153 F. Supp. 3d 857 (D. Md. 2015) .......................................................................... 17

*United States v. Estes*,
1:05-187-WYD (D. Colo. Sept. 15, 2016) ............................................................... 45

*United States v. Fennell*,
2016 WL 4702557 (N.D. Texas Sept. 8, 2015) ........................................................ 47

*United States v. Gardner*,
823 F.3d 793 (4th Cir. 2016) ............................................................................. 35, 44

*United States v. Gentry*,
___ F. Supp. 3d ___, 2016 WL 3647331 (D. Or. 2016) ............................................. 8

*United States v. Gore*,
636 F.2d 728 (5th Cir. 2011) ................................................................................... 5

*United States v. Grisel*,
488 F.3d 844 (9th Cir. 2007) (en banc) ............................................................. 23, 35

*United States v. Harkey*,
116 F.3d 1487 (9th Cir. 1997) ................................................................................... 4

*United States v. Hart*,
674 F.3d 33 (1st Cir. 2012) ....................................................................................... 5

*United States v. Hill*,
No. 14-3872, 2016 WL 4120667 (2d Cir. Aug. 3, 2016) ......................................... 34

*United States v. Horey*,
333 F.3d 1185 (10th Cir. 2003) ................................................................................. 7

*United States v. Howard*,
No. 15-10042, 2016 WL 2961978 (9th Cir. June 24, 2016) ........................... 32, 33, 49

*United States v. Jackson*,
250 F. App'x 926 (11th Cir. 2007) ............................................................................ 5

*United States v. Jennings*,
515 F.3d 980 (9th Cir. 2008) ................................................................................... 43

*United States v. Jones*,
__F.3d__, 2016 WL 3923838 (2d Cir. July 21, 2016) ....................................... 34, 44

*United States v. Jones*,
689 F.3d 696 (7th Cir. 2012) ................................................................................... 5

*United States v. Lattanaphom*,
  ___ F. Supp.3d ___, 2016 WL 393545 (E.D. Cal. 2016) ......................................... 14

*United States v. Martin*,
  753 F.3d 485 (4th Cir. 2014) ...................................................................................... 5

*United States v. Martinez*,
  771 F.3d 672 (9th Cir. 2014) ...................................................................................... 5

*United States v. McDougherty*,
  920 F.2d 569 (9th Cir. 1990) ............................................................................... 2, 37

*United States v. Mendez*,
  992 F.2d 1488 (9th Cir. 1993) .................................................................... 15, 32, 33

*United States v. Mikalajunas*,
  186 F.3d 490 (4th Cir. 1999) .................................................................................... 10

*United States v. Mobley*,
  687 F.3d 625 (4th Cir. 2012) ...................................................................................... 5

*United States v. Nedley*,
  255 F.2d 350 (3d Cir. 1958) ..................................................................................... 33

*United States v. Nguyen*,
  Dkt 157, 03-cr 158-KJD-PAL (D. Nev. Feb. 10, 2005) ........................................... 36

*United States v. Orona*,
  724 F.3d 1297 (10th Cir. 2013) .................................................................................. 5

*United States v. Pagan-Soto*,
  2015 WL 4872453, No. 13-2243 (1st Cir. Aug. 11, 2015), ..................................... 28

*United States v. Parnell*,
  818 F.3d 974 (9th Cir. 2016) ...................................................................... 34, 35, 44

*United States v. Peter*,
  310 F.3d 709 (11th Cir. 2002) .................................................................................. 20

*United States v. Pettiford*,
  612 F.3d 270 (4th Cir. 2010) .................................................................................... 10

*United States v. Phillips*,
  752 F.3d 1047 (6th Cir. 2014) .................................................................................... 5

*United States v. Piccolo*,
   441 F.3d 1084 (9th Cir. 2006)................................................................... 19

*United States v. Powell*,
   967 F.2d 595 (9th Cir. 1992) ...................................................................... 4

*United States v. Presley*,
   52 F.3d 64 (4th Cir. 1995) .......................................................................... 4

*United States v. Price*,
   No. 15-2427 (7th Cir. 2015)............................................................... 21, 22

*United States v. Rearden*,
   349 F.3d 608 (9th Cir. 2003)............................................................... 30, 31

*United States v. Reina-Rodriguez*,
   655 F.3d 1182 (9th Cir. 2011)......................................................... 2, 23, 24

*United States v. Rollins*,
   ___F.3d___, No. 13-1731, slip. op. (7th Cir. Aug. 29, 2016) .................................. 39

*United States v. Sanchez-Cervantes*,
   282 F.3d 664 (9th Cir. 2002)..................................................................... 21

*United States v. Santos*,
   2:16-cv-3973-JAK (C.D. Cal Sept. 9, 2016)................................................. 8

*United States v. Shell*,
   789 F.3d 335 (4th Cir. 2015)..................................................................... 41

*United States v. Shelton*,
   848 F.2d 1485 (10th Cir. 1988)................................................................... 5

*United States v. Smith and Merritte*,
   2016 WL 2901661 (D. Nev. May 18, 2016) ............................................. 14

*United States v. Soto-Rivera*,
   811 F.3d 53 (1st Cir. 2016)....................................................................... 38

*United States v. Spencer*,
   724 F.3d 1133 (9th Cir. 2013)..................................................................... 4

*United States v. Stamps*,
   2016 WL 3747286 (N.D. Cal. June 29, 2016) ............................................ 8

*United States v. Stamps*,
 4:13-cr-239-CW, Dkt. 57 (N.D. Cal. Jun. 29, 2016) ................................................. 24

*United States v. Surratt*,
 797 F.3d 240 (4th Cir. 2015) ................................................................................... 12

*United States v. Torres*,
 ___ F.3d ___, 2016 WL 3770517 (9th Cir. July 14, 2016) ...................................... 28

*United States v. Van Mead*,
 773 F.3d 429 (2d Cir. 2014) ...................................................................................... 5

*United States v. Veasey*,
 73 F.3d 363 (6th Cir. 1995) ....................................................................................... 5

*United States v. Vivas-Ceja*,
 808 F.3d 719 (7th Cir. 2015) ................................................................................... 17

*United States v. Zappola*,
 677 F.2d 264 (2d Cir. 1982) .................................................................................... 34

*Voisine v. United States*,
 136 S. Ct. 2272 (2016) ...................................................................................... 46, 47

*Vosgien v. Persson*,
 742 F.3d 1131 (9th Cir. 2014) ............................................................................. 9, 10

*Welch v. United States*,
 136 S. Ct. 1257 (2016) .................................................................................... *passim*

*Whorton v. Bockting*,
 549 U.S. 406 (2007) ................................................................................................. 21

*Wrinkles v. Buss*,
 537 F.3d 804 (7th Cir. 2008) ..................................................................................... 7

*Yong v. I.N.S.*,
 208 F.3d 1116 (9th Cir. 2000) ........................................................................... 18, 24

*Zadvydas v. Davis*,
 533 U.S. 678 (2001) ................................................................................................. 38

**State Cases**

*People v. Bennett*,
   592 N.Y.S.2d 918 (App. Div. 1993) ........................................................ 34

*People v. Bennett*,
   631 N.Y.S.2d 834 (App. Div. 1995) ........................................................ 34

*People v. Bryant*,
   56 Cal. 4th 959 (2013) ........................................................................... 46

*People v. Garcia*,
   45 Cal. App. 4th 1242 (1996) ................................................................. 44

*People v. Griffin*,
   33 Cal. 4th 1015 (2004) ......................................................................... 44

*People v. Lee*,
   602 N.Y.S.2d 138 (App. Div. 1993) ........................................................ 34

*People v. Mosby*,
   33 Cal.4th 353 (2004) ............................................................................ 44

*People v. Safon*,
   560 N.Y.S.2d 552 (App. Div. 1990) ........................................................ 34

**Federal Statutes**

18 U.S.C. § 16 ............................................................................... *passim*

18 U.S.C. § 921 ...................................................................................... 47

18 U.S.C. § 922 ...................................................................................... 46

18 U.S.C. § 924 ............................................................................. *passim*

18 U.S.C. § 2112 .................................................................................... 35

28 U.S.C. § 2253 .................................................................................... 48

28 U.S.C. § 2255 .................................................................................... 13

U.S.S.G. § 2L1.2 .......................................................................... *passim*

U.S.S.G. § 4B1.2(a) ..................................................................... 25, 39, 40

**State Statutes**

California Penal Code § 192 ............................................................... 2, 45, 46

California Penal Code § 211 ................................................................... *passim*

N.Y. Penal Law § 2122 (1944) ...................................................................... 34

**Rules**

Ninth Cir. R. 36-3 .......................................................................................... 33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

Mr. Blackstone moved this Court to vacate his sentence, which was imposed in violation of the Constitution, pursuant to *Johnson v. United States*, 135 S.Ct. 2551 (2015).  On September 6, 2016, the government filed an opposition to Mr. Blackstone's petition, arguing that the petition should be denied because: (a) his claim is procedurally defaulted; (b) his claim is untimely because *Johnson* does not apply to Section 924(c); (c) his claim is untimely because *Johnson* is not retroactive on collateral review of claims under the Federal Sentencing Guidelines; (d) his Section 924 (c) claim fails on the merits because Hobbs Act robbery and Hobbs Act conspiracy remain crimes of violence after *Johnson*; and, (e) his challenge to his career offender sentencing enhancement fails on the merits because his prior convictions for robbery and voluntary manslaughter also continue to be crimes of violence.  None of these arguments should preclude the Court from granting the relief sought here.

As to the government's arguments regarding Mr. Blackstone's Section 924(c) offense: One, any procedural default is excused.  Because Hobbs Act robbery is no longer a predicate crime of violence for purposes of Section 924(c), Mr. Blackstone "was convicted for conduct not prohibited by law" and therefore is actually innocent of the Section 924(c) offense.  *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011).  Two, *Johnson* renders the residual clause of Section 924(c) invalid, as the Ninth Circuit already held with respect to the materially indistinguishable language of 18 U.S.C. § 16(b).  *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015).  The government expresses its displeasure with the conclusions reached in *Dimaya*, but the government's disagreement does not render this Court any less bound by it.  And three, following *Johnson,* convictions for Hobbs Act robbery no longer qualify as crimes of violence because Hobbs Act robbery only ever qualified as a crime of violence under the residual clause, and Hobbs Act robbery does not have, as an element, the use, attempted use, or threatened use of force.

1

As to the government's arguments regarding Mr. Blackstone's career offender sentence: One, Mr. Blackstone's default is excused because, at the time of his sentencing, a unanimous body of lower court authority had rejected the argument that the residual clause was void for vagueness. *Reed v. Ross*, 468 U.S. 1, 17 (1984) (an argument is not "reasonably available" -- and thus "cause" exists to excuse any default -- where the Supreme Court overturns entrenched lower court precedent). Two, *Johnson* is retroactively applicable to guideline cases on collateral review. *United States v. Reina-Rodriguez*, 655 F.3d 1182 (9th Cir. 2011) (rules that narrow the scope of ACCA are "substantive" -- and therefore retroactive -- as to the guidelines); *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) (finding *Johnson* to be a rule; "The residual clause is invalid under *Johnson,* so it can no longer mandate or authorize any sentence."); *Danforth v. Minnesota*, 552 U.S. 264, 266 (2008) ("New constitutional rules announced by [the Supreme] Court that [are substantive or watershed rules of criminal procedure] must be applied in . . . all federal habeas corpus proceedings."). Three, following *Johnson*, Mr. Blackstone's California robbery conviction no longer qualifies as a crime of violence because it was only ever a crime of violence under the residual clause, *United States v. McDougherty*, 920 F.2d 569, 574 & n.3 (9th Cir. 1990), and the Ninth Circuit recently held that it is not a crime of violence under the force clause. *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) ("a violation of CPC § 211 is not categorically a 'violent felony'" under the force clause). The same is true of Mr. Blackstone's conviction for California manslaughter. *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1306 (9th Cir. 2015) ("We hold that CPC § 192(a) is not categorically a crime of violence" under the force clause), and his Hobbs Act robbery conviction. In all three cases, the enumerated offenses of robbery and manslaughter have been effectively excised from the career-offender guideline, because they only appear in the commentary of that guideline, and *Johnson* had the effect of invalidating those commentary offenses that only interpreted the residual clause. For these reasons, the Court should grant Mr. Blackstone relief and vacate his sentence.

## II. ANALYSIS

**A.    Any procedural default should be excused under the cause and prejudice standard.**

The government first argues that Mr. Blackstone defaulted his *Johnson* claims by failing to press this argument in his initial proceedings or on direct appeal.  While a claim is generally defaulted if it is not raised on direct appeal, default can be overcome if the petitioner can demonstrate "cause" for the default and "prejudice" resulting from the violation of federal law, or where the petitioner is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 622-23 (1998).  Petitioner's default is excused on each of these grounds.

> **1.    Cause exists because a unanimous body of lower court precedent foreclosed Mr. Blackstone from arguing that his sentence was unconstitutional.**
>
> *(Applies to Section 924(c) and All Career Offender Claims)*

The "cause" prong is satisfied when the legal basis of a claim is unavailable to a petitioner at the time of the direct appeal.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("[W]e note that a showing that the factual or legal basis for a claim was not reasonably available to counsel . . .  would constitute cause under this standard"); *Reed*, 468 U.S. at 15 ("Counsel's failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar.").

Prior to *Johnson*, Mr. Blackstone's constitutional challenge to the residual clauses of Section 924(c) and the career offender Guidelines were not reasonably available to him.  A constitutional claim is not "reasonably available" if the Supreme Court decision establishing that claim: (1) explicitly overrules one of the Court's precedents; (2) overturns a longstanding and widespread practice to which the Court has not spoken, "'but which a near-unanimous body of lower court authority has expressly approved'"; or (3) disapproves a practice that the Court "'arguably has

3

sanctioned in prior cases.'" *Reed*, 468 U.S. at 17. "By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that [the Supreme Court] has ultimately adopted," and such a case will satisfy the cause requirement. *Id.*

Mr. Blackstone's challenge meets the second *Reed* criterion because *Johnson* overturned a longstanding and widespread practice of imposing punishment under the residual clause, which a "near-unanimous" body of lower court authority expressly approved. *Reed*, 468 U.S. at 17. When Mr. Blackstone was sentenced in 2000, the lower court authority approving the practice of imposing enhanced sentences under the ACCA, 924(c), and Guidelines residual clauses was more than "near-unanimous"; it was *actually* unanimous. Some 10 years before Mr. Blackstone's sentencing, in *United States v. Sorenson*, the Ninth Circuit expressly ruled that "ACCA is not void for vagueness," and the Supreme Court denied certiorari. 914 F.2d 173, 175 (9th Cir. 1990), *cert. denied*, 498 U.S. 1099 (1991). At all points from *Sorenson* to *Johnson*, including up to a year before *Johnson* was decided, the Ninth Circuit rejected vagueness claims to the guidelines as "foreclosed." *United States v. Spencer*, 724 F.3d 1133, 1145-46 (9th Cir. 2013), *amended by* 580 F. App'x 619 (9th Cir. 2014) (citing *James* and *Sykes*); *United States v. Bailey*, 139 F.3d 667, 668 (9th Cir. 1998)*United States v. Harkey*, 116 F.3d 1487 (9th Cir. 1997) (citing *Sorenson* in rejecting ACCA vagueness challenge); *United States v. Powell*, 967 F.2d 595 (9th Cir. 1992) (unpublished) (citing *Sorenson* to reject claim that "the ACCA is void for vagueness because is it difficult to determine whether its prohibitions apply in any particular case"); *United States v. Argo*, 925 F.2d 1133, 1134-35 (9th Cir. 1991) (citing *Sorenson* to reject vagueness argument).

This was true not only in the Ninth Circuit; the other circuits to consider the issue before Mr. Blackstone was sentenced had also rejected void-for-vagueness challenges to ACCA. *See, e.g., United States v. Presley*, 52 F.3d 64, 68 (4th Cir.), *cert. denied*,

4

516 U.S. 891 (1995); *United States v. Veasey*, 73 F.3d 363, \*2 (6th Cir. 1995) (unpublished); ("This constitutional argument has been rejected by every Circuit that has considered it . . . The ACCA is not unconstitutionally vague.") (internal citation omitted). Not a single court had found to the contrary – or would, until *Johnson*. [1]

While futility alone does not establish cause, the "solid wall of circuit authority" that would have faced Mr. Blackstone certainly does. *English v. United States*, 42 F.3d 473, 479 (9th Cir. 1994) (internal citation omitted); *see also Dalton v. United States*, 862 F.2d 1307, 1310 (8th Cir. 1988) (finding a "near-unanimous" body of law by citing its own Circuit, and a Supreme Court case collecting five others); *United States v. Shelton*, 848 F.2d 1485, 1490 (10th Cir. 1988) (finding the second *Reed* criteria met where the Supreme Court overturned the construction "adopted by every circuit that had addressed the issue"); *United States v. Duval*, 957 F. Supp. 2d 100, 112-13 (D.

---

[1] *See Denson v. United States*, 804 F.3d 1339, 1344 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1214 (2016) ("In addition, as the government points out in its supplemental brief, prior to *Johnson,* no court had held the residual clause void for vagueness, and indeed the Supreme Court had twice held that the residual clause was not vague."); *United States v. Martin*, 753 F.3d 485, 494 (4th Cir. 2014) (rejecting vagueness challenge to section 2K2.1, holding that argument "ha[d] already been rejected by this court and by the Supreme Court"); *United States v. Martinez*, 771 F.3d 672, 678 (9th Cir. 2014) (rejecting vagueness challenge as foreclosed by *James*); *United States v. Phillips*, 752 F.3d 1047, 1051-52 (6th Cir. 2014) (vagueness challenge to ACCA's residual clause foreclosed by *Sykes* and *James*); *United States v. Van Mead*, 773 F.3d 429, 438 n.7 (2d Cir. 2014) (rejecting vagueness challenge to section 4B1.2, citing *Sykes*); *United States v. Blair*, 734 F.3d 218, 223 n.5 (3d Cir. 2013) (challenge to ACCA residual clause foreclosed by *Sykes*); *United States v. Brown*, 734 F.3d 824, 827 (8th Cir. 2013) (rejecting vagueness challenge to ACCA's residual clause); *United States v. Orona*, 724 F.3d 1297, 1310-11 (10th Cir. 2013) (rejecting vagueness claim as to ACCA residual clause); *Harrington v. United States*, 689 F.3d 124, 137 (2d Cir. 2012) (even if not waived, vagueness challenge foreclosed by *Sykes*); *United States v. Jones*, 689 F.3d 696, 704-05 (7th Cir. 2012) (rejecting vagueness challenge to the ACCA's residual clause under *James* and *Sykes*); *United States v. Hart*, 674 F.3d 33, 41 n.3 (1st Cir. 2012) (rejecting vagueness challenge, citing *James*); *United States v. Mobley*, 687 F.3d 625, 632 n.7 (4th Cir. 2012) (rejecting vagueness challenge to section 4B1.2, citing *Sykes*); *United States v. Gore*, 636 F.2d 728, 742 (5th Cir. 2011) (rejecting vagueness challenge to ACCA's residual clause as foreclosed by *James*); *United States v. Jackson*, 250 F. App'x 926, 930 (11th Cir. 2007) (rejecting vagueness challenge to ACCA); *United States v. Childs*, 403 F.3d 970 (8th Cir.) ("In addition, Childs argues that § 924(e) is unconstitutionally vague. We agree with every other circuit that has considered this argument and hold that it has no merit."), *cert. denied*, 546 U.S. 954 (2005).

Mass 2013) (finding that *Johnson I* was a sufficient "break with the past"; the Circuit's law was not "unique to a particular district court at 'a particular time'; rather it was 'longstanding and widespread practice'" ).

     *Bousley v. United States*, is not to the contrary.  There, the Court found no cause excusing procedural default where the "Federal Reporters were replete with cases involving challenges" like the one that was ultimately accepted in *Bailey v. United States*, 516 U.S. 137 (1995).  523 U.S. at 622.  But as *Bailey* itself made clear, the issue considered in *Bousley* was one on which the lower courts had fractured before the Supreme Court's opinion, creating inconsistent results nationwide.  *Bailey*, 516 U.S. at 142 ("The Circuits are in conflict both in the standards they have articulated . . . and in the results they have reached . . .") (internal citations omitted).  *Bousley* was not a case where the second *Reed* exception *could possibly* have applied because the defendant there did not face an entrenched, nationwide, unanimous rejection of his claim -- he was in the heart of an active Circuit split.  *See id.*  He claimed futility because the law in his Circuit foreclosed the issue.  *Bousley*, 523 U.S. at 622-23; *see also Simpson v. Matesanz*, 175 F.3d 200, 211 (1st Cir. 1999) ("*Bousley* made it clear that if an issue has been decided adversely to an argument *in the relevant jurisdiction*, and the argument is not made for that reason, that is insufficient reason to constitute cause for a procedural default.") (emphasis added).

     In contrast, here, Mr. Blackstone has demonstrated not only that his claim would have been unacceptable to *this* Court, or even this Circuit, but that it was uniformly rejected by every court that considered it -- and would be for more than a decade to come.  He has demonstrated cause for the failure to raise his claim, and his default should be excused on that basis.

1
2
3

**2.    Mr. Blackstone suffered actual prejudice because his unlawful classification as a career offender and his unlawful conviction under Section 924(c) affected his sentence.**

4
5
6
7

Mr. Blackstone also suffered prejudice.  To establish actual prejudice under the "cause and prejudice" test, a petitioner must show that there is a reasonable probability that, without the error, the result of the proceedings would have been different. *Strickler v. Greene*, 527 U.S. 263, 289 (1999).  Mr. Blackstone can make that showing.

8
9
10
11

As to his Section 924(c) claim, Mr. Blackstone was sentenced to a sixty-month mandatory, consecutive term of imprisonment.  This is conclusive proof that, but for the *Johnson* error, his sentence would have been different.  Accordingly, his default of that claim should be excused.

12
13
14
15
16
17
18
19
20

As to his career offender enhancement, it is well established that sentencing increases caused by Guideline errors result in actual and substantial prejudice.  Indeed, in *Glover v. United States*, 531 U.S. 198 (2001), the Supreme Court held that an error that resulted in an increased Guideline range amounted to prejudice.  The Court held that the petitioner was prejudiced by that increase of even a few months, rejecting the argument that "prejudice" required a threshold increase above a certain amount to establish harm.  *Id*. at 203.  "Quite to the contrary," the *Glover* Court noted, "any amount of actual jail time has Sixth Amendment significance."  *Id*. at 203.[2]  Thus, prejudice exists whenever a petitioner's term of imprisonment is erroneously increased.

21
22

Mr. Blackstone's career-offender range, at the time of his sentencing, was 210-262 months, and in 2000, those guidelines were mandatory, not advisory.  The Court

23
24
25
26
27
28

_____

[2] Although the *Glover* court considered the prejudice prong set forth in *Strickland v. Washington*, the prejudice test under *Strickland* is the same test employed in *Strickler. See Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) ("When a habeas petitioner seeks to excuse a procedural default through an ineffective-assistance claim, the 'cause' and 'prejudice' test from *Wainwright* is replaced by the similar test for ineffective assistance set out in *Strickland*."); *United States v. Horey*, 333 F.3d 1185, 1187-88 (10th Cir. 2003); *United States v. Conley*, 349 F.3d 837, 841-42 (5th Cir. 2003) (erroneous sentence resulting from counsel's failure to object to guideline calculation established prejudice sufficient to overcome procedurally defaulted claim).

ultimately imposed a sentence of 230 months, plus a sixty-month mandatory consecutive sentence.  His non-career-offender range was 70-87 months.  Particularly given the mandatory nature of the guidelines, had the Court not been operating on the assumption that Mr. Blackstone was a career offender, there is a reasonable probability that the Court would have imposed a lower sentence.[3]  *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013) ("[T]he Sentencing Commission's data indicate that when a Guidelines range moves up or down, offenders' sentences move with it.").

### 3. Mr. Blackstone's procedural default is also excused under the miscarriage of justice standard.

Alternatively, the Court may find that any procedural default is excused under the miscarriage of justice standard, because Mr. Blackstone is actually innocent of both the Section 924(c) and career offender components of his sentence.

### a. After *Johnson*, Mr. Blackstone is actually innocent of the Section 924(c) offense and any procedural default is therefore excused.

(*Applies to Section 924(c) claims only.*)

A petitioner may excuse procedural default by showing that he is "actually innocent" such that "the failure to hear the claims would constitute a 'miscarriage of justice.'"  *Bousley*, 523 U.S. at 622; *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  To establish actual innocence of a count of conviction, the petitioner must establish that "in light of all the evidence," "it is more likely than not that no reasonable juror would

---

[3] Notably, one Circuit Court of Appeal and numerous district courts of this Circuit have concluded that a petitioner claiming a *Johnson* error can show prejudice even if sentenced under the advisory Guidelines regime.  *See In re Patrick*, ___ F.3d ___, 2016 WL 4254929, at *7 (6th Cir. Aug. 12, 2016); *Espinoza v. United States*, 16-4014-MFW (Sept. 21, 2016); *United States v. Santos*, 2:16-cv-3973-JAK, at *4 (C.D. Cal Sept. 9, 2016); *Robinson v. United States*, No. 16-4513-SJO, *8 (Sept. 6, 2016); ); *United States v. Gentry*, ___ F. Supp. 3d ___, 2016 WL 3647331, *8-9 (D. Or. 2016); *United States v. Stamps*, 2016 WL 3747286, at *4 (N.D. Cal. June 29, 2016).

8

have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo,* 513 U.S. 298, 327-328, (1995)) (internal quotation marks omitted).  As the Ninth Circuit has held, "[a] petitioner is actually innocent when he was convicted for conduct not prohibited by law." *Alaimalo*, 645 F.3d at 1047; *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014) ("One way a petitioner can demonstrate actual innocence [in order to overcome procedural default] is to show in light of subsequent case law that he cannot, as a legal matter, have committed the alleged crime.").

In this case, Mr. Blackstone did not possess, use, or carry a firearm in relation to a crime of violence because his Hobbs Act robbery offense is not a crime of violence after *Johnson*.  After *Johnson*, a crucial element of the Section 924(c) charge is therefore absent, and no reasonable factfinder could legally convict Mr. Blackstone of that offense. *See, e.g.*, *Baires-Reyes*, 2016 WL 3163049, at *1 (granting pretrial motion to dismiss indictment where the charged crime of violence was no longer a crime of violence, after *Johnson*). Indeed, the government essentially concedes as much, when it states that Mr. Blackstone's claim "rings of actual innocence" but does not meet that exception only because his claim fails on the merits. (Opp. at 9.) As set out below, however, the government is wrong that Mr. Blackstone's Section 924(c) claim fails on the merits.

Because Mr. Blackstone was convicted of conduct that is no longer an offense, he has stated a claim of actual innocence. *Alaimalo*, 645 F.3d at 1047 (finding a showing of actual innocence where, based on a subsequently decided case, the defendant's conduct was no longer an offense).  Any procedural default is therefore excused. *Bousley*, 523 U.S. at 626 (Stevens, J., concurring) ("Petitioner's conviction and punishment on the 924(c) charge are for an act that the law does not make criminal.

There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice.'" (citations and internal quotation marks omitted)).[4]

### b.  Mr. Blackstone's career offender claim is also subject to the miscarriage of justice standard.

(*Applies to career-offender claims only.*)

The Supreme Court has never decided whether a petitioner can excuse procedural default through actual innocence of a non-capital sentence.  *See Dretke v. Haley*, 541 U.S. 386, 393-94 (2004).  The Circuits have created a tangle of rules about whether and under what circumstances a petitioner can be "actually innocent" of a guideline sentence, such that his sentence would constitute a miscarriage of justice.[5]

---

[4] *Bousley* stated that actual innocence "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.  This statement was intended to make clear that where a petitioner alleges actual innocence, "the Government is not limited to the existing record but may present any admissible evidence of petitioner's guilt." *Id.*  One still can be factually innocent where only the law applicable to one's conduct has changed, as was the case in *Alaimalo* and *Vosgien*.  *Alaimalo*, 645 F.3d at 1047 (finding petitioner actually innocent where a Ninth Circuit case had rendered his conduct not prohibited by law); *Vosgien*, 742 F.3d at 1135 (finding same where state law under which petitioner was convicted was subsequently clarified to render his conduct not unlawful).

[5] *E.g.*, *Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1279-87 (11th Cir. 2013); *Spencer v. United States*, 773 F.3d 1132, 1140 (11th Cir. 2014) (en banc) (finding that the actual innocence exception did not apply to an error in calculating the *advisory* guidelines that did not raise constitutional concerns); *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011) (wrongful imposition of career offender guideline under mandatory guidelines satisfied actual innocence); *Lindsey v. United States*, 615 F.3d 998, 1001 (8th Cir. 2010) ("We have previously held, however, that the actual innocence exception to the procedural default rule is not available to remedy errors in noncapital sentencing."); *United States v. Pettiford*, 612 F.3d 270, 284 (4th Cir. 2010) (recognizing that the actual innocence exception applies when the petitioner is innocent of the prior offense, but does not apply if the petitioner argues only that the prior offense did not qualify as an ACCA "violent felony"); *Haley v. Cockrell*, 306 F.3d 257, 264 (5th Cir. 2002), *vacated and remanded sub nom. Dretke v. Haley*, 541 U.S. 386 (2004) ("We now hold that the actual innocence exception applies to noncapital sentencing procedures involving a career or habitual felony offender."); *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999) (holding that *nonconstitutional* Guideline error generally does not constitute a miscarriage of justice); *Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997) (holding that after the AEDPA amendments to section 2255, actual innocence exception applies only to challenges of a conviction, not a sentence).

The Ninth Circuit has held that a non-constitutional claim attacking a career offender designation under the advisory Guidelines does not constitute "actual innocence" for purposes of allowing an otherwise-barred successive petition through the "escape hatch" in section 2255(e).  *See Marrero v. Ives*, 682 F.3d 1190, 1193 (9th Cir. 2012) (holding that petitioner had not shown "actual innocence" by arguing that a Guidelines change made two prior convictions "related" and so were not separate Career Offender predicates).  The Ninth Circuit acknowledged that it had "not yet resolved the question whether a petitioner may ever be actually innocent of a noncapital *sentence*," but held that a purely legal challenge to Marrero's Guidelines sentence was insufficient either way.  *Id.* at 1193.  The Circuit, however, noted three possible "exceptions to the general rule that a petitioner cannot be actually innocent of a noncapital sentence," including two relevant here: (a) "some courts have suggested that a petitioner may qualify for the escape hatch if he received a sentence for which he was statutorily ineligible"; and (b) "a petitioner might be actually innocent of a sentencing enhancement if the sentence resulted from a constitutional violation."  *Id.* at 1194-95.  It appears that those issues left open in *Marrero* remain open in this Circuit. *Ezell v. United States*, 778 F.3d 762, 765 n.3 (9th Cir. 2015) ("Nor do we consider or foreclose the possibility that someone who was sentenced under an erroneous interpretation of the ACCA might obtain relief via 28 U.S.C. §§2241 and 2255(e)").

Mr. Blackstone's case fits both exceptions discussed in *Marrero*.  He was subjected to an inapplicable sentencing enhancement as the result of a constitutional violation, not a simple miscalculation or generic legal error.  Moreover, the constitutional violation affected the mandatory guidelines that applied to his case.  As the Seventh Circuit has emphasized, there is a difference between guideline error in the mandatory guideline context and in the advisory guideline context.  "Before *Booker*, the guidelines were the practical equivalent of a statute."  *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013); *see also United States v. Booker*, 543 U.S. 220, 234 (2005) ("Because [the Guidelines] are binding on judges, we have consistently held that

11

the Guidelines have the force and effect of laws."). As such, an individual wrongly sentenced as a career offender under the mandatory guidelines could plausibly claim "that his sentence exceeded the maximum authorized by 'law.'" *Hawkins*, 543 U.S. at 234. Because the imposition of a career offender enhancement "increased the sentencing range the district court was authorized to employ," the petitioner's "period of incarceration exceed[ed] that permitted by law and constitute[d] a miscarriage of justice." *Narvaez v. United States*, 674 F.3d 621, 629 (7th Cir. 2011). In essence, he was "sentenced based on the equivalent of a nonexistent offense." *Id.*; *but see, e.g.*, *Gilbert v. United States*, 640 F.3d 1293 (11th Cir. 2011) (en banc) (rejecting the distinction drawn in *Narvaez*).

The Sixth Circuit recently reached the same conclusion with respect to the mandatory guidelines:

> Serving a sentence imposed under mandatory guidelines (subsequently lowered by retroactive Supreme Court precedent) shares similarities with serving a sentence imposed above the statutory maximum. Both sentences are beyond what is called for by law, *see Brown*, 719 F.3d at 588 (explaining pre-Booker guidelines "had the force and effect of law"), and both raise a fundamental fairness issue.

*Hill v. Masters*, __ F.3d ___, 2016 WL 4655739, at *7 (6th Cir. Sep. 7, 2016).[6] As such, it concluded that a petitioner could demonstrate that he was "actually innocent" of a mandatory guideline sentence.

Like in *Narvaez* and *Hill*, the career offender enhancement resulted in a sentence in excess of the maximum authorized by law. Mr. Blackstone's mandatory guideline, absent the career offender determination, would have been 70-87 months. His sentence

---

[6] The Sixth Circuit cited the "practical" approach of the dissent in *United States v. Surratt*, 797 F.3d 240 (4th Cir. 2015) -- a dissent that highlighted the constitutional concerns inherent in barring challenges to the misapplication of a sentencing enhancement. The Fourth Circuit granted rehearing en banc in *Surratt* and has not yet issued a decision.

of 230 months, plus a sixty-month consecutive sentence under Section 924(c), exceeded that permitted by law and constituted a miscarriage of justice. His procedural default, therefore, is excused because he is actually innocent of the mandatory sentencing enhancement he received.

**B.     Mr. Blackstone's *Johnson* claim is timely because it is brought within one year of the Supreme Court's decision in *Johnson*.**

The government next argues that Mr. Blackstone's claim is untimely. The government is wrong. Section 2255 provides that the one-year statute of limitation rules at the latest of several dates, including "the date on which a right to bring the action was initially recognized by the Supreme Court, if the right has been newly recognized and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). The petition here is timely because *Johnson* was decided on June 26, 2015, and Mr. Blackstone's Motion was filed on May 19, 2016, within one year of the decision in *Johnson. See Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (Section 2255(f)(3) runs from the date on which the Supreme Court recognizes the new right.) Because *Johnson* established a "newly recognized" right that is "retroactively applicable to cases on collateral review," the petition is timely under section 2255(f)(3).[7]

**1.     Binding Ninth Circuit precedent compels the conclusion that *Johnson* applies equally to Section 924(c).**

(*Applies to Section 924(c) only*)

The government first argues that *Johnson*'s holding invalidating the ACCA's residual clause as unconstitutionally vague does not extend to Section 924(c), let alone

---

[7] The government does not contest that *Johnson* is a "new" rule, (Opp. at 20 n.6), ("The government's position is that the rule in Johnson as applied to the Career Offender Guideline is new, procedural, and nonwatershed . . . ."), and Petitioner does not contend that *Johnson*, if procedural, is a "watershed" rule. Thus the issue for this Court is truly narrow: procedural or substantive.

retroactively, and therefore his Section 924(c) claim is untimely.  (Opp. at 12.)  The government admits that the Ninth Circuit has already extended *Johnson*'s holding that the ACCA's residual clause is unconstitutionally vague to the "materially identical residual clause" in 18 U.S.C. § 16(b).  (Opp. at 15 (citing *Dimaya*, 803 F.3d 1110.)  Of course, the language of Section 16(b) is *identical* to Section 924(c)(3)(B).  Even so, the government maintains that Section 924(c)'s residual clause somehow is not also unconstitutionally vague.  Its arguments on this point are of two types: (a) rewarmed arguments that were already rejected explicitly by the *Dimaya* court; and (b) an argument adopted by the Sixth Circuit that is foreclosed under longstanding Ninth Circuit precedent.  This Court is bound by Ninth Circuit precedent to reject both categories of arguments and find, as many district courts of this Circuit have already, that *Dimaya* dictates the conclusion that Section 924(c) is unconstitutionally vague.  *See Baires-Reyes*, 2016 WL 3163049; *United States v. Bundy*, 2016 WL 3361490 (D. Or. Feb. 10, 2016); *United States v. Smith and Merritte*, 2016 WL 2901661 (D. Nev. May 18, 2016); *Luong*, 2016 WL 1588495; *United States v. Bell*, ___ F. Supp. 3d ___, 2016 WL 344749 (N.D. Cal. 2016); *United States v. Lattanaphom*, ___ F. Supp.3d ___, 2016 WL 393545 (E.D. Cal. 2016); *Lopez-Camacho v. United States*, 2:16-cv-3731-RSWL, at *11 (C.D. Cal. Oct. 4, 2016).

> **a.** ***Dimaya* forecloses the government's arguments that the minor textual differences between the ACCA's residual clause and that of Section 924(c)(3)(B) are of any consequence.**

In the course of concluding that *Johnson*'s analysis striking down the ACCA residual clause as unconstitutionally vague likewise affected the residual clause in 18 U.S.C. § 16(b), the *Dimaya* Court relied on the similarity in the language of the two clauses.  803 F.3d at 1114 (comparing ACCA's "involves a substantial risk that physical force against the person or property of another may be used" with Section 16(b)'s "involves conduct that presents a serious potential risk of physical injury to

14

another"). The Court also recognized that both statutory provisions are subject to the same mode of analysis: courts must "decide what a usual or ordinary violation of the statute entails and then determine how great a risk of injury that ordinary case presents." *Id.* at 1115 (internal quotations and citations omitted). And, the Court concluded that the same two features that led the Supreme Court in *Johnson* to hold that the ACCA residual clause was void for vagueness -- uncertainty in describing the "ordinary case" of a particular statute, coupled with an imprecise 'serious potential risk' standard -- were each present in the residual clause of Section 16(b) as well. *Id.* at 1115-17.

The Ninth Circuit has always treated Section 924(c)'s residual clause, the provision at issue here, as equivalent to Section 16(b), the provision at issue in *Dimaya*. Thus, it has routinely considered cases analyzing one statute as equally applicable to a case involving the other. *See, e.g., United States v. Amparo*, 68 F.3d 1222, 1226 (9th Cir. 1995); *Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1130 (9th Cir. 2012); *Mendez*, 992 F.2d at 1492. Following this well-worn path, this Court should easily apply *Dimaya* to Mr. Blackstone's case.

The government claims that *Johnson* does not apply to Section 924(c) because Section 924(c) lacks the textual features that *Johnson II* identified as critical to the conclusion that the ACCA's residual clause is unconstitutionally vague. (Opp. at 12-14.) In rejecting this same argument, the *Dimaya* court held that "[a]lthough the government can point to a couple of minor distinctions between the text of the residual clause and that of the INA's definition of a crime of violence, none undermines the applicability of *Johnson*'s fundamental holding to this case." *Dimaya*, 803 F.3d at 1120. And indeed, the textual features the government highlights are ones that were put to the *Dimaya* court and rejected.

First, the government suggests that *Johnson* does not apply to Section 924(c) because while the ACCA's residual clause "requires courts . . . [to] determine whether the 'physical acts that make up the crime will injure someone,' but also to evaluate the

15

risk that injury might occur *after* the commission of the offense," Section 924(c)(3) requires courts to focus on the risk that physical force may be used in the course of committing the offense.  (Opp. at 12 (emphasis in original).)  In *Dimaya*, the Ninth Circuit expressed doubt that § 16(b)'s reference to conduct "in the course of committing the offense" "actually creates a distinction between the two clauses" at issue.  *Dimaya*, 803 F.3d at 1118.  Further, the court held that "even if such a distinction did exist, it would not save [§ 16(b)'s] definition of a crime of violence from unconstitutionality."  *Id.*  *Johnson*'s reasoning applied "equally whether the inquiry considers the risk of violence posed by the commission and the aftereffects of a crime, or whether it is limited to consideration of the risk of violence posed by acts necessary to satisfy the elements of the offense."  *Dimaya*, 803 F.3d at 1118-19.

Contrary to the government's suggestion, *Johnson*'s holding did not depend on indeterminacy of the term "risk of *force*" that would not apply to Section 924(c) or Section 16(b)'s "risk of injury."  (Opp. at 13.)  The infirmity was in how the courts analyzed the "risk," and, as *Dimaya* has already found, the analysis for the residual clause of Section 16(b) (and therefore for the residual clause of Section 924(c)) "g[a]ve[] judges no more guidance than d[id] the ACCA provision as to what constitute[d] a substantial enough risk of force to satisfy the statute."  *Dimaya*, 803 F.3d at 1117; *see also Shuti v. Lynch*, ___ F.3d ___, 2016 WL 3632539 (6th Cir. Jul. 7, 2016) ("Even though the INA refers to the risk that 'force may be used,' rather than the risk that potential 'injury might occur,' *Johnson* is equally applicable. The reason is simple: a marginally narrower abstraction is an abstraction all the same.").  Indeed, the Solicitor General himself so argued in *Johnson*.  *Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23) ("Although Section 16 refers to the risk that *force* will be used rather than that *injury* will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify

the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.").

The second textual feature the government highlights is the fact that the ACCA residual clause prefaces its "serious potential risk" language with four enumerated offenses ("burglary, arson, or extortion, or involv[ing] use of explosives"), which "forc[es] courts to interpret 'serious potential risk' in light of the four enumerated crimes in the provision, crimes which are far from clear in respect to the degree of risk each poses." *Dimaya*, 803 F.3d at 1117 (internal quotation marks omitted).  The government contends that this feature distinguishes the residual clause of the ACCA from that of Section 924(c)(3).  (Opp. at 13.)

But once again, the Ninth Circuit already considered and rejected this very argument in *Dimaya*, reasoning that the Supreme Court found the ACCA's residual clause "void for vagueness in and of itself for the reasons stated in reaching its decision, and not because of the clause's relation to the four listed offenses." *Dimaya*, 803 F.3d at 1117-18.  *See also United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015) ("[T]he enumeration of specific crimes did nothing to clarify the quality or quantity of risk necessary to classify offenses under the statute. The list itself wasn't one of the 'two features' that combined to make the clause unconstitutionally vague [in *Johnson*]."); *United States v. Edmundson*, 153 F. Supp. 3d 857, 862 (D. Md. 2015), *as amended* (Dec. 30, 2015) (concluding that "[i]t was the requirement that the court engage in the abstract evaluation of the kind of conduct the predicate offense involved in the 'ordinary case,' . . . not the listing of confusing comparators" that made ACCA's residual clause unconstitutionally vague).  Indeed, the *Dimaya* court found that the absence of enumerated offenses in Section 16(b) and Section 924(c) might actually cut against the government's argument. *Dimaya*, 803 F.3d at 1118 n.13 ("To be sure, ACCA's enumerated examples are 'far from clear in respect to the degree of risk each poses.' [citation omitted]  However, they provide at least *some* guidance as to the sort of offenses Congress intended for the provision to cover.  Section 16(b), by contrast,

17

1
2
provide[s] no such guidance at all.").  Once again, the government's textual argument cannot get off the ground.

3
4
5
In short, because both of the government's textual arguments have already been roundly rejected by the *Dimaya* court with respect to identical language the Ninth Circuit has long interpreted identically, this Court is also bound to reject them.[8]

6
7
### b.  Ninth Circuit precedent precludes the Court from adopting the Sixth Circuit's reasoning in *Shuti*.

8
9
10
11
12
13
14
15
The government makes a last-ditch effort to argue that, despite their identical language, Section 16(b) and Section 924(c)(3)(B) are distinguishable.  (Opp. at 15-16.) The government hints that this Court look to the decision issued by the one Circuit to have treated differently the residual clauses in Section 16(b) and Section 924(c); the Sixth Circuit in *Shuti*.  Notably, while implying that the Court adopt the reasoning of *Shuti*, the government neglects to mention that *Shuti* essentially adopts *Dimaya*'s -- and therefore rejects the government's -- textual analysis as to the two points raised above. *Shuti*, 2016 WL 3632539 at *5-7.

16
17
18
19
20
Instead, the Sixth Circuit believed it could distinguish between Section 16(b)'s residual clause -- which always looks backwards to *prior* convictions and thus uses the ordinary case test -- and Section 924(c)'s residual clause -- which "applied the substantial risk element . . . to the actual conduct in the present case."  *Id*. at *8 (internal quotation marks and alterations omitted).  As the *Shuti* court reasoned:

21
22

23
24
25
26
27
28
[8] On September 29, 2016, the Supreme Court granted a writ of certiorari in *Dimaya*. This Court, however, must continue to apply it, unless and until it is overturned by the Supreme Court. *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority"); *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority must be followed unless and until overruled by a body competent to do so."); *see also Mohamed v. Uber Techs., Inc.*, ___F.3d___, No. 15-16178, 2016 WL 4651409, at *6 (9th Cir. Sept. 7, 2016) ("The district court does not have the authority to ignore circuit court precedent . . . .").

1
2
3
4

> Unlike the ACCA and INA, which require a categorical approach to stale predicate convictions, 18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding. *This makes all the difference*.

5
6

*Id.* at *8 (emphasis added). In other words, the Sixth Circuit posited that it did not need to use the categorical approach in the context of Section 924(c).

7
8
9
10
11
12
13
14
15
16
17

 *Shuti* is unpersuasive here because Ninth Circuit case law is clear that the categorical approach applies equally to *both* § 924(c) and § 16(b). In *United States v. Amparo*, the Ninth Circuit held that the categorical approach should be applied to determine whether an offense was a crime of violence under 18 U.S.C. § 924(c)(3)(B). *United States v. Amparo*, 68 F.3d 1222, 1224 (9th Cir. 1995). In *United States v. Piccolo*, the Ninth Circuit further clarified that "in the context of crime-of-violence determinations under § 924(c), our categorical approach applies regardless of whether we review a current or prior crime." *United States v. Piccolo*, 441 F.3d 1084, 1086-87 (9th Cir. 2006). Because this Court is bound to follow *Amparo* and *Piccolo*, it cannot accept the government's invitation to draw the distinction that the Sixth Circuit drew in *Shuti*.

18
19
20

### c.   The Government fails to provide any support for the argument that, if *Johnson* applies to Section 924(c), it does not do so retroactively.

21
22
23
24
25
26
27

 Despite writing in a heading that *Johnson* does not apply to Section 924(c), "*let alone retroactively*," the government makes no argument that if *Johnson* applies to Section 924(c) offenses, it would not be retroactive. *Johnson* is a new, substantive rule that applies retroactively *at least* where it narrows the scope of a substantive offense. *Welch*, 136 S.Ct. at 1264-68 (holding that *Johnson* announced a new substantive rule that has retroactive effect in cases on collateral review); *Bousley*, 523 U.S. at 620 (holding that a decision narrowing the reach of a federal criminal statute is a

28

substantive rule that applies retroactively); *Schriro*, 542 U.S. at 354 ("A decision that modifies the elements of an offense is normally substantive rather than procedural").

In sum, *Dimaya* conclusively establishes that *Johnson* applies with equal force to the identically worded and analytically indistinct residual clause in Section 924(c). [9]

## 2. *Johnson* is "retroactively applicable to cases on collateral review" challenging application of an unconstitutional Sentencing Guideline.

*(Applies to career-offender claims only)*

The government next argues that *Johnson* does not apply retroactively to Sentencing Guidelines challenges on collateral review.  (Opp. at 17.)  As this Court is well aware, however, in *Johnson*, the Supreme Court held that "the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges," such that "[i]ncreasing a defendant's sentence under the clause denies due process of law."  135 S. Ct. at 2557.  The government is therefore incorrect: *Johnson* is a substantive rule that applies retroactively to Guidelines cases

### a. *Johnson* Is a Substantive Rule

The government correctly sets up the retroactivity question here as a division between procedural and substantive rules: under *Teague v. Lane*, if *Johnson* is a new *procedural* rule, it is not retroactive to cases on collateral review.  489 U.S. 288, 310

---

[9] Regarding the timeliness of Mr. Blackstone's Section 924(c) claim, should the Court find that the Petition is not timely, it should find that such untimeliness is excused -- at least as to the Section 924(c) claim -- based on actual innocence.  *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013) (holding that a petitioner's actual innocence can overcome procedural default, such as failure to satisfy the statute of limitations, under the miscarriage of justice exception).  As discussed above, Petitioner is actually innocent of the Section 924(c) conviction because his Hobbs Act robbery conviction no longer qualifies as a crime of violence and therefore no longer serves to satisfy the predicate-offense element of Section 924(c).  Second, where, as here, an indictment alleges conduct that is not an offense, that flaw is a jurisdictional defect that cannot be waived.  Since the defect cannot be waived, there can be no statute of limitations.  *See, e.g., United States v. Peter*, 310 F.3d 709 (11th Cir. 2002) (holding that the doctrine of procedural default does not apply to claims of jurisdictional error, as jurisdictional error can never be waived).

(1989); *Bousley*, 523 U.S. at 620 ("*Teague* by its terms applies only to procedural rules."). If *Johnson* is a *substantive* rule, it is not subject to *Teague*, and it applies retroactively. *See Beard v. Banks*, 542 U.S. 406, 411 n. 3 (2004); *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); *see also Bousley*, 523 U.S. at 620. Ninth Circuit and Supreme Court precedent make clear that *Johnson* is a substantive rule.

Substantive rules include rules that "narrow the scope of a criminal statute by interpreting its terms," *Schriro*, 542 U.S. at 351-52 (citing *Bousley*, 523 U.S. at 620-21), that "alter [ ] the range of conduct or the class of persons that the law punishes," *id.* at 353 (citing *Saffle v. Parks*, 494 U.S. 484, 495 (1990)), or that "prohibit[ ] a certain category of punishment for a class of defendants because of their status or offense," *Saffle*, 494 U.S. at 494.

Procedural rules, by contrast, regulate "only the manner of determining defendant's culpability." *Schriro*, 542 U.S. at 353. Rules that allocate fact-finding responsibility between judge and jury, *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Booker*, 543 U.S. 220 (2005), or regulating the admissibility of evidence at trial, *Crawford v. Washington*, 541 U.S. 36 (2004), or requiring additional advisals, *Padilla v. Kentucky*, 559 U.S. 356 (2010), have all been described as procedural. *See also Whorton v. Bockting*, 549 U.S. 406, 417-18 (2007) (*Crawford*); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 668-69 (9th Cir. 2002) (*Apprendi*); *United States v. Cruz*, 423 F.3d 1119, 1120 (9th Cir. 2005). Such rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise," which, the Court stated, is possibly too "speculative" to warrant retroactivity. *Schriro*, 542 U.S. at 352. *See also* Govt's Brief, *United States v. Price*, No. 15-2427 (7th Cir. 2015), at 16 ("The decisions that the Supreme Court has classified as procedural have altered only the process used to determine a defendant's culpability without expanding or narrowing for any particular defendants *the range of possible outcomes* of the criminal process.") (emphasis added). As the government

Case 2:16-cv-03872-CAS   Document 17   Filed 10/05/16   Page 37 of 64   Page ID #:278

itself argued to the Seventh Circuit, *Johnson* does none of the things that the Supreme Court has previously called procedural rules:

> The *Johnson* rule does not "regulate only the manner of determining the defendant's culpability." *Summerlin*, 542 U.S. at 353. It does not shift the trier of fact, change the rules regarding admissible evidence, or require additional procedural advisements.

Govt's Brief, *United States v. Price*, No. 15-2427 (7th Cir. 2015), at 16.

In *Welch v. United States*, the Court held that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." 136 S. Ct. at 1268. *Welch* clarified that whether a rule is substantive or procedural -- the test for retroactivity -- is determined by the "function" of the rule "itself." *Id*. at 1265-66. In the sentencing context, the answer depends on whether the rule itself alters the substantive reach of a sentencing provision, or instead alters only the procedures a court must follow to determine whether the sentencing provision applies. *Id*. at 1265. The Court held that *Johnson* "had nothing to do with" procedures for determining whether the ACCA applies, but instead "changed the substantive reach" of the ACCA itself, thus "altering the range of conduct or the class of persons that the [Act] punishes." *Id*. at 1265. Likewise, *Johnson* altered the substantive reach of the career offender Guideline, thus narrowing the range of conduct and the class of persons that the guideline punishes, and had nothing to do with procedures for determining whether the guideline applies. For this reason, *Johnson* must be a substantive rule.

Yet even after *Welch*, the government maintains that *Johnson* does not apply retroactively to cases in which defendants were sentenced based on the residual clause of the career offender Guideline. "[T]here is no Ninth Circuit or Supreme Court authority to support its position," *McGary*, 2016 WL 4126451 at *5, and, indeed, the government's position squarely conflicts with this term's decisions in *Welch* and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), and with Ninth Circuit precedent.

### b.  Adopting the government's approach would defy binding Ninth Circuit precedent.

First, the Ninth Circuit has already held, in *United States v. Reina-Rodriguez*, that a decision narrowing the reach of the ACCA was a substantive rule that applied retroactively to guidelines cases.  At issue in *Reina-Rodriguez* was the retroactivity of the Court's decision in *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc), which limited the definition of "burglary" under the ACCA.  Reina-Rodriguez received a guideline enhancement -- an enhancement under U.S.S.G. § 2L1.2 in an illegal reentry case -- imposed because of his prior burglary conviction.  655 F.3d at 1189. Because his case was final by the time *Grisel* was decided and changed the generic definition of "burglary," he filed a § 2255 motion and argued that *Grisel* should apply retroactively.  *Id.* at 1187.  The Court concluded *Grisel* was retroactive because it announced a new substantive rule.  The Court rejected the government's argument that *Grisel*'s rule was procedural because it "'[only] altered the permissible methods for determining' whether a sentence enhancement can be imposed," *id*. (alteration in original), stating instead: "One could hardly have a clearer example of a "decision [ ] that narrow[s] the scope of a criminal statute by interpreting its terms" than *Grisel*'s decision that a generic burglary is only a burglary of an unmovable structure.  *Reina-Rodriguez*, 655 F.3d at 1189 (quoting *Schriro*, 542 U.S. at 351).  Thus, in both cases, the new rule was substantive because it "altered the conduct that substantively qualifies as burglary." *Id*. at 1189.

The government does not cite -- let alone attempt to distinguish -- *Reina-Rodriguez*'s on-point holding.  It remains controlling in this case, as has been held many times over by the district courts of this Circuit in the context of *Johnson*.[10]  *See,*

---

[10] It does not matter that the Court in *Reina-Rodriguez* questioned that *Teague* applied to the case, because the Court went on to apply *Teague* to the issue anyway. *Id.* at 1188-89.  Nor does it matter that *Reina-Rodriguez* considered a different portion of the ACCA crime of violence definition; the narrowing rule in *Reina-Rodriguez* affected

23

*e.g., Robinson*, No. 16-4513 at *10 ("[S]everal courts in the Ninth Circuit have relied on *Reina-Rodriguez* or the reasoning therein to conclude that a rule that is substantive in the first context [ACCA] is substantive in the second context [Guidelines]. . .  The Government has not identified a single case from a district court sitting in the Ninth Circuit that has reached the opposite result. . . .  This Court . . . is bound to follow Ninth Circuit precedent, which district courts in the Ninth Circuit have unwaveringly relied upon in holding that collateral review based on alleged *Johnson* errors in calculating the applicable Guidelines range is reviewable under a § 2255 motion.") (quotation marks and citation omitted) (alterations in original); *Espinoza*, 16-4014-MWF at *7 ("The reasoning of *Reina-Rodriguez*, then, strongly supports retroactive application in this case."); *Dean*, 2016 WL 1060229 at *16 (holding *Johnson*'s new rule substantive, stating that under the Ninth Circuit's decision in *Reina-Rodriguez*, "a rule that is substantive in the first context [ACCA] is substantive in the second context [Guidelines]").[11]  *Reina-Rodriguez* requires this Court to hold that decisions narrowing the reach of the ACCA apply retroactively to parallel provisions in the Guidelines. *Yong v. INS*, 208 F.3d 1116, 1119-21 & n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority.").

---

the reach of the career offender guideline, but did not affect the statutory maximum or minimum.  The same is true of *Johnson*.

[11] S*ee also* Order Granting Motion to Vacate, *Gilbert*, 2016 WL 3443898 at *5 (finding that under *Reina-Rodriguez*, "when a new rule is substantive as applied to the ACCA, it is also substantive as applied to the Guidelines."); *United States v. Stamps*, 4:13-cr-239-CW, Dkt. 57, at 10 (N.D. Cal. Jun. 29, 2016) (granting § 2255 motion, finding *Johnson* retroactive to career offenders based on *Reina-Rodriguez*, and finding "there is no Ninth Circuit or Supreme Court authority" to support the government's retroactivity argument); *see also Gibson v. United States*, No. C15-5737-BHS, ECF No. 27 (W.D. Wash. Jun. 15, 2016) ("[T]he Government *concedes* that Ninth Circuit precedent holds that substantive rules apply retroactively to guideline calculations (citing *Reina-Rodriguez*)") (emphasis added).

1
2

  **c.**  ***Welch*'s holding and reasoning compel the conclusion**
      **that *Johnson* applies retroactively to Guidelines cases.**

3
4
5
6
7
8
9
10
11

   Even if the Court were not bound by this Ninth Circuit precedent, twin decisions from this term, *Welch* and *Montgomery*, make clear that *Johnson* announced "a substantive rule that has retroactive effect in cases on collateral review." *Welch*, 136 S. Ct. at 1268. The *Welch* Court explained that "whether a rule is substantive or procedural" is determined "by considering the function of the rule," *id.* at 1265, which "depends [ ] on whether the new rule *itself* has a procedural function or a substantive function—that is, whether it alters only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons the law punishes." *Id.* at 1266 (emphasis added).[12]

12
13
14
15
16
17
18
19
20

   Applying these definitions, the Court concluded that "*Johnson* is not a procedural decision," *id.* at 1265, because *Johnson*'s rule "had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act," but instead "changed the substantive *reach* of the underlying statute, altering 'the range of conduct or the class of persons that the [Act] punishes.'" *Id.* (emphasis added). Likewise, *Johnson* changed the substantive reach of § 4B1.2(a)'s "crime of violence" definition, thus altering the range of conduct and the class of persons that the Guideline punishes, and had nothing to do with procedures for determining whether the Guideline applies.

21
22
23
24

   The Supreme Court said nothing in *Welch* to limit its holding or reasoning to ACCA cases—or to rules that affect statutory maxima and minima. (*See* Opp. at 20.) Indeed, the government implored the Court to set that limitation in *Welch*. *See Reply Brief for the United States*, *Welch v. United States*, 15-6418, at 9 (urging the Court to

25

---

26
27
28

  [12] The Court should reject any attempt to confuse procedural and substantive rules in the *Teague* context with procedural and substantive error, which "are terms of art related to direct appellate review of sentences and are not applicable here." *McGary*, 2016 WL 4126451, at n.2.

find that *Johnson* was substantive as to ACCA defendants, because it resulted in a sentence "the law cannot impose"). But the Court embraced a broader definition based on its prior precedent: "'A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.'" 136 S. Ct. at 1264-65 (quoting *Schriro*, 542 U.S. at 353). *Johnson*'s substantive function in a Guidelines case is the same as for ACCA: it changes the substantive reach of the Career Offender Guideline, by altering the range of conduct and the class of persons the Guideline punishes. *See also Welch*, Transcript of Oral Argument at 40:3-10 (Chief Justice Roberts: "[M]y understanding is that a rule is properly categorized as procedural if there's some people who could be convicted under it legitimately[ . . . .] But who is it who could have been [sentenced] legitimately under the residual clause?"). That is, not even "flawless sentencing procedures legitimate a punishment where the Constitution immunizes the defendant from the sentence imposed." *Montgomery*, 136 S. Ct. at 730. Under *Welch*, *Johnson* should be held retroactive to career offenders.

> **d.** **The government's attempts to distinguish the effect of *Johnson* between the ACCA and Guideline contexts are unavailing.**

The government resists this analysis. It claims that *Johnson* is a substantive rule as to ACCA, but procedural as to the guidelines. (Opp. at 20.) It distinguishes between the two, saying that *Johnson* in the ACCA context renders certain sentences illegal, while *Johnson* in the career-offender context merely establishes that the guideline range is incorrectly calculated. The government is wrong for two reasons: One, retroactivity is a categorical matter and a substantive rule is substantive in all applications. And two, even if this were the first situation to ever consider retroactivity on an "as applied" basis, *Johnson* is a substantive rule, even in the guidelines context.

### (1) Substantive rules apply to all cases on collateral review.

The government claims that *Johnson* is substantive in the ACCA context and procedural in the guidelines context.  But, as the Supreme Court has recognized, retroactivity is a "categorical matter."  *Davis v. United States*, 131 S. Ct. 2419, 2430 (2011).  If a new rule is substantive, it must be applied retroactively to *all* cases on collateral review.  *Danforth*, 552 U.S. at 266 ("New constitutional rules announced by [the Supreme] Court that [are substantive or watershed rules of criminal procedure] must be applied in . . . all federal habeas corpus proceedings."); *Teague*, 489 U.S. at 316 (determining that a new rule must "be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated").  Or, as the Third Circuit put it, "Under *Teague*, either a rule is retroactive or it is not."  *United States v. Doe*, 810 F.3d 132, 154 n.13 (3d Cir. 2015) (holding that the Supreme Court's decision in *Begay*, an ACCA case, is retroactive in a Guidelines case). *See In re Patrick*, ___ F.3d ___, 2016 WL 4254929, *3 (6th Cir. Aug. 12, 2016) (finding, in the *Johnson* context, "no support for the proposition that the same rule may be substantive and retroactive in one context but procedural and not retroactive in another."); *Hubbard*, 2016 WL 3181417 at *6 (same).[13]

---

[13] Indeed, the government itself vigorously argued that ACCA-narrowing rules announced by the Supreme Court were substantive, and hence retroactive on collateral review, in ACCA and Guidelines cases alike.  In *Spencer v. United States*, 773 F.3d 1132 (11th Cir. 2014) (en banc), the United States argued to the en banc Eleventh Circuit that *Begay* applied retroactively in an advisory Guidelines case, explaining that "*Begay*'s status as a substantive rule is fixed, moreover, and does not fluctuate based on whether the prisoner is challenging an ACCA enhancement, a mandatory Guidelines enhancement, or, as here, an advisory Guidelines enhancement.  In every case where it applies, *Begay* has the same substantive, narrowing effect and thus the same retroactive application."  Suppl. Br. For United States on Reh'g En Banc at 15, *Spencer*, 773 F.3d 1132 (No. 10–10676).  The government said that it was "not aware of any such chameleon-like rules" that "were substantive for some purposes and procedural for

1   Nothing in the law of retroactivity has changed such that this Court should

2   disturb the well-settled rule that even the government – until *Johnson* – consistently

3   advocated: A substantive rule is a substantive rule in all applications.

4         **(2)    The government's explanation of why *Johnson* is a**

5             **procedural rule in the Guidelines context fails on its**

6             **own terms.**

7   The government's main argument is that the substantive vs. procedural debate in

8   this context should turn on whether the error altered the statutory sentencing range, i.e.,

9   the minimum and maximum sentence involved.  (Opp. at 20-23.)  But just as in the

10   ACCA context, an incorrectly calculated guideline range is an illegal sentence, since

11   district courts have no discretion but to properly calculate the guideline range.  *See*

12   Suppl. Br. for United States at 9, *United States v. Pagan-Soto*, No. 13-2243, (1st Cir.

13   Aug. 11, 2015), 2015 WL 4872453 (Courts "have no discretion about the proper legal

14   interpretation of the guidelines."); *see also United States v. Torres*, ___ F.3d ___, 2016

15   WL 3770517, at * 9 (9th Cir. July 14, 2016) (a district court's reliance on the residual

16   clause in imposing a guideline sentence "renders [his] sentence "illegal").  That is

17   particularly true where, as here, the Petitioner was sentenced under the mandatory

18   guidelines.  The government's rule takes too narrow a view on what rules are

19   "substantive."

20   Indeed, if the government's position was ever viable, it cannot be after the

21   Supreme Court's decision in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) --

22   decided shortly before *Welch* -- which rejected such a narrow characterization of a

23   "substantive" rule for retroactivity purposes.  *Montgomery* considered the retroactivity

24   of the Court's prior decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which had

25   held that states could sentence a juvenile to life without parole *only* if the state had a

27   others," that "a rule either is or is not substantive, and that its status as such does not

28   involve a context-dependent assessment into how the rule is being invoked."  *Id.* at 56.

28

1   process that takes into account the individual's youth and capacity to change.  The state

2   of Louisiana claimed, much as the government does here, that *Miller* was a procedural

3   decision because it "mandates only that a sentencer follow a certain process—

4   considering an offender's youth and attendant characteristics—before imposing a

5   particular penalty."  Both before *Miller* and after, it was possible for the sentencing

6   court to impose a life sentence on a juvenile.  That made *Miller* a procedural rule,

7   according to Louisiana, "because it did not place any punishment beyond the State's

8   power to impose."  *Montgomery*, 136 S. Ct. at 734.

9           The Supreme Court rejected this argument, holding that the *Miller* rule was

10  substantive.  Even though *Miller* did not *forbid* a state from ever imposing the sentence

11  of life without parole for all juvenile offenders, it did "alter the . . . class of persons that

12  the law punishes," by significantly narrowing the class of individuals subject to that

13  sentence and narrowing the justifications that would support such a sentence.  *Id.* at 732

14  (quoting *Schriro*, 542 U.S. at 353).  And, it held, *Miller* was a substantive rule because

15  it "necessarily carries with it a significant risk that a defendant – here the vast majority

16  of juvenile offenders – faces a punishment that the law cannot impose upon him."  *Id.*

17  (alterations, citations and quotation marks omitted.)  That is, "[b]efore *Miller*, every

18  juvenile convicted of a homicide offense could be sentenced to life without parole.

19  After *Miller*, it will be the rare juvenile offender who can receive that same sentence."

20  *Id.* at 734.  Notably, the Supreme Court reached this conclusion with the government

21  advancing this very theory for why *Miller* was retroactive.  Br. For the United States as

22  Amicus Curiae Supporting Pet'r at 19-22, *Montgomery v. Louisiana*, 136 S. Ct. 6

23  (2015) (No. 14-280) (emphasizing the narrowness of "procedural rules" as those that

24  regulate *only* the manner of determining a sentence is appropriate, while substantive

29

rules "give[ ] juvenile offenders the opportunity to obtain different and more favorable outcomes").[14]

As the Supreme Court recently reiterated, even the advisory guidelines continue to provide such an "anchoring" effect at sentencing that they constitute the starting point in analysis, and any deviation from that guideline must be explained and justified. *Peugh*, 133 S. Ct. at 2083. But certainly under the mandatory guidelines at issue here, the guidelines did "mandate or authorize" the sentence to be imposed, by significantly cabining the district court's authority to impose any sentence outside that range. Because of the gravitational pull of the guidelines -- particularly before *Booker* -- "it will be the rare . . . offender who can receive th[e] same sentence" after *Johnson*. *Montgomery*, 136 S. Ct. at 734.

Because the residual clause is invalid under *Johnson*, "it can no longer mandate or authorize *any* sentence." *Welch*, 136 S. Ct. at 1265 (emphasis added). The Court should find *Johnson* retroactive to Mr. Blackstone's guideline sentence.

### e. *Johnson* Is the Only New Rule in this Case.

Unable to show that *Johnson* is anything but substantive, the government proposes another novel theory: that to apply *Johnson* to Mr. Blackstone's case, this Court would have to announce an additional new rule "that due process vagueness principles apply to the Sentencing Guidelines." (Opp. at 21, n.7.) But *Johnson* is the only new rule in this case. The Ninth Circuit recognized well before *Johnson* that the vagueness doctrine applies to the Guidelines. *United States v. Rearden*, 349 F.3d 608, 614 (9th Cir. 2003) ("We allow challenges to the sentencing guidelines on vagueness grounds . . . .") (citing *United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997)).

---

[14] The *Montgomery* Court also demolished the argument that because *Miller*'s holding had a procedural component, it set forth a procedural rule. *Id*. at 734. The Court made clear that substantive rules can have procedural requirements, but that "[t]hose procedural requirements do not, of course, transform substantive rules into procedural ones." *Id*. at 735.

The Ninth Circuit's cases remain good law.  Indeed, since *Johnson* and *Rearden*, the Supreme Court has only reaffirmed that the Guidelines are subject to constitutional challenges, "notwithstanding the fact that [after *Booker*,] sentencing courts possess discretion to deviate from the recommended sentencing range." *Peugh*, 133 S.Ct. at 2082.

Indeed, since *Johnson* and *Rearden*, the Supreme Court has only reaffirmed that the Guidelines are subject to constitutional challenges even under the advisory guidelines (i.e., "notwithstanding the fact that sentencing courts [now] possess discretion to deviate from the recommended sentencing range.") *Peugh*, 133 S.Ct. at 2082.  In *Peugh*, the Court considered whether the Ex Post Facto Clause is violated when a defendant is sentenced under guidelines providing a higher advisory sentencing range than the guidelines in effect at the time of the offense. *Id.* at 2081.  The principles articulated therein -- namely that the sentencing guidelines "*are in a real sense the basis for the sentence*" -- apply with equal force to challenges under the Due Process Clause. *Id.* at 2083 (emphasis in original).  *Peugh* thus reflects the Court's judgment that the Ninth Circuit had it right -- that the Guidelines are subject to constitutional challenges because the Guidelines are the mandatory starting point for sentencing determinations. *Id.* at 2083.  *See also Hurlburt*, No. 14-3611, at 15 ("If the Guidelines are constraining enough to require compliance with the Ex Post Facto Clause, it follows that they are constraining enough to require compliance with the Due Process Clause's prohibition against vague laws.  We see no principled way to distinguish *Peugh* on doctrinal grounds: The two constitutional protections share the same underlying concerns about fair notice and arbitrary governmental action.").[15]

---

[15] In *Hurlburt*, the Seventh Circuit noted that it "join[ed] a growing consensus among the circuits" in finding the residual clause of the career offender guideline to be unconstitutionally vague. *Id.* at 17-18 (collecting cases from the 1st, 2nd, 3d, 8th, 10th and 11th Circuits).

1       This precedent makes clear that the Guidelines are and have at all relevant times

2   been subject to constitutional challenge on vagueness grounds, and *Johnson* is the only

3   new rule in this case.  *See Espinoza*, 2:16-cv-4014-MWF (rejecting government's

4   argument that granting a petition required some new rule other than *Johnson*).

5   **C.**   **Hobbs Act Robbery is not a crime of violence for Section 924(c)**

6          **purposes, after *Johnson***

7       As to the merits, Mr. Blackstone raises four claims, any one of which would

8   require resentencing: (a) Hobbs Act robbery is not a crime of violence for purposes of

9   18 U.S.C. § 924(c); (b) California robbery is not a crime of violence for purposes of the

10  career-offender guideline; (c) California voluntary manslaughter is not a crime of

11  violence for purposes of the career-offender guideline; and (d) Hobbs Act robbery is

12  not a crime of violence for purposes of the career-offender guideline. Each of these will

13  be discussed in turn.

14      Mr. Blackstone's first claim is that Hobbs Act robbery is no longer a crime of

15  violence for purposes of a conviction under Section 924(c) because it does not satisfy

16  the force clause.  Only a few points in the government's opposition were not covered in

17  the initial Motion.

18      First, neither *United States v. Mendez*, 992 F.2d 1488 (9th Cir. 1993), nor the

19  unpublished memorandum disposition in *United States v. Howard*, No. 15-10042, 2016

20  WL 2961978 (9th Cir. June 24, 2016) settles this issue.  The *Mendez* court repeatedly

21  stated that it was interpreting only the residual clause.  *See* 992 F.2d at 1491.  The

22  government latches onto a single sentence in *Mendez*, in which the court stated without

23  any explanation: "Robbery indisputably qualifies as a crime of violence."  *Id.*  This

24  statement was pure dictum.  *See United States v. Boitano*, 796 F.3d 1160, 1164 (9th

25  Cir. 2015) ("Dictum is an unnecessary statement in a published opinion that is not the

26  result of reasoned consideration." (internal quotation marks omitted)).  Indeed, 20 years

27  later, another Ninth Circuit panel described the statement as "broadly declared,

28  intuitively, but without any analysis of the elements of robbery as defined in the Hobbs

1   Act." *United States v. Chandler*, 743 F.3d 648, 658 (9th Cir. 2014) (Bybee, J,

2   concurring on behalf of entire panel), *vacated by Johnson II*, 619 Fed. Appx. 641 (9th

3   Cir. 2015).

4       If *Mendez* spoke to the force-clause question at all, its holding "is questionable in

5   light of recent Supreme Court precedent" revolutionizing both the categorical approach

6   and the interpretation of the force clause. *Id.* Thus, to the extent the statement in

7   *Mendez* is not pure dictum, it has certainly been abrogated by much intervening higher

8   authority since it was decided in 1993, most importantly *Johnson I* (a 2010 decision),

9   which forms the core basis of Mr. Blackstone's argument here. *See Miller v. Gammie*,

10  335 F.3d 889, 900 (9th Cir. 2003) (en banc).

11      *Howard* helps the government no more that *Mendez*. *Howard* is an unpublished

12  disposition, which has no precedential value. *See* Ninth Cir. R. 36-3. More

13  importantly, the government fails to mention that the amended *Howard* disposition

14  expressly noted that the *de minimis* force argument raised here remains an open

15  question in the Ninth Circuit and was waived by the appellant in *Howard*. *See* 2016

16  WL 2961978 at *1 n.1 (noting that "[t]his circuit has held that crimes that require only

17  a *de minimis* use of force do not qualify as crimes of violence" and that the panel

18  "take[s] no position on that issue or the applicability of these precedents to Hobbs Act

19  robbery").

20      The government offers no cogent response to this quantum-of-force question.

21  Indeed, that argument has only gotten stronger since Mr. Blackstone's filed his motion.

22  As set out in the Motion, the Hobbs Act is specifically based not just on common-law

23  robbery but on New York's common-law robbery statute. *United States v. Nedley*, 255

24  F.2d 350, 357 (3d Cir. 1958) ("'Robbery' under the Hobbs Act, is common law

25  robbery, and robbery as defined by the New York Penal Laws and construed by the

26  courts of that State."); *United States v. Aguon*, 851 F.2d 1158, 1164 (9th Cir. 1988) (en

27  banc) ("Congressman Hobbs said explicitly that the definitions of robbery and extortion

28  were modeled on the New York Penal Code."). Thus, federal courts look to New York

robbery as "the proper starting point" in determining what the federal statute encompasses. *United States v. Zappola*, 677 F.2d 264, 268 (2d Cir. 1982).

The force required by New York's robbery statute is *de minimis* force. Indeed, when the Hobbs Act was enacted, the New York robbery statute explicitly indicated the "degree of force employed is immaterial." N.Y. Penal Law § 2122 (1944). Under subsequent versions of that statute, courts have found sufficient force in "bump[ing the] victim," *People v. Lee*, 602 N.Y.S.2d 138, 139 (App. Div. 1993); "shov[ing] the victim," *People v. Bennett*, 592 N.Y.S.2d 918, 918 (App. Div. 1993); forming a "human wall that block[s] the victim's path," *People v. Bennett*, 631 N.Y.S.2d 834, 834 (App. Div. 1995); or where the victim and robber "tug[] at each other until defendant's hand slip[s] out of the glove holding the money." *People v. Safon*, 560 N.Y.S.2d 552, 552 (App. Div. 1990).

Accordingly, the Second Circuit recently held that New York robbery is not categorically a crime of violence because it does not necessarily involve the use of "violent force." *United States v. Jones*, __F.3d__, 2016 WL 3923838 (2d Cir. July 21, 2016).[16] It is a well-established principle of statutory construction that when one jurisdiction adopts the statute of another jurisdiction as its own, there is a presumption that the construction placed upon the borrowed statute by the courts of the original jurisdiction is adopted along with the statute and treated as incorporated therein. *Aguon*, 851 F.2d at 1164. Thus, when Congress adopted New York's definition of robbery in the Hobbs Act, it adopted a definition that covers any forcible taking, no matter how slight the force. But such *de minimis* force is insufficient under *Johnson I*. *See Parnell*, 818 F.3d at 979. Indeed, many courts have held that various common-law robbery statutes do not qualify as crimes of violence under the force clause because they may be violated by *de minimis* use of force, contrary to *Johnson I*'s requirement.

---

[16] The Second Circuit has also concluded that Hobbs Act robbery is a crime of violence in *United States v. Hill*, No. 14-3872, 2016 WL 4120667 (2d Cir. Aug. 3, 2016). A petition for rehearing is pending in that case. *See id.* Dkt. 127.

*See e.g., id.*; *United States v. Bell*, 158 F. Supp. 3d 906, 918-20 (N.D. Cal. 2016) (holding that the general robbery of federal property statute, 18 U.S.C. § 2112, does not qualify as a crime of violence under § 924(c) because it may be committed by *de minimis* use of force); *United States v. Dunlap*, 162 F. Supp. 3d 1106 (D. Or. 2016) (holding that Oregon robbery, which requires "only minimal force," does not satisfy *Johnson I*); *United States v. Gardner*, 823 F.3d 793, 803-04 (4th Cir. 2016) (holding that North Carolina common-law robbery does not satisfy *Johnson I* because "even *de minimis* contact" satisfies the statute); *United States v. Castro-Vazquez*, 802 F.3d 28, 37 (1st Cir. 2015) (noting that Puerto Rico's robbery statute, which may be violated by "the slightest use of force," does not satisfy *Johnson I*).

The government claims -- and this Court in *Dorsey* seemed to accept -- that the Petitioner's citations to various robbery statutes held not be require "force" can be distinguished because they interpreted different statutes. (Opp. at 30.) But, in fact, they are highly relevant, because they all track back to a common ancestor -- common-law robbery. Because Hobbs Act robbery is explicitly the progenitor of such statutes, this Court should rule that that offense, too, does not to require sufficient force to satisfy *Johnson I.*

In *Dorsey*, this Court raised a second concern, and that was whether the defendants could satisfy the *Duenas-Alvarez* requirement of proving a realistic possibility that the statute would be interpreted in the manner suggested by the defendant. *United States v. Dorsey*, 2016 WL 3607155, at *4 (Jun. 30, 2016). Petitioner offers several responses to this concern. First, some of the arguments raised in Petitioner's motion relate to areas of overbreadth that are plain on the face of the statute. For example, the statutory language expressly includes taking property by instilling fear of future injury to the property of another. Where an area of overbreadth is apparent on the face of the record, the Ninth Circuit has recognized that *Duenas-Alvarez* presents no obstacle. *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc) ("Where, as here, a state statute explicitly defines a crime more broadly than the

generic definition, no "legal imagination," *Duenas-Alvarez*, 127 S.Ct. at 822, is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text.").

Moreover, it is not at all hypothetical that a conviction for Hobbs Act robbery can be based on conduct less than violent physical force. In Nevada, a district court instructed a jury in a Hobbs Act robbery case:

> The use or threat of force or violence might be aimed at a third  person, or at causing economic rather than physical injury. . . . The term "fear" means a state of anxious concern, alarm, or apprehension of harm. Fear exists if a victim experiences anxiety, concern, or worry over expected harm or business loss, or over   financial or job security.

*See* Jury Instructions, *United States v. Nguyen*, Dkt 157, 03-cr 158-KJD-PAL (D. Nev. Feb. 10, 2005); Jury Instructions, *United States v. Brown*, Dkt 197, 11-cr-334-APG (D. Nev. July 28, 2015) (in Hobbs Act robbery trial, defining property to include "money and other tangible and intangible things of value" and fear as "an apprehension, concern, or anxiety about physical violence or harm *or economic loss or harm*"). In other words, it is not merely hypothetical to believe that an individual could be convicted on less than violent physical force.

For these reasons, this Court should conclude that Mr. Blackstone's Hobbs Act offense is not a crime of violence, after *Johnson*.

**D.      Robbery pursuant to California Penal Code § 211 is not a crime of violence under any other clause of the career offender guideline.**

Next, the government argues that Mr. Blackstone cannot prevail because Penal Code 211 remains a crime of violence after *Johnson*.  The government claims that the guidelines commentary is "binding," (Opp. at 34), without making any attempt to show

36

how generic robbery is possibly a proper interpretation of the text of the guideline that remains after *Johnson*. It does not grapple with that portion of *Stinson* that says that commentary "'*that interprets or explains a guideline*'" is authoritative. (Opp. at 33 (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993).) Because generic robbery no longer interprets or explains a valid portion of the guideline -- as both the Seventh and First Circuits have already found -- it is no longer authoritative.

To use a concrete example, say that the Commission wrote a guideline that enhanced the sentence of those who committed a crime while wearing "inappropriate colors," and further stated, in the text of the guideline, that "inappropriate colors" meant blue and red. The Commission could add commentary that said that turquoise counted as blue, and that pink counted as red, because, while not necessarily compelled by the guideline, that interpretation is at least congruent with the text of the guideline. But if the Commission tried to add, via commentary, that *yellow* was also an inappropriate color, that would be inconsistent with the guideline. And, if the Supreme Court decided that red was no longer an inappropriate color and had to be struck from the guideline, that would necessarily cast a shadow on the commentary that included pink among the realm of inappropriate colors.

That last scenario is essentially what Mr. Blackstone is claiming here -- that once the residual clause is gone, the term robbery, which only ever served to interpret and clarify the residual clause -- must also be excised. Notably, nowhere in its Opposition does the government challenge whether pink was only ever added to the commentary because red was in the text -- that is, that robbery was only ever a fit for the guideline because it interpreted the residual clause. Most clearly it was: At the time of the guidelines' adoption, the controlling law of this Circuit was that robbery was a crime of violence under the residual clause. *See United States v. McDougherty*, 920 F.2d 569, 574 & n.3 (9th Cir. 1990). Indeed, the generic definition of robbery echoes the risk-of-harm concept that *Johnson* found to be unconstitutionally vague. *Compare United States v. Becerril–Lopez*, 541 F.3d 881, 891 (9th Cir. 2008) (defining generic robbery

37

as "aggravated larceny, containing at least the elements of misappropriation of property *under circumstances involving immediate danger to the person*") (emphasis added) *with Johnson*, 135 S. Ct 2551 (finding "conduct that presents a *serious potential risk of physical injury to another*" unconstitutionally vague) (emphasis added).[17]

This Court has applied similar reasoning in the administrative context, an apt analogy that the Supreme Court itself referenced in *Stinson*, 508 U.S. at 44-45 (analogizing the Sentencing Commission to an agency that receives *Seminole Rock* deference for its commentary, i.e., interpretations of own regulations). In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held, as a matter of constitutional avoidance, that a statute authorizing the government to detain aliens who had been ordered removed did not authorize detention for longer than the period reasonably necessary to remove the alien from the United States. *Id.* at 699. Nevertheless, post-*Zadvydas*, the government argued that it could continue to detain an alien under a *regulation* that authorized a longer period of detention for some individuals. *Thai v. Ashcroft*, 366 F.3d 790, 793 (9th Cir. 2004). The Court easily dispensed with that argument; a regulation "cannot empower the Government to do what a federal statute prohibits it from doing." *Id.* at 798. That is, when the Supreme Court deems a certain provision of law unconstitutional, every outgrowth of that unconstitutional provision must be rooted out as well. In much the same way, following *Johnson*, the Court must remove the residual clause from its sentencing analysis, all the way down to its roots.

The First Circuit recently rejected the government's argument that the Guideline commentary independently supports application of the career-offender enhancement. *See United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016) ("There is simply no

---

[17] It should go without saying that the government gets no mileage out of the fact that *Stinson* found another portion of the application note to be congruent with the text of the career offender guideline; one portion of the commentary can validly interpret a guideline, but that doesn't inoculate the other portions of the commentary from challenge.

mechanism or textual hook in the Guideline that allows us to import offenses not specifically listed therein into § 4B1.2(a)'s definition of 'crime of violence.'  With no such path available … , doing so would be inconsistent with the text of the Guideline.").  The Seventh Circuit, sitting en banc, joined the First Circuit, holding that "application note 1 is enforceable only as an interpretation of the residual clause in § 4B1.2(a)(2); it has no independent legal force.  The residual clause is invalid, and the application note's list of qualifying crimes cannot alone supply the basis for a career-offender designation." *United States v. Rollins*, ___F.3d___, No. 13-1731, slip. op. at 8-11 (7th Cir. Aug. 29, 2016) (en banc) (holding that possession of a sawed-off shotgun, an offense listed as a crime of violence in the commentary, cannot qualify as a crime of violence).

The Seventh Circuit's *Rollins* opinion is particularly pertinent here because the government's briefing relies on the inclusion in the commentary to section 4B1.2's of "robbery" as an example of a crime of violence to conclude that California Penal Code § 211 remained a crime of violence after *Johnson*.  The *Rollins* court rejected that argument and concluded that a predicate offense must satisfy either the force clause or categorically match one of the four offenses enumerated in the text of section 4B1.2 to qualify as a crime of violence.  *See Rollins*, slip. op. at 8-10.  "If the application note's list is not interpreting one of those two subparts—and it isn't once the residual clause drops out—then it is in effect adding to the definition.  And that's necessarily inconsistent with the text of the guideline itself." *Id.* at 10.  Under *Rollins*, it does not matter whether the Commission intended robbery to be a crime of violence; because it is not supported by the language of the text of the guidelines, it is of no effect after *Johnson*. *Id.* at 9 ("[T]he application notes are interpretations of, not additions to, the Guidelines themselves; an application note has no independent force.").[18]

---

[18] A district court in the Western District of Washington also recently so held. *Dietrick v. United States*, 2:16-cv-705-MJP, Dkt. #9 (Aug. 18, 2016) ("With the text of

In spite of this authority, the government notes that there would be a "drastic, illogical disparity" if Penal Code 211 were a crime of violence under the 2L1.2 guideline, but not under the 4B1.2 career offender guideline. (Opp. at 38.)  But there is nothing anomalous in giving the term "crime of violence" different definitions in different contexts – indeed, the term crime of violence has at least four different definitions in the federal law.  *See* U.S.S.G. § 2L1.2; U.S.S.G. § 4B1.2(a); 18 U.S.C. § 16; 18 U.S.C. § 924(e).  Moreover, the government's claim ignores the difference in the structure of the two guidelines.  The question under *Stinson* is fit and congruity between the text and the commentary.  In the 2L1.2 context, the text of the guideline contains only the phrase "crime of violence" and the definition of crime of violence is found only in the commentary.  In that context, the Sentencing Commission has broad leeway to define the term as it sees fit without running afoul of the text of the guideline. But the career offender guideline is structured differently: the text of the guideline contains three -- now two -- specific definitions of crime of violence, and the commentary adds additional generic definitions that aren't covered in the text of the guideline.  Those generic definitions were legitimate so long as they served to interpret a term in the text of the guideline, which is why the pre-*Johnson* citations in the government's brief are inapposite.  But once a provision of the text is removed, it necessarily results in inconsistency between the text and the portions of the commentary that that interpreted that text.  Like a definition of a term that is no longer part of a statute, commentary that interprets an excised portion of the guideline is dead letter.

At the risk of stretching the analogy too far, using the color guideline again, the Commission could write a guideline enhancing the sentence of those who committed their crimes while wearing "an inappropriate color."  The commentary to that guideline

the residual clause having been declared unconstitutional, the commentary supporting that text becomes similarly non-compelling and the Government's attempt to cite it in support of their opposition to Petitioner's motion is rejected.").

could say "blue and red are inappropriate colors." The Commission could add yellow, or take away red to the commentary in that case, and it would not be a *Stinson* problem -- it would not render the commentary to the guideline inconsistent with its text. But the career offender guideline is not like that guideline; it is like the guideline above that defines inappropriate as "red or blue." The different structure of the two guidelines necessarily leads to different analysis, and, in this case, different results.

Indeed, the Fourth Circuit relied on just this difference between the two guidelines in *United States v. Shell*, 789 F.3d 335 (4th Cir. 2015). There, the Fourth Circuit considered North Carolina's second degree rape statute, which defined the offense to encompass intercourse by force or with a person who was mentally disabled. *Id.* at 339. The Court had previously found a similar statute to be a "forcible sex offense" and crime of violence under U.S.S.G. § 2L1.2, on the theory that force in that context included not only physical force, but compulsion effectuated through other kinds of pressure. *Id.* at 344. In *Shell*, however, the Court refused to extend that logic to the career-offender context. The two guidelines have "significantly different texts and structures," and "it should be no surprise that we end up in different places." *Id.* The 2L1.2 guideline, the Court noted, defines crime of violence solely in the commentary, which meant that the courts had significantly leeway to define the terms in the commentary using whatever sources it saw fit. *Id.* at 345. The career offender guideline, on the other hand, has a "carefully reticulated definition of crime of violence" in its text, using terms that "come[] to us glossed by the Supreme Court." *Id*. Because the commentary in the career offender guideline had to be viewed in light of the force clause in the text of the guideline and because that clause required that force be *violent* force, a statute that included psychological compulsion could not be a career-offender crime of violence.[19]

---

[19] For related reasons, contrary to the government's contentions, *Becerril-Lopez* and cases relying upon it (i.e., *Tate*) do not control the outcome of this case. (Opp. at

41

1   The upcoming amendments to the guidelines are likewise unhelpful to the
2   government.  (Opp. at 39.)  The premise of the government's argument is that it doesn't
3   matter that extortion is in the text of the guideline and robbery is in the commentary
4   because the terms' effect is the same regardless of its placement.  If that's so, however,
5   one wonders why the Commission would have believed it necessary to amend the
6   guidelines primarily to move offenses that are currently in the commentary into the text
7   of the guideline.  The Commission must have believed that moving the offenses in the
8   commentary to the text had some *impact* on the analysis this Court conducts, or its
9   conduct would be irrational.

10   For these reasons, inclusion of the term "robbery" in the commentary does not
11   provide an alternate basis for supporting the career-offender sentence in this case.[20]

12   ## 1.   *Nieves-Medrano* and *David H* do not control this case.

13   As an alternative argument, the government claims that *Nieves-Medrano v.*
14   *Holder*, 590 F.3d 1057, 1058 (9th Cir. 2010) and *United States v. David H*., 29 F.3d
15   489, 494 (9th Cir. 1994), hold that Penal Code 211 is a crime of violence under the
16   force clause.  *David H.* contains no analysis, relies equally heavily on the residual
17   clause for its analysis, and predates (by over a decade) the Supreme Court's
18   jurisprudence regarding the requirements of the force clause.  *See Johnson v. United*
19   *States*, 559 U.S. 133, 140 (2010) (*Johnson I*) (holding that the phrase "physical force"

20

21   _____

22   37-38.)  In *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) -- discussed in
     greater detail infra -- the court considered whether Section 211 was a categorical crime
23   of violence and concluded that it was not.  The court explained that *Becerril-Lopez* did
     not control the outcome of the case because that decision construed Section 2L1.2's
24   definition of "crime of violence," which includes both generic robbery and generic
     extortion.  *Id.*  The ACCA definition of a violent felony and the career offender
25   definition of crime of violence include only generic extortion as an enumerated offense,
     but omit generic robbery.  *Id.*  Thus, because of the differences in the structure of the
26   two guidelines, it is not true here, as it was in *Becerril-Lopez*, that every violation of
     Section 211 will constitute either generic robbery or generic extortion, once the ultra-
     vires commentary is excised.

27   [20] The same argument precludes any reliance on robbery in finding that Hobbs
28   Act robbery or conspiracy to commit robbery is a career-offender predicate either.

1  refers to "violent, active crime[].");  *Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (the force

2  clause requires the intentional, not accidental or negligent, use of force).  For that

3  reason alone, the Court should be suspect of its import here.  But whatever the merits of

4  *David H.* and of *Nieves-Medrano* ever were -- and *Nieves-Medrano*'s analysis was

5  always <u>highly</u> questionable[21] -- this Court's decision from last year in *United States v.*

6  *Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015), directly holds that Penal Code 211 does

7  not have, as an element, the use, attempted use, or threatened use of force.

8        A few things about *Dixon* are notable.  First, these two supposedly "binding

9  authorities" that the panel disregarded were not deemed important enough to be

10  mentioned in the government's brief.  Indeed, the government made no argument in

11  *Dixon* that Penal Code 211 was a crime of violence under the force clause, even though

12  that argument would have been dispositive in its case.  *See generally* Government's

13  Answering Brief, *United States v. Dixon*, 2014 WL 7339369 (9th Cir. Dec. 24, 2014).

14  Second, *Dixon* found that California Penal Code 211 was not a crime of violence under

15  the force clause based on a California Supreme Court decision that post-dated *Becerril-*

16  *Lopez* and *Nieves-Medrano*.  That case confirmed that California robbery could be

17  committed by the accidental use of force and therefore did not meet *Leocal*'s

18  requirement for the force clause.  *See Dixon*, 805 F.3d at 1197 (citing *People v.*

19  *Anderson*, 51 Cal. 4th 989 (2011)).  In conducting the categorical approach, a federal

20  court is bound by the state court's interpretation of its statute, *United States v. Jennings*,

21  515 F.3d 980, 989 (9th Cir. 2008), which means that as the state court issues binding

22

23

24        [21] *Nieves-Medrano*, in the context of a *pro se* immigration case, analogized
U.S.S.G. § 2L1.2's crime of violence definition to 18 U.S.C. § 16(a) and found them

25  only slightly different.  As such, it applied *Becerril-Lopez* to the crime of violence in
Section 16.  Of course, this was nonsensical to do, because *Becerril-Lopez* had relied,

26  not on the force clause of U.S.S.G. § 2L1.2, but the generic definition of robbery and
extortion found in that guideline.  The pro se litigant -- out of his depth, no doubt --

27  failed to point out that 18 U.S.C. § 16 differs from U.S.S.G. 2L1.2 because it has no
generic offenses and therefore *Becerril-Lopez* could not possibly apply to 18 U.S.C. §

28  16.

43

1   precedent interpreting its statute, the federal court's analysis must evolve as well.  And
2   this Court is bound to follow the *Dixon* Court's decision which encompassed that more
3   recent interpretation, not a minimally reasoned decision based on a no-longer-valid
4   understanding of the California statute.

5       Finally -- if more is needed -- *Nieves-Medrano* and *David H.* pre-dated the
6   Supreme Court's 2010 decision in *Johnson v. United States*, (*Johnson I*) which held
7   that a statute only involves the "use, attempted use, or threatened use of force," if it
8   involves violent, physical force.  *See Johnson  v. United States*, 559 U.S. 133, 140
9   (2010) ("[T]he phrase 'physical force' means violent force -- that is, force capable of
10  causing physical pain or injury to another person.").  But, "for purposes of the
11  [California] crime of robbery, the degree of force utilized is immaterial." *People v.*
12  *Griffin*, 33 Cal. 4th 1015, 1025 (2004).  Indeed, even a "mere tap" on the shoulder,
13  accomplished "polite[ly]," suffices.  *People v. Garcia*, 45 Cal. App. 4th 1242, 1246
14  (1996), disapproved on other grounds, *People v. Mosby*, 33 Cal.4th 353 (2004); *see*
15  *also Griffen*, 33 Cal.4th at 1025 (citing *Garcia*).  As such, if *Nieves-Medrano* were
16  somehow controlling law, its rationale has been fatally undermined by *Johnson v.*
17  *United States*.  *See United States v. Parnell*, 818 F.3d 974, 981 (9th Cir. 2016) (holding
18  that robbery is not a crime of violence under the force clause where the state statute
19  requires a degree of force that is "immaterial so long as the victim is aware of it");
20  *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (finding that a North
21  Carolina robbery statute -- under which the degree of force used is immaterial, so long
22  as it is sufficient to compel the victim to part with his property -- does not satisfy the
23  force clause, because "even de minimis contact can constitute violence necessary for a
24  common law robbery conviction"); *United States v. Jones*, --- F.3d ----, 2016 WL
25  3923838, *2, *5 (2d Cir. Jul. 2 2016) (holding New York first-degree robbery --
26  defined as "'a larceny' involving the use or threatened 'immediate use of physical force
27  upon another person'" -- is not a crime of violence under the force clause because it
28  may be committed with less than violent force, e.g., forming a human wall to allow a

1
2
3
4
5
pickpocket to escape; bumping a victim, taking his money, and fleeing; or, scuffling with a store clerk before abandoning stolen money); *United States v. Estes*, 1:05-187-WYD, at *8-9 (D. Colo. Sept. 15, 2016) (the fact that the state statute requires "a violent taking" does not mean that the state is using the term "violence" that would satisfy *Johnson I*).

6
7
    For all of these reasons, the crime of violence finding in this case cannot be salvaged by *Nieves-Medrano* or *David H-*.

8
9
**E.    Voluntary Manslaughter under California Penal Code Section 192(a) is not a crime of violence after *Johnson***

10
11
12
13
14
15
16
17
18
19
20
21
22
    The government's arguments that California voluntary manslaughter remains a crime of violence after *Johnson* are either unpersuasive or squarely foreclosed by binding precedent.[22]  Indeed, the government devotes an entire section of its briefing to arguing that the Ninth Circuit has wrongly interpreted *Leocal*, and invites this Court to disregard it.  (Opp. at 43.)  It is beyond debate, however, that the Court is bound to follow the law of this Circuit -- as it has at least twice in the past with respect to this very issue, *see United States v. Dominguez*, No. CR 12-879 CAS, 2013 WL 4040125, at *1 (C.D. Cal. July 18, 2013) and *United States v. Aitken*, No. CR-14-143-CAS, 2015 WL 1486925, at *4 (C.D. Cal. Mar. 30, 2015) -- which expressly holds that Section 192(a) is not a crime of violence under the force clause, since the statute can be violated through mere reckless conduct.  *Quijada-Aguilar*, 799 F.3d at 1306 (holding that California voluntary manslaughter is not a crime of violence under the nearly identically worded force clause of Section 16 because Section 192(a) encompasses

23

24
25
26
27
28
    [22] The government first argues that voluntary manslaughter is "per se" a crime of violence because manslaughter is listed in the commentary to the career offender Guideline.  (Opp. at 42-43.)  As discussed at length *supra*, however, the commentary is no longer of any effect after *Johnson* because it only served to interpret the residual clause.  For all of the reasons discussed above, therefore, the commentary has been effectively excised, Mr. Blackstone cannot be a career offender on that basis, and the Court need not reach the question of whether California manslaughter is generic manslaughter.

1 reckless conduct). Moreover, the Ninth Circuit recently reiterated, as it has done many

2 times in the last decade, that "[a]fter *Leocal* and *Fernandez-Ruiz*, a 'crime of violence'

3 requires a mental state higher than recklessness—*it requires intentional conduct*."

4 *United States v. Benally*, __ F.3d __, 2016 WL 4073316, \*4 (9th Cir. Aug. 1, 2016)

5 (emphasis added).

6 The government asks the Court to adopt its gloss on a 2013 California case,

7 *People v. Bryant*, 56 Cal. 4th 959, 968 (2013), and thereby to ignore the Ninth

8 Circuit's subsequent decision in *Quijada-Aguilar*. This, of course, the Court

9 cannot do. Even if it could, *Bryant* does not stand for nearly as broad a

10 proposition as the government suggests. There, the court considered whether the

11 felony-murder rule should be extended to accidental killings committed without

12 malice, through the adoption of a felony-voluntary manslaughter rule. *Id.* at 964.

13 The court rejected such a theory of liability and in the process reaffirmed what

14 the law of California has always been: voluntary manslaughter can be

15 accomplished through a reckless killing, that is, a killing done with conscious

16 disregard for human life. *Id.* at 970. The "intent to kill" is not required. *Id.*[23]

17 The government next contends that the Supreme Court's decision in *Voisine v.*

18 *United States*, 136 S. Ct. 2272 (2016), has "undercut" the "precedential value of

19 *Quijada-Aguilar* and *Fernandez-Ruiz*[.]" (Opp. at 46.) Not so. *Voisine* held that a

20 statute requiring a mens rea of recklessness can qualify as a "misdemeanor crime of

21 domestic violence for purposes of Section 922(g)(9)." [24] As the Supreme Court was

---

[23] It does nothing to assist the government that California Penal Code Section 192(b) covers involuntary manslaughter. Though perhaps there may be some conceivable overlap between subsections (a) and (b), for the reasons discussed above, Section 192(a) does not require intentional conduct, and this Court must follow *Quijada-Aguilar*.

[24] Section 922(g)(9) makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess . . . any firearm or ammunition." 18 U.S.C. § 922(g)(9). Section 921(a)(33)(A), in turn, defines misdemeanor crime of domestic violence as "an offense that . . . has, as an

careful to note in *Voisine*, "[c]ourts have sometimes given [the] statutory definitions [of § 921(a)(33)(A) & § 16] divergent readings in light of differences in their contexts and purposes." 136 S. Ct. at 2280 n.4.  The Court went on to state clearly that it did not intend *Voisine* to "foreclose that possibility with respect to the[] required mental state[] [of Section 16]." *Id.*[25]

The government itself argued in its *Voisine* briefing that "[t]he term 'misdemeanor crime of domestic violence' bears a different meaning than the definition of 'crime of violence' under 18 U.S.C. 16." Brief for the United States, *Voisine v. United States*, Case No. 14-10154, 2016 WL 1238840, at *31 (Jan. 19, 2016).  As it acknowledged, the plain language, purpose, and effect of the two terms, as well as Supreme Court case law interpreting them, demonstrated that they had different meanings, with one term—"crime of violence"—encompassing a narrower range of crimes than the other—"misdemeanor crime of domestic violence." *Id.*at *31-*37; *see also United States v. Castleman*, 134 S. Ct. 1405, 1410-1412 (2014) (applying a "misdemeanor-specific meaning of 'force'" to interpret § 921(a)(33)(a)).  In short, *Voisine* in no way casts doubt on the continued validity of *Quijada-Aguilar* and *Fernandez-Ruiz.  See, e.g., Bennett v. United States*, Case No. CV 16-251-GZS, 2016 WL 3676145, *4 (D. Me. July 6, 2016) (granting Section 2255 motion based on *Johnson* and holding that "*Voisine* cannot be read to override the already-cited precedents holding that recklessness is an insufficient mens rea for purposes of ACCA"); *see also United States v. Fennell*, 2016 WL 4702557, *4 (N.D. Texas Sept. 8, 2015) (denying government's motion for reconsideration, in light of *Voisine*, of prior order finding that Texas robbery was not categorically a violent felony under ACCA).

---

element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse[.]" 18 U.S.C. § 921(a)(33)(A)(ii).

[25] The force clauses of Section 16 and the career offender Guideline are identical, except that the former applies to the use of "physical force against the person *or property* of another." 18 U.S.C. § 16(a).  The Court's caveat as to Section 16 therefore applies with equal force to the career offender Guideline.

And, indeed, the Ninth Circuit itself recently reiterated its commitment to *Fernandez-Ruiz. United States v. Benally*, __ F.3d __, 2016 WL 4073316, *4 (9th Cir. Aug. 1, 2016) ("After *Leocal* and *Fernandez-Ruiz*, a 'crime of violence' requires a mental state higher than recklessness—*it requires intentional conduct*.") (emphasis added)

For all of these reasons, Mr. Blackstone's voluntary manslaughter conviction lacks the essential element of an intentional use of violence force, and it is not a crime of violence.

## F. Hobbs Act robbery is not a crime of violence for career-offender purposes.

Finally, for the reasons already set out in this Reply, Hobbs Act robbery is not a career-offender predicate. For the reasons set out in Section II.C, Hobbs Act robbery is not a crime of violence under the force clause. Moreover, because the force clause in the career-offender guideline requires the use of force against *a person*,[26] it is not satisfied by the force clause, which explicitly includes the threat of injury to property. And, for the reasons set out in Section II.D, Hobbs Act robbery cannot be premised on the enumerated offense of robbery, which has been effectively excised from the commentary. Thus, even assuming that Hobbs Act robbery is generic robbery, generic robbery is no longer an alternative ground upon which to hold that Mr. Blackstone's conviction remains a crime of violence.

## G. Should The Court Deny Relief, It Should Grant A Certificate of Appealability.

A district court should issue a certificate of appealability for any issue on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is "relatively low" and "permits appeal where [a] petitioner can "demonstrate that the issues are debatable among jurists of reason; that a

---

[26] Section 924(c)'s force clause is premised on the use of force against a person *or property*.

48

court could resolve the issues [differently]; or that the questions are adequate to deserve encouragement to proceed further.'" *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)) (second alteration in original).  For all the foregoing reasons, and for those set forth in his motion, Mr. Blackstone has made a substantial showing of the denial of a constitutional right. The question of whether the offense listed only in the commentary are *per se* crimes of violence, whether they satisfy one of the textual provisions of the career-offender guideline or not -- is one of the issues presented in *Beckles v. United States*, which is before the Supreme Court presently and set to be heard this coming Term, and, as stated in the preceding sections, both the First and Seventh Circuits have ruled in Petitioner's favor on this point. Moreover, given the *Howard* court's decision to leave open whether Hobbs Act robbery necessarily required violent active force -- a question they could have simply decided if they viewed it as an easy one -- it appears that that question satisfies the COA standard as well. For this reason, Petitioner requests that, if the Court denies his motion, he be granted a COA as to all four substantive claims.

### III.  CONCLUSION

For the reasons stated, Mr. Blackstone requests that the Court vacate his sentence and order his resentencing post-haste.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED: October 5, 2016          By /s/ *Brianna Fuller Mircheff*
                                 BRIANNA FULLER MIRCHEFF
                                 Deputy Federal Public Defender